John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jennifer S. Coleman, Bar No. 213210
jcoleman@hopkinscarley.com
Christopher A. Hohn, Bar No. 271759
chohn@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:     (408) 998-4790

Daniel R. Scardino
Jeffery R. Johnson
Cabrach J. Connor
Chad Ennis
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel. (512) 474-2449
Fax (512) 474-2622
dscardino@reedscardino.com
jjohnson@reedscardino.com
cconnor@reedscardino.com
cennis@reedscardino.com

Attorneys for Plaintiff
EON CORP. IP HOLDINGS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EON CORP. IP HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT SPECTRUM, L.P.; ARUBA NETWORKS, INC.; BROADSOFT, INC.; CLAVISTER AB; CISCO SYSTEMS, INC.; MAVENIR SYSTEMS, INC.; MERU NETWORKS, INC.; SERCOMM CORPORATION; SONUS NETWORKS, INC.; STOKE, INC.; TATARA | CASE NO. CV 12-1011 EMC<br><br>**PLAINTIFF EON CORP. IP HOLDINGS, LLC's SECOND AMENDED COMPLAINT** |

SYSTEMS, INC.; HTC AMERICA, INC.;
UNITED STATES CELLULAR
CORPORATION; MOTOROLA
MOBILITY HOLDINGS, INC.;
MOTOROLA SOLUTIONS, INC.;
KINETO WIRELESS, INC.; and
AIRVANA, INC.,

Defendants.

Plaintiff EON Corp. IP Holdings, LLC ("EON") files this Second Amended Complaint for patent infringement against Aruba Networks, Inc. ("Aruba Networks"); Broadsoft, Inc. ("Broadsoft"); Clavister AB ("Clavister"); Cisco Systems, Inc. ("Cisco"); Mavenir Systems, Inc. ("Mavenir"); Meru Networks, Inc. ("Meru"); SerComm Corporation ("SerComm"); Sonus Networks, Inc. ("Sonus"); Sprint Spectrum, L.P. ("Sprint"); Stoke, Inc. ("Stoke"); Tatara Systems, Inc. ("Tatara"); HTC America, Inc. ("HTC"); United States Cellular Corporation ("US Cellular"); Motorola Mobility Holdings, Inc. ("Motorola Mobility"); Motorola Solutions, Inc. ("Motorola Solutions"); Kineto Wireless, Inc. ("Kineto"); and Airvana, Inc. ("Airvana") (collectively, the "Defendants") for infringement of U.S. Patent No. 5,592,491 (the "'491 Patent") pursuant to 35 U.S.C. §271.

## THE PARTIES

1.      Plaintiff EON is a Texas limited liability company with its principal place of business at 719 W. Front Street, Suite 108, Tyler, Texas 75702.

2.      Defendant Aruba Networks is a Delaware corporation with its principal place of business at 1344 Crossman Ave., Sunnyvale, California 94089.  In addition to Aruba Networks continuously and systematically conducting business in Texas, the causes of action against Aruba Networks arose from or are connected with Aruba Networks's purposeful acts committed in Texas, including Aruba Networks's making, using, importing, offering for sale, selling, or inducing the sale of infringing communication networks, dual-mode related network components, subscriber units, associated services, or data systems that fall within the scope of or constitute a material portion of at least one claim of the '491 Patent.  Aruba Networks may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul St., Suite 2900,

Dallas, Texas 75201.

3.      Defendant Broadsoft is a Delaware corporation with its principal place of business at 220 Perry Parkway, Gaithersburg, Maryland 20877.  In addition to Broadsoft continuously and systematically conducting business in Texas, the causes of action against Broadsoft arose from or are connected with Broadsoft's purposeful acts committed in Texas, including Broadsoft's making, using, importing, offering for sale, selling, or inducing the sale of infringing communication networks, dual-mode related network components, subscriber units, associated services, or data systems that fall within the scope of or constitute a material portion of at least one claim of the '491 Patent.  Broadsoft engages in business in but does not maintain a regular place of business in Texas and has not designated or maintained a resident agent for service of process.  Accordingly, pursuant to Federal Rule of Civil Procedure 4, section 17.044 of the Texas Civil Practice and Remedies Code, and Articles 2.11 of the Texas Business Corporations Act, the Texas Secretary of State is designated as Broadsoft's agent for service of process in this action.  The Texas Secretary of State Citations Unit may be served at P.O. Box 12079, Austin, Texas 78711-2079 by certified mail, return receipt requested.  Pursuant to section 17.045(a) of the Civil Practice and Remedies Code, the Secretary of State shall forward citation and a copy of this Complaint to Broadsoft's home or home office, c/o Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19808.

4.      Defendant Clavister is a Swedish company with its principal place of business at Sjögatan 6 J SE-891 60, Örnsköldsvik, Sweden.  In addition to Clavister continuously and systematically conducting business in Texas, the causes of action against Clavister arose from or are connected with Clavister's purposeful acts committed in Texas, including Clavister's making, using, importing, offering for sale, selling, or inducing the sale of infringing communication networks, dual-mode related network components, subscriber units, associated services, or data systems that fall within the scope of or constitute a material portion of at least one claim of the '491 Patent.  Clavister engages in business in but does not maintain a regular place of business in Texas and has not designated or maintained a resident agent for service of process.  Accordingly, pursuant to Federal Rule of Civil Procedure 4, section 17.044 of the Texas Civil Practice and

1  Remedies Code, and Articles 2.11 of the Texas Business Corporations Act, the Texas Secretary of

2  State is designated as Clavister's agent for service of process in this action. The Texas Secretary

3  of State Citations Unit may be served at P.O. Box 12079, Austin, Texas 78711-2079 by certified

4  mail, return receipt requested. Pursuant to section 17.045(a) of the Civil Practice and Remedies

5  Code, the Secretary of State shall forward citation and a copy of this Complaint to Clavister's

6  home or home office, Sjögatan 6 J SE-891 60, Örnsköldsvik, Sweden.

7       5.     Defendant Cisco is a California corporation with its principal place of business at

8  170 W. Tasman Dr., San Jose, California 95134. In addition to Cisco continuously and

9  systematically conducting business in Texas, the causes of action against Cisco arose from or are

10  connected with Cisco's purposeful acts committed in Texas, including Cisco's making, using,

11  importing, offering for sale, selling, or inducing the sale of infringing communication networks,

12  dual-mode related network components, subscriber units, associated services, or data systems that

13  fall within the scope of or constitute a material portion of at least one claim of the '491 Patent.

14  Cisco may be served with process through its registered agent, Prentice Hall Corporation System,

15  211 E. 7th St., Suite 620, Austin, Texas 78701.

16       6.     Defendant Mavenir is a Delaware corporation with its principal place of business

17  at 1651 N. Glenville Dr., Suite 216, Richardson, Texas 75081. In addition to Mavenir

18  continuously and systematically conducting business in Texas, the causes of action against

19  Mavenir arose from or are connected with Mavenir's purposeful acts committed in Texas,

20  including Mavenir's making, using, importing, offering for sale, selling, or inducing the sale of

21  infringing communication networks, dual-mode related network components, subscriber units,

22  associated services, or data systems that fall within the scope of or constitute a material portion of

23  at least one claim of the '491 Patent. Mavenir may be served with process through its registered

24  agent, Corporation Service Company, 211 E. 7th St., Austin, Texas 78701.

25       7.     Defendant Meru is a Delaware corporation with its principal place of business at

26  894 Ross Dr., Sunnyvale, California 94089. In addition to Meru continuously and systematically

27  conducting business in Texas, the causes of action against Meru arose from or are connected with

28  Meru's purposeful acts committed in Texas, including Meru's making, using, importing, offering

1 for sale, selling, or inducing the sale of infringing communication networks, dual-mode related

2 network components, subscriber units, associated services, or data systems that fall within the

3 scope of or constitute a material portion of at least one claim of the '491 Patent. Meru engages in

4 business in but does not maintain a regular place of business in Texas and has not designated or

5 maintained a resident agent for service of process. Accordingly, pursuant to Federal Rule of Civil

6 Procedure 4, section 17.044 of the Texas Civil Practice and Remedies Code, and Articles 2.11 of

7 the Texas Business Corporations Act, the Texas Secretary of State is designated as Meru's agent

8 for service of process in this action. The Texas Secretary of State Citations Unit may be served at

9 P.O. Box 12079, Austin, Texas 78711-2079 by certified mail, return receipt requested. Pursuant

10 to section 17.045(a) of the Civil Practice and Remedies Code, the Secretary of State shall forward

11 citation and a copy of this Complaint to Meru's home or home office, c/o Corporation Service

12 Company, 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19808.

13         8.      Defendant SerComm is a Taiwanese company with its United States headquarters

14 at 200 Brown Rd., Suite 203, Fremont, California 94539. In addition to SerComm continuously

15 and systematically conducting business in Texas, the causes of action against SerComm arose

16 from or are connected with SerComm's purposeful acts committed in Texas, including

17 SerComm's making, using, importing, offering for sale, selling, or inducing the sale of infringing

18 communication networks, dual-mode related network components, subscriber units, associated

19 services, or data systems that fall within the scope of or constitute a material portion of at least

20 one claim of the '491 Patent. SerComm engages in business in but does not maintain a regular

21 place of business in Texas and has not designated or maintained a resident agent for service of

22 process. Accordingly, pursuant to Federal Rule of Civil Procedure 4, section 17.044 of the Texas

23 Civil Practice and Remedies Code, and Articles 2.11 of the Texas Business Corporations Act, the

24 Texas Secretary of State is designated as SerComm's agent for service of process in this action.

25 The Texas Secretary of State Citations Unit may be served at P.O. Box 12079, Austin, Texas

26 78711-2079 by certified mail, return receipt requested. Pursuant to section 17.045(a) of the Civil

27 Practice and Remedies Code, the Secretary of State shall forward citation and a copy of this

28 Complaint to SerComm's home or home office, 200 Brown Rd., Suite 203, Fremont, California

1    94539.

2         9.    Defendant Sonus is a Delaware corporation with its principal place of business at 7

3    Technology Park Dr., Westford, Massachusetts 01886. In addition to Sonus continuously and

4    systematically conducting business in Texas, the causes of action against Sonus arose from or are

5    connected with Sonus's purposeful acts committed in Texas, including Sonus's making, using,

6    importing, offering for sale, selling, or inducing the sale of infringing communication networks,

7    dual-mode related network components, subscriber units, associated services, or data systems that

8    fall within the scope of or constitute a material portion of at least one claim of the '491 Patent.

9    Sonus may be served with process through its registered agent, Corporation Service Company,

10   211 E. 7th St., Suite 620, Austin, Texas 78701.

11        10.   Defendant Sprint is a Delaware limited partnership with its principal place of

12   business at 6500 Sprint Parkway, Overland Park, Kansas 66251. In addition to Sprint

13   continuously and systematically conducting business in Texas, the causes of action against Sprint

14   arose from or are connected with Sprint's purposeful acts committed in Texas, including Sprint's

15   making, using, importing, offering for sale, selling, or inducing the sale of infringing

16   communication networks, dual-mode related network components, subscriber units, associated

17   services, or data systems that fall within the scope of or constitute a material portion of at least

18   one claim of the '491 Patent. Sprint may be served with process through its registered agent,

19   Corporation Service Company, 211 E. 7th St., Austin, Texas 78701.

20        11.   Defendant Stoke is a Delaware corporation with its principal place of business at

21   5403 Betsy Ross Drive, Santa Clara, California 95454. In addition to Stoke continuously and

22   systematically conducting business in Texas, the causes of action against Stoke arose from or are

23   connected with Stoke's purposeful acts committed in Texas, including Stoke's making, using,

24   importing, offering for sale, selling, or inducing the sale of infringing communication networks,

25   dual-mode related network components, subscriber units, associated services, or data systems that

26   fall within the scope of or constitute a material portion of at least one claim of the '491 Patent.

27   Stoke engages in business in but does not maintain a regular place of business in Texas and has

28   not designated or maintained a resident agent for service of process. Accordingly, pursuant to

Federal Rule of Civil Procedure 4, section 17.044 of the Texas Civil Practice and Remedies Code, and Articles 2.11 of the Texas Business Corporations Act, the Texas Secretary of State is designated as Stoke's agent for service of process in this action. The Texas Secretary of State Citations Unit may be served at P.O. Box 12079, Austin, Texas 78711-2079 by certified mail, return receipt requested. Pursuant to section 17.045(a) of the Civil Practice and Remedies Code, the Secretary of State shall forward citation and a copy of this Complaint to Stoke's home or home office, c/o Incorporating Services, LTD., 3500 S. Dupont Highway, Dover, Delaware 19901.

12. Defendant Tatara is a Delaware corporation with its principal place of business at 35 Nagog Park, Suite 303, Acton, Massachusetts 01720. In addition to Tatara continuously and systematically conducting business in Texas, the causes of action against Tatara arose from or are connected with Tatara's purposeful acts committed in Texas, including Tatara's making, using, importing, offering for sale, selling, or inducing the sale of infringing communication networks, dual-mode related network components, subscriber units, associated services, or data systems that fall within the scope of or constitute a material portion of at least one claim of the '491 Patent. Tatara may be served with process through its registered agent, CT Corporation, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

13. Defendant HTC is a Texas corporation with its North American corporate headquarters located at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005. In addition to HTC continuously and systematically conducting business in Texas, the causes of action against HTC arose from or are connected with HTC's purposeful acts committed in Texas, including HTC's making, using, importing, offering for sale, selling, or inducing the sale of infringing communication networks, dual-mode related network components, subscriber units, associated services, or data systems that fall within the scope of or constitute a material portion of at least one claim of the '491 Patent. HTC may be served with process through its registered agent, c/o Law Office of Christina C. Hsu, 15224 Interlachen Drive, Austin, Texas 78717.

14. Defendant US Cellular is a Delaware corporation with its corporate headquarters at 8410 West Bryn Mawr, Suite 700, Chicago, Illinois 60631. In addition to US Cellular

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

1  continuously and systematically conducting business in Texas, the causes of action against US

2  Cellular arose from or are connected with US Cellular's purposeful acts committed in Texas,

3  including US Cellular's making, using, importing, offering for sale, selling, or inducing the sale

4  of infringing communication networks, dual-mode related network components, subscriber units,

5  associated services, or data systems that fall within the scope of or constitute a material portion of

6  at least one claim of the '491 Patent. US Cellular engages in business in but does not maintain a

7  regular place of business in Texas and has not designated or maintained a resident agent for

8  service of process. Accordingly, pursuant to Federal Rule of Civil Procedure 4, section 17.044 of

9  the Texas Civil Practice and Remedies Code, and Articles 2.11 of the Texas Business

10  Corporations Act, the Texas Secretary of State is designated as US Cellular's agent for service of

11  process in this action. The Texas Secretary of State Citations Unit may be served at P.O. Box

12  12079, Austin, Texas 78711-2079 by certified mail, return receipt requested. Pursuant to section

13  17.045(a) of the Civil Practice and Remedies Code, the Secretary of State shall forward citation

14  and a copy of this Complaint to US Cellular's home or home office, c/o Mark Krohse, 8410 West

15  Bryn Mawr, Suite 700, Chicago, Illinois 60631 and c/o The Prentice-Hall Corporation System,

16  Inc., 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

17        15.    Defendant Motorola Mobility is a Delaware corporation with its corporate

18  headquarters at 600 North US Highway 45, Libertyville, Illinois 60048. Defendant Motorola

19  Solutions is a Delaware corporation with its corporate headquarters at 1303 East Algonquin Road,

20  Schaumburg, Illinois 60196. Motorola Mobility and Motorola Solutions are collectively referred

21  to as "Motorola." In addition to Motorola continuously and systematically conducting business in

22  Texas, the causes of action against Motorola arose from or are connected with Motorola's

23  purposeful acts committed in Texas, including Motorola's making, using, importing, offering for

24  sale, selling, or inducing the sale of infringing communication networks, dual-mode related

25  network components, subscriber units, associated services, or data systems that fall within the

26  scope of or constitute a material portion of at least one claim of the '491 Patent. Motorola

27  Mobility engages in business in but does not maintain a regular place of business in Texas and

28  has not designated or maintained a resident agent for service of process. Accordingly, pursuant to

Federal Rule of Civil Procedure 4, section 17.044 of the Texas Civil Practice and Remedies Code, and Articles 2.11 of the Texas Business Corporations Act, the Texas Secretary of State is designated as Motorola Mobility's agent for service of process in this action. The Texas Secretary of State Citations Unit may be served at P.O. Box 12079, Austin, Texas 78711-2079 by certified mail, return receipt requested. Pursuant to section 17.045(a) of the Civil Practice and Remedies Code, the Secretary of State shall forward citation and a copy of this Complaint to Motorola Mobility's home or home office, c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Motorola Solutions may be served with process through its registered agent, CT Corp System, 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201-4234.

16.     Defendant Kineto is a Delaware corporation with its corporate headquarters at 1601 McCarthy Boulevard, Milpitas, California 95035. In addition to Kineto continuously and systematically conducting business in Texas, the causes of action against Kineto arose from or are connected with Kineto's purposeful acts committed in Texas, including Kineto's making, using, importing, offering for sale, selling, or inducing the sale of infringing communication networks, dual-mode related network components, subscriber units, associated services, or data systems that fall within the scope of or constitute a material portion of at least one claim of the '491 Patent. Kineto engages in business in but does not maintain a regular place of business in Texas and has not designated or maintained a resident agent for service of process. Accordingly, pursuant to Federal Rule of Civil Procedure 4, section 17.044 of the Texas Civil Practice and Remedies Code, and Articles 2.11 of the Texas Business Corporations Act, the Texas Secretary of State is designated as Kineto's agent for service of process in this action. The Texas Secretary of State Citations Unit may be served at P.O. Box 12079, Austin, Texas 78711-2079 by certified mail, return receipt requested. Pursuant to section 17.045(a) of the Civil Practice and Remedies Code, the Secretary of State shall forward citation and a copy of this Complaint to Kineto's home or home office, c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

17.     Defendant Airvana is a Delaware corporation with its corporate headquarters at 19

Alpha Road, Chelmsford, Massachusetts 01824-4124. In addition to Airvana continuously and systematically conducting business in Texas, the causes of action against Airvana arose from or are connected with Airvana's purposeful acts committed in Texas, including Airvana's making, using, importing, offering for sale, selling, or inducing the sale of infringing communication networks, dual-mode related network components, subscriber units, associated services, or data systems that fall within the scope of or constitute a material portion of at least one claim of the '491 Patent. Airvana may be served with process through its registered agent, Luis Pajares, 9901 East Valley Ranch Parkway, Suite 2000, Irving, Texas 75063.

## JURISDICTION AND VENUE

18.     This is an action for patent infringement under the Patent Laws of the United States, Title 35 of the United States Code. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a). Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

19.     This Court has personal jurisdiction over the Defendants under the laws of the State of Texas, including the Texas long-arm statute, TX. CIV. PRAC. & REM §17.042.

20.     This Court has personal jurisdiction over each Defendant. Plaintiff incorporates herein all statements of jurisdiction in the preceding paragraphs. Upon information and belief, each Defendant has conducted and does conduct business within the State of Texas, directly or through intermediaries or agents, or offers for sale, sells, imports, advertises (including through the provision of interactive web pages) products or services, or uses or induces others to use services or products in Texas that infringe the '491 Patent, or knowingly contributes to infringement of the asserted patent.

## THE PATENT-IN-SUIT

21.     On January 7, 1997, the United States Patent and Trademark Office duly and legally issued the '491 Patent, titled "Wireless Modem," after a full and fair examination. A true and correct copy of the '491 Patent is attached hereto as Exhibit A. EON is an assignee under an exclusive license of all rights, title and interest in and to the '491 Patent and possesses all rights of recovery under the '491 Patent, including the right to recover for past infringement. The '491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

Patent is valid and enforceable.

## GENERAL ALLEGATIONS

### DEFENDANT MOBILE NETWORK OPERATORS

#### Sprint

22.     Sprint and Sprint subscribers directly infringe because they make, use, offer for sale, and sell two-way network employing CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, and Wi-Fi communication technologies in a way that embodies or practices the claims of the '491 Patent.

23.     Sprint's network includes dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices.

24.     Sprint's network includes base stations (also referred to by Sprint as cell towers) that communicate via wireless signals to and from Sprint subscriber devices.

25.     Sprint's network includes equipment within the Sprint network for routing communications to and from Sprint subscriber devices.

26.     Sprint provides femtocells to its subscribers that extend the range Sprint's network.

27.     Sprint dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices are capable of communicating via wireless signals with Wi-Fi Access Points using standard communications protocols (*i.e.* IEEE 802.11).

28.     Sprint's subscribers with dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices are capable of accessing Facebook via a Sprint base station and a Wi-Fi Access Point.

29.     Sprint's subscribers with dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices are capable of accessing the same internet content via a Sprint base station and a Wi-Fi Access Point.

30.     Email services (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email) route message to and from Sprint subscriber devices.

31.     Users of Sprint's subscriber devices can access internet content via Sprint's cellular macro network and through an Airave Access Point.

1     32.     Sprint's Airave Access Point transfers communications between Sprint subscriber

2  devices and the Sprint access network.

3     33.     Sprint's Airave Access Point transfers communications between Sprint subscriber

4  devices and the Sprint core network.

5     34.     An electronic switch is a basic building block of consumer electronics.

6     35.     Sprint dual-mode (cellular + Wi-Fi) subscriber devices contain one or more

7  electronic switches that activate the Wi-Fi or cellular communication capabilities in the device to

8  transmit communications via the Wi-Fi or cellular channel.

9     36.     Femtocells in Sprint's network modulate an analog carrier signal to encode digital

10 information, and demodulate such a carrier signal to decode the transmitted digital information.

11    37.     Wireless access points in Sprint's network modulate an analog carrier signal to

12 encode digital information, and demodulate such a carrier signal to decode the transmitted digital

13 information.

14    38.     Wi-Fi routers in Sprint's network modulate an analog carrier signal to encode

15 digital information, and demodulate such a carrier signal to decode the transmitted digital

16 information.

17    39.     Sprint's network includes mobile hotspots (*e.g.*, a Sierra Wireless 4G LTE Tri-Fi

18 Hotspot).

19    40.     Mobile hotspots in Sprint's network modulate an analog carrier signal to encode

20 digital information, and demodulate such a carrier signal to decode the transmitted digital

21 information.

22    41.     Subscriber devices using Sprint's network receive messages from and transmit

23 messages to Sprint's mobile core network through base stations.

24    42.     Subscriber devices using Sprint's network receive messages from and transmit

25 messages to Sprint's mobile core network through femtocells.

26    43.     Dual mode (Wi-Fi + Cellular) subscriber devices using Sprint's network receive

27 messages from and transmit messages to Sprint's mobile core network through Wi-Fi access

28 points.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\931925.1

44.     Subscriber devices using Sprint's network are capable of receiving messages from and transmitting messages to Sprint's base stations through mobile hotspots.

45.     Sprint contributorily infringes by selling, offering to sell, or importing into the United States material components, including dual-mode subscriber units, femtocells and mobile hot spots, for use by end-users (*e.g.*, Sprint subscribers) who directly infringe. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Sprint was effectively served with the original complaint, Sprint contributorily infringed knowing that these components would become a material part of a method, system or apparatus that infringes the '491 Patent. Sprint's components are made especially for infringing networks because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Sprint has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

46.     Sprint induces infringement by actively instructing and encouraging its customers to make and use infringing networks. Sprint induces infringement through its provision of technical support, advertisements, marketing materials, instruction booklets, applications, mail services, and service manuals regarding the infringing networks or components of infringing networks that it provides. Sprint actively promotes the advantages that the accused networks can offer its customers. End-users (*e.g.,* Sprint subscribers) of infringing networks directly infringe the apparatuses and methods of '491 Patent by making and using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Sprint was effectively served with the original complaint, Sprint's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**US Cellular**

47.     US Cellular and US Cellular subscribers directly infringe because they make, use, offer for sale, and sell two-way network employing CDMA (including, for example, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, and Wi-Fi communication

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\931925.1

PLAINTIFF EON CORP. IP HOLDINGS, LLC'S SECOND AMENDED COMPLAINT CV 12-1011 EMC

technologies in a way that embodies or practices the claims of the '491 Patent.

48.     US Cellular's network includes dual-mode (cellular + Wi-Fi) subscriber devices.

49.     US Cellular's network includes base stations (also referred to by US Cellular as cell towers) that communicate via wireless signals to and from US Cellular subscriber devices.

50.     US Cellular's network includes equipment within the US Cellular network for routing communications to and from US Cellular subscriber devices.

51.     US Cellular dual-mode (cellular + Wi-Fi) subscriber devices are capable of communicating via wireless signals with Wi-Fi Access Points using standard communications protocols (*i.e.*, IEEE 802.11).

52.     US Cellular's subscribers with dual-mode (cellular + Wi-Fi) subscriber devices are capable of accessing Facebook via a US Cellular base station and a Wi-Fi Access Point.

53.     US Cellular's subscribers with dual-mode (cellular + Wi-Fi) subscriber devices are capable of accessing the same internet content via a US Cellular base station and a Wi-Fi Access Point.

54.     Email services (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email) route message to and from US Cellular subscriber devices.

55.     An electronic switch is a basic building block of consumer electronics.

56.     US Cellular dual-mode (cellular + Wi-Fi) subscriber devices contain one or more electronic switches that activate the Wi-Fi or cellular communication capabilities in the device to transmit communications via the Wi-Fi or cellular channel.

57.     Wireless access points in US Cellular's network modulate an analog carrier signal to encode digital information, and demodulate such a carrier signal to decode the transmitted digital information.

58.     Wi-Fi routers in US Cellular's network modulate an analog carrier signal to encode digital information, and demodulate such a carrier signal to decode the transmitted digital information.

59.     US Cellular's network includes mobile hotspots (*e.g.*, Samsung SCH-LC11).

60.     Mobile hotspots in US Cellular's network modulate an analog carrier signal to

Hopkins & Carley
Attorneys At Law
San Jose

626\931925.1

encode digital information, and demodulate such a carrier signal to decode the transmitted digital information.

61.     Subscriber devices using US Cellular's network receive messages from and transmit messages to Sprint's mobile core network through base stations.

62.     Subscriber devices using US Cellular's network are capable of receiving messages from and transmitting messages to US Cellular's base stations through mobile hotspots.

63.     Dual mode (Wi-Fi + Cellular) subscriber devices using US Cellular's network are capable of receiving messages from and transmitting messages to US Cellular's mobile core network through Wi-Fi access points.

64.     US Cellular contributorily infringes by selling, offering to sell, or importing into the United States material components, including dual-mode subscriber units and mobile hot spots, for use by end-users (*e.g.*, US Cellular subscribers) who directly infringe.  Since at least the filing of the original complaint in this case on October 22, 2010, or the date US Cellular was effectively served with the original complaint, US Cellular contributorily infringed knowing that these components would become a material part of a method, system or apparatus that infringes the '491 Patent.  US Cellular's components are made especially for infringing networks because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use.  US Cellular has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

65.     US Cellular induces infringement by actively instructing and encouraging its customers to make and use infringing networks.  US Cellular induces infringement through its provision of technical support, advertisements, marketing materials, instruction booklets, applications, mail services, and service manuals regarding the infringing networks or components of infringing networks that it provides.  US Cellular actively promotes the advantages that the accused networks can offer its customers.  End-users (*e.g.* US Cellular subscribers) of infringing networks directly infringe the apparatuses and methods of '491 Patent by making and using the

infringing networks.  Since at least the filing of the original complaint in this case on October 22, 2010, or the date US Cellular was effectively served with the original complaint, US Cellular's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

## DEFENDANT EQUIPMENT/SOLUTION MANUFACTURERS

### Aruba

66.     Aruba Networks makes, uses, imports, offers for sale, or sells dual-mode related network components, associated services, data systems (e.g., Unlicensed Mobile Access ("UMA") capable systems), or related software solutions that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent).

67.     Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, and Wi-Fi technologies, such as Sprint's network or may include CDMA (including, for example, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), LTE, and Wi-Fi technologies such as US Cellular's network, which are both described in detail above.

68.     The accused multi-mode communication networks may also include GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies, such as deployed in AT&T or T-Mobile's networks, which employ the same, substantially similar, and/or the GSM equivalent components to those described above in relation to Sprint and US Cellular's networks.

69.     In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email),

Hopkins & Carley
Attorneys At Law
San Jose

social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a Wi-Fi communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

70. Exemplar Aruba Networks accused components include dual-mode related network equipment (e.g., MMC (multi-service mobility controller) 3000 series, and MMC 6000 series; Aruba WLAN access point devices: 90 Series, 100 Series, 130 Series, and 175 Series; Aruba AP-124/AP-125; Aruba AP-93H; and Aruba AP-68/AP-68P) which enable subscriber devices (e.g., UMA devices) to switch between communication paths having radio access network components and Wi-Fi network components in accordance with the claims of the '491 Patent.

71. Aruba Networks contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode related network components for use in infringing networks. End-Users of infringing networks and Mobile Network Operators ("MNOs" *e.g.*, at least, Verizon, NCR, Bell Canada, and Telstra) directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Aruba Networks was effectively served with the original complaint, Aruba Networks contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent. Aruba Networks's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Aruba Networks has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\931925.1

PLAINTIFF EON CORP. IP HOLDINGS, LLC'S SECOND AMENDED COMPLAINT CV 12-1011 EMC

under the doctrine of equivalents.

72.　Aruba Networks induces infringement by actively instructing and encouraging its MNO and other customers to build, maintain, and use infringing networks that incorporate Aruba products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners.　Aruba Networks actively promotes the advantages that the accused networks can offer its customers. Aruba Network's customers that are MNOs (*e.g.*, Verizon, NCR, Bell Canada, and Telstra,) and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks.　Since at least the filing of the original complaint in this case on October 22, 2010, or the date Aruba Networks was effectively served with the original complaint, Aruba Networks' actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**Broadsoft**

73.　Broadsoft makes, uses, imports, offers for sale, or sells software and equipment systems that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent).　Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS) and Wi-Fi technologies.　In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as

Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

74. Exemplar Broadsoft software solutions (*e.g.*, IMS Express) facilitate subscriber devices to switch between communication paths having radio access network components and Wi-Fi network components in accordance with one or more claims of the '491 Patent. Broadsoft's IMS Xpress solution implements Voice over IP, Voice over LTE, and Fixed Mobile Convergence. This solution is designed to be incorporated into accused networks and to enable the transfer of mobile phone data from cellular networks to Wi-Fi networks.

75. Broadsoft contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks. End-Users of infringing networks and MNOs directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Broadsoft was effectively served with the original complaint, Broadsoft contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent. Broadsoft's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Broadsoft has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

76. Broadsoft induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Broadsoft products by

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners. Broadsoft actively promotes the advantages that the accused networks can offer its customers. Broadsoft's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Broadsoft was effectively served with the original complaint, Broadsoft's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**Clavister**

77. Clavister makes, uses, imports, offers for sale, or sells dual-mode related network components, associated services, data systems, or related software solutions that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also

Hopkins & Carley
Attorneys At Law
San Jose

626\931925.1

PLAINTIFF EON CORP. IP HOLDINGS, LLC'S SECOND AMENDED COMPLAINT CV 12-1011 EMC

provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

78.     Exemplar Clavister dual-mode related network solutions and components (*e.g.*, I-WLAN/TTG Blade; 20 FemtocelliSEGW Blade; and Clavister Security System 6002 Chasis) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.

79.     Clavister contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks.  End-Users of infringing networks and MNOs directly infringe by making, selling, offering to sell, and/or using the infringing networks.  Since at least the filing of the original complaint in this case on October 22, 2010, or the date Clavister was effectively served with the original complaint, Clavister contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent.  Clavister's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use.  Clavister has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

80.     Clavister induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Clavister products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners.  Clavister actively promotes the advantages that the accused networks can offer its customers.  Clavister's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and

1  methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks.

2  Since at least the filing of the original complaint in this case on October 22, 2010, or the date

3  Clavister was effectively served with the original complaint, Clavister's actions have been

4  intentional and done with knowledge that its actions induced infringement of the '491 Patent.

5  **Cisco**

6      81.    Cisco makes, uses, imports, offers for sale, or sells dual-mode related network

7  components, associated services, data systems, or related software solutions that fall within the

8  scope of the claims of the '491 Patent or are specially configured for use in and constitute a

9  material portion of the patented invention (e.g., multi-mode communication networks comprising

10  subscriber units, base station repeater cells/digital transmitters, and/or network hub switching

11  centers, and modems that facilitate switching between communication paths in accordance with

12  one or more claims of the '491 Patent).  Such multi-mode communication networks may be based

13  on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G

14  LTE, 4G WiMAX, and Wi-Fi technologies, such as Sprint's network or may include CDMA

15  (including, for example, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), LTE, and Wi-Fi

16  technologies such as US Cellular's network, which are both described in detail above.   The

17  accused multi-mode communication networks may also include GSM, Unlicensed Mobile Access

18  (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies, such as deployed in AT&T or

19  T-Mobile's networks, which employ the same, substantially similar, and/or the GSM equivalent

20  components to those described above in relation to Sprint and US Cellular's networks.   In

21  addition to MNO components, equipment, software, and devices, third parties may operate

22  Network Hub Switching Centers in accused infringing networks that are accessible and used by

23  MNOs and end users. For example, MNO customers can connect to third-party email servers

24  (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social

25  networks (such as Facebook), location services (such as MapQuest and Google Maps), search

26  engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber

27  units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through

28  a wireless access point communications link.  Third parties may also provide access to modems,

such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

82. Exemplar Cisco dual-mode related network solutions and components (*e.g.*, ASR 5000, ASR 5500, ASR 1000, Cisco Intelligent Services Gateway, Access Zone Router, SP Wi-Fi Service Managers, Cisco Access Registrar and associated components, AAA Servers, CNS Access Registrar versions 4.0 and higher, Mobile Switching Centers, Home Agent, Cisco 7600/6500 and Cisco 7206vxr,Cisco Broadband Wireless Gateway on Cisco 7600 and 7301 Routers, Cisco Flex 7500 Series Wireless Controller, Cisco 5500 Series Wireless LAN Controller, Cisco 2500 Series Wireless Controller, Cisco Wireless Services Module 2 for Catalyst, 6500 Series Switches, Cisco Wireless Controller Software for ISR G2, wireless routers, Cisco® Enhanced UMA Security Gateway Solution, the Cisco CNS Access Registrar, the Cisco IP Transfer Point, the Cisco AS5400 Series Universal Gateway, a range of Linksys® access points, Cisco 3G Femtocell,Cisco Femtocell Gateway,Cisco Femtocell Management and Provisioning Systems, ASR 5000) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.

83. Cisco directly infringes by testing its products in manners that meet every element of the '491 Patent.

84. Cisco contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks. End-Users of infringing networks and MNOs directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Cisco was effectively served with the original complaint, Cisco contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent. Cisco's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\931925.1

PLAINTIFF EON CORP. IP HOLDINGS, LLC'S SECOND AMENDED COMPLAINT CV 12-1011 EMC

mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Cisco has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

85. Cisco induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Cisco products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners. Cisco actively promotes the advantages that the accused networks can offer its customers. Cisco's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Cisco was effectively served with the original complaint, Cisco's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**Mavenir**

86. Mavenir makes, uses, imports, offers for sale, or sells software and equipment systems that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For

example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

87. Exemplar Mavenir dual-mode related network solutions and components (*e.g.,* Mavenir's Convergence Telephony Application Server, Mobility Application Server, and mOne Convergence Platform) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.

88. Mavenir contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks. End-Users of infringing networks and MNOs (including at least Vodafone, Telefonica Moviles, T-Mobile; Telstra, Bharti; Viettel, MetroPCS, Leap Wireless, and Bell Mobility) directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Mavenir was effectively served with the original complaint, Mavenir contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent. Mavenir's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing use) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Mavenir has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\931925.1

89.     Mavenir induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Mavenir products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners.   Mavenir actively promotes the advantages that the accused networks can offer its customers.  Mavenir's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Mavenir was effectively served with the original complaint, Mavenir's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**Meru**

90.     Meru makes, uses, imports, offers for sale, or sells software and equipment systems that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent).  Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies.   In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

91. Exemplar Meru dual-mode related network solutions and components (*e.g.,* Meru WLAN solutions and components, Meru Virtualized WLAN; System Director; AP 110; AP 1000 6 Series; AP 300 Series; AP 433i, AP433 is, and AP 433e; and OAP 380 and OAP 433e) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.

92. Meru contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks. End-Users of infringing networks and MNOs (including at least T-Mobile) directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Meru was effectively served with the original complaint, Meru contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent. Meru's dual-mode related network components are made especially for infringing networks (with features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non- infringing use) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Meru has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

93. Meru induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Meru products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners. Meru actively promotes the

advantages that the accused networks can offer its customers. Meru's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Meru was effectively served with the original complaint, Meru's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**SerComm**

94. SerComm makes, uses, imports, offers for sale, or sells software and equipment systems that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

95. Exemplar SerComm dual-mode related network solutions and components (*e.g.,* AD1006 11N Wireless ADSL Gateway, Cable RG Cable Residential Gateway, FR1088BR

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

Triple-Play Residential Gateway, IP1006GR 11N Wireless Gigabit Gaming Router, IP1006RRv2 11N Wireless BroadBand Router, IP1006SR150N Wireless BroadBand Router, AP101nA 11N Wireless Access Point, and femtocells such as FC07xU Series, FC17xU Series, FC23xU Series, FC270U) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.

96.     SerComm contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks.  End-Users of infringing networks and MNOs directly infringe by making, selling, offering to sell, and/or using the infringing networks.  Since at least the filing of the original complaint in this case on October 22, 2010, or the date SerComm was effectively served with the original complaint, SerComm contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent.  SerComm's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use.  SerComm has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

97.     SerComm induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate SerComm products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners.  SerComm actively promotes the advantages that the accused networks can offer its customers.  SerComm's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing

networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date SerComm was effectively served with the original complaint, SerComm's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**Sonus**

98.     Sonus makes, uses, imports, offers for sale, or sells software and equipment systems that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS),and Wi-Fi technologies. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

99.     Exemplar Sonus dual-mode related network solutions and components (*e.g.,* Sonus Centralized Policy Server, IMS Breakout Gateway Control Function Routing Server, Sonus GSX series, ASX Voice Application Server, ASX Telephony Application Server, and Access Directory Server) are incorporated into accused networks to facilitate multi-mode communication including

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

cellular communication paths and wireless local area network paths.

100. Sonus contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks. End-Users of infringing networks and Mobile Network Operators (including at least, Cable and Wireless International, Global Crossing, Interoute, Level 3, NTT Communications, Qwest, Telenet, Time Warner Telecom, and Verizon) directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Sonus was effectively served with the original complaint, Sonus contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent. Sonus's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Sonus has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

101. Sonus induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Sonus products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners. Sonus actively promotes the advantages that the accused networks can offer its customers. Sonus's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Sonus was effectively served with the original complaint, Sonus's actions have been intentional and done with

knowledge that its actions induced infringement of the '491 Patent.

**Stoke**

102.    Stoke makes, uses, imports, offers for sale, or sells software and equipment systems that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

103.    Exemplar Stoke dual-mode related network solutions and components (*e.g.,* model SSX 3000) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.

104.    Stoke contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks. End-Users of infringing networks and MNOs directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the

original complaint in this case on October 22, 2010, or the date Stoke was effectively served with the original complaint, Stoke contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent. Stoke's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Stoke has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

105. Stoke induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Stoke products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners. Stoke actively promotes the advantages that the accused networks can offer its customers. Stoke's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Stoke was effectively served with the original complaint, Stoke's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**Motorola Solutions**

106. Motorola Solutions makes, uses, imports, offers for sale, or sells software and equipment systems that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between

Hopkins & Carley
Attorneys At Law
San Jose

626\931925.1

communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

107. Exemplar Motorola Solutions dual-mode related network solutions and components (e.g., AP 300, AP 650, MC 802, AP 6511, AP 5132, AP 5181, VMM 4300, AP 7131, AP 7181, RFS 4000, RFS 6000, RFS 7000; Motorola Backhaul devices: PTP 100, PTP 200, PTP 500, PTP 600, PTP 800, PMP 100, PMP 320, PMP 430; and Motorola mobile computers and handsets: ES400, MC65, MC75A, MC9500k, MC959B, VC69096) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.

108. Motorola Solutions contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks. End-Users of infringing networks and MNOs directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Motorola Solutions was effectively served with the original complaint, Motorola Solutions contributorily infringed knowing that its dual-mode related network components would become a material part of a

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

method, system or apparatus that infringes the '491 Patent. Motorola Solutions' dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Motorola Solutions has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

109. Motorola Solutions induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Motorola Solutions products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners. Motorola Solutions actively promotes the advantages that the accused networks can offer its customers. Motorola Solutions's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Motorola Solutions was effectively served with the original complaint, Motorola Solutions's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**Tatara**

110. Tatara makes, uses, imports, offers for sale, or sells software and equipment systems that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\931925.1

PLAINTIFF EON CORP. IP HOLDINGS, LLC'S SECOND AMENDED COMPLAINT CV 12-1011 EMC

DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

111. Exemplar Tatara dual-mode related network solutions and components (*e.g.,* Convergence Server) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.

112. Tatara contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks. End-Users of infringing networks and MNOs (including, at least, Vodafone, Bell Mobility, British Telecom, and Telus Mobility) directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Tatara was effectively served with the original complaint, Tatara contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent. Tatara's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\931925.1

PLAINTIFF EON CORP. IP HOLDINGS, LLC'S SECOND AMENDED COMPLAINT CV 12-1011 EMC

noninfringing use. Tatara has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

113. Tatara induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Tatara products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners. Tatara actively promotes the advantages that the accused networks can offer its customers. Tatara's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Tatara was effectively served with the original complaint, Tatara's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**Kineto**

114. Kineto makes, uses, imports, offers for sale, or sells software and equipment systems that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as

Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

115. Exemplar Kineto dual-mode related network solutions and components (*e.g.,* Smart Wi-Fi and Smart VoIP Solutions, Smart Wi-Fi Gateway) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.

116. Kineto contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks. End-Users of infringing networks and MNOs (including at least T-Mobile) directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Kineto was effectively served with the original complaint, Kineto contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent. Kineto's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Kineto has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

117. Kineto induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Kineto products by touting the advantages that its products can provide to such networks, by providing technical assistance in

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners. Kineto actively promotes the advantages that the accused networks can offer its customers. Kineto's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Kineto was effectively served with the original complaint, Kineto's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**Airvana**

118. Airvana makes, uses, imports, offers for sale, or sells software and equipment systems that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, GSM, Unlicensed Mobile Access (UMA), IP Multimedia Subsystem (IMS), and Wi-Fi technologies. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

119.    Exemplar Airvana dual-mode related network solutions and components (*e.g.,* Femtocell base station models Airvana HubBub CDMA, Airvana HubBub UMTS, Airave) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.

120.    Airvana's Airave contains special functionality to provide communication access to Sprint subscribers where cellular is impaired inadequate or complete unavailable.

121.    Airvana provides instructions to its customers to use the Airave an infringing manner.

122.    Airvana contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode solutions and related network components for use in infringing networks.  End-Users of infringing networks and MNOs (including at least Sprint) directly infringe by making, selling, offering to sell, and/or using the infringing networks.  Since at least the filing of the original complaint in this case on October 22, 2010, or the date Airvana was effectively served with the original complaint, Airvana contributorily infringed knowing that its dual-mode related network components would become a material part of a method, system or apparatus that infringes the '491 Patent.  Airvana's dual-mode related network components are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use.  Airvana has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

123.    Airvana induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Airvana products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners.  Airvana actively

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

promotes the advantages that the accused networks can offer its customers. Airvana's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Airvana was effectively served with the original complaint, Airvana's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**SUBSCRIBER DEVICE MANUFACTURERS**

**HTC**

124. HTC makes, uses, imports, offers for sale, or sells dual-mode (Wi-Fi + cellular) subscriber units that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g., multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, and Wi-Fi technologies, such as Sprint's network or may include CDMA (including, for example, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), LTE, and Wi-Fi technologies such as US Cellular's network, which are both described in detail above. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

125.   Exemplar HTC dual-mode subscriber units (*e.g.,*HTC Arrive, HTC Hero with Google, HTC EVO Design 4G, HTC EVO 4G LTE, HTC EVO 3D,HTC EVO 4G, HTC One V, HTC Merge, HTC Wildfire S,HTC 7 Pro, HTC Desire, HTC Touch Pro 2, HTC Hero S) are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths.   Dual-mode subscriber units are devices that can access a base station repeater cell (i.e., the radio access network) or a network hub switching center (i.e., a mobile core network or third party web server) through a base station or a modem (e.g., Wi-Fi access point).   All dual-mode devices sold by HTC are accused subscriber units.

126.   HTC manufactures and sells dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices for the Sprint network.

127.   HTC manufactures and sells dual-mode (cellular + Wi-Fi) subscriber devices for the US Cellular network.

128.   HTC dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices are capable of communicating via wireless signals with Wi-Fi Access Points using standard communications protocols (*i.e.* IEEE 802.11).

129.   HTC dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices are capable of accessing Facebook via a base station and a Wi-Fi Access Point.

130.   HTC dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices are capable of accessing the same internet content via a base station and a Wi-Fi Access Point.

131.   Users of HTC subscriber devices can access internet content via Sprint's cellular macro network and through an Airave Access Point.

132.   An electronic switch is a basic building block of consumer electronics.

133.   HTC dual-mode (cellular + Wi-Fi) subscriber devices contain one or more electronic switches that activate the Wi-Fi or cellular communication capabilities in the device to transmit communications via the Wi-Fi or cellular channel.

134.   HTC contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode subscriber units for use in infringing networks.  End-Users of

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

infringing networks and MNOs (including at least Sprint and US Cellular) directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date HTC was effectively served with the original complaint, HTC contributorily infringed knowing that its dual-mode subscriber units would become a material part of a method, system or apparatus that infringes the '491 Patent. HTC's dual-mode subscriber units are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. HTC has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

135.  HTC induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate HTC products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners. HTC actively promotes the advantages that the accused networks can offer its customers. HTC's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date HTC was effectively served with the original complaint, HTC's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**Motorola Mobility**

136.  Motorola Mobility makes, uses, imports, offers for sale, or sells dual-mode (Wi-Fi + cellular) subscriber units that fall within the scope of the claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (e.g.,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\931925.1

PLAINTIFF EON CORP.  IP HOLDINGS, LLC'S SECOND AMENDED COMPLAINT  CV 12-1011 EMC

multi-mode communication networks comprising subscriber units, base station repeater cells/digital transmitters, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Such multi-mode communication networks may be based on CDMA (including, for example, IS-95A, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), 4G LTE, 4G WiMAX, and Wi-Fi technologies, such as Sprint's network or may include CDMA (including, for example, 1xEV-DO, Rev. A, 1xEV-DO, Rel. 0, and 1X), LTE, and Wi-Fi technologies such as US Cellular's network, which are both described in detail above. In addition to MNO components, equipment, software, and devices, third parties may operate Network Hub Switching Centers in accused infringing networks that are accessible and used by MNOs and end users. For example, MNO customers can connect to third-party email servers (such as Gmail, Microsoft Exchange, Blackberry Enterprise Servers, and Yahoo! email), social networks (such as Facebook), location services (such as MapQuest and Google Maps), search engines (such as Yahoo!, Google, and Bing), and other internet based services using subscriber units provided by the MNO, a handset manufacturer, or retailer via an MNO Network or through a wireless access point communications link. Third parties may also provide access to modems, such as public hotspots and private wireless access points, or provide radio access network equipment through roaming agreements.

137. Exemplar Motorola Mobility dual-mode subscriber units (*e.g.,* Motorola XPRT, Motorola PHOTON 4G, Motorola ADMIRAL, Motorola TITANIUM, Motorola Electrify are incorporated into accused networks to facilitate multi-mode communication including cellular communication paths and wireless local area network paths. Dual-mode subscriber units are devices that can access a base station repeater cell (i.e., the radio access network) or a network hub switching center (i.e., a mobile core network or third party web server) through a base station or a modem (e.g., Wi-Fi access point). All dual-mode devices sold by Motorola Mobility are accused subscriber units.

138. Motorola Mobility manufactures and sells dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices for the Sprint network.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

139.    Motorola Mobility manufactures and sells dual-mode (cellular + Wi-Fi) subscriber devices for the US Cellular network.

140.    Motorola Mobility dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices are capable of communicating via wireless signals with Wi-Fi Access Points using standard communications protocols (*i.e.* IEEE 802.11).

141.    Motorola Mobility dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices are capable of accessing Facebook via a base station and a Wi-Fi Access Point.

142.    Motorola Mobility dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices are capable of accessing the same internet content via a base station and a Wi-Fi Access Point.

143.    Users of Motorola Mobility subscriber devices can access internet content via Sprint's cellular macro network and through an Airave Access Point.

144.    An electronic switch is a basic building block of consumer electronics.

145.    Motorola Mobility dual-mode ((cellular or WiMAX) + Wi-Fi) subscriber devices contain one or more electronic switches that activate the Wi-Fi or cellular communication capabilities in the device to transmit communications via the Wi-Fi or cellular channel.

146.    Email services (such as Gmail) route message to and from Motorola Mobility subscriber devices.

147.    Motorola Mobility contributorily infringes by selling, offering to sell, or importing into the United States the above dual-mode subscriber units for use in infringing networks. End-Users of infringing networks and MNOs (including at least Sprint and US Cellular) directly infringe by making, selling, offering to sell, and/or using the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Motorola Mobility was effectively served with the original complaint, Motorola Mobility contributorily infringed knowing that its dual-mode subscriber units would become a material part of a method, system or apparatus that infringes the '491 Patent. Motorola Mobility's dual-mode subscriber units are made especially for infringing networks (which include features and functions that themselves are not a staple article or commodity of commerce suitable for substantial non-infringing uses) because they include multi-mode or multi-mode enabling features and functions

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

that are only intended for use in the infringing networks and, therefore, are not staple articles or commodities of commerce suitable for substantial noninfringing use. Motorola Mobility has been and is presently infringing at least one claim of the '491 Patent in this District, the State of California, and elsewhere, literally or under the doctrine of equivalents.

148. Motorola Mobility induces infringement by actively instructing and encouraging its customers to build, maintain, and use infringing networks that incorporate Motorola Mobility products by touting the advantages that its products can provide to such networks, by providing technical assistance in integrating its products into such networks, or by providing service manuals or other instructions explaining how to use their products in infringing manners. Motorola Mobility actively promotes the advantages that the accused networks can offer its customers. Motorola Mobility's customers that are MNOs and end-users of infringing networks directly infringe the apparatuses and methods of '491 Patent by making, using, selling, and/or offering to sell the infringing networks. Since at least the filing of the original complaint in this case on October 22, 2010, or the date Motorola Mobility was effectively served with the original complaint, Motorola Mobility's actions have been intentional and done with knowledge that its actions induced infringement of the '491 Patent.

**INFRINGEMENT OF THE EON PATENT-IN-SUIT**

149. EON repeats and realleges the allegations set forth in paragraphs 22-148 as if those allegations have been fully set forth herein.

150. Defendants, without authorization or license and in violation of 35 U.S.C. § 271, have been and/or are now infringing at least one claim of the '491 Patent in this District, the State of Texas, and elsewhere by making, using, selling, offering for sale, or importing dual-mode related network components, associated services, data systems or related software solutions that fall within the scope of at least one claim of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention (*e.g.*, dual-mode communication networks comprising subscriber units, base stations, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent). Defendants are and/or have been infringing literally or under the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\931925.1

PLAINTIFF EON CORP. IP HOLDINGS, LLC'S SECOND AMENDED COMPLAINT CV 12-1011 EMC

doctrine of equivalents, directly or indirectly by knowingly and specifically intending to contribute to or induce infringement by others, alone or through their relationships with network component manufacturers, wireless network operators, wireless customers and/or end-users.

151. Defendants have acted in the manners described in the above paragraphs with knowledge of the '491 Patent, knowledge that their respective product or component directly infringes and/or would be used in a method, system or apparatus that infringes the '491 Patent, knowledge that their respective product or component is especially made or adapted for use in a method, system or apparatus that infringes the '491 Patent and is not a staple article or commodity suitable for substantial noninfringing use, and knowledge that their product or component would constitute a material part of a method, system or apparatus (*e.g.*, dual-mode communication networks comprising subscriber units, base stations, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent) that infringes the '491 Patent. Defendants acted in the manners described above knowing and intending that their acts would induce infringement by others.

152. In addition to the allegations of direct infringement alleged in the preceding paragraphs, EON also alleged indirect infringement under 35 U.S.C. §§271(b) and (c) against the Defendants. In relation to EON's indirect infringement claims, the corresponding direct infringers are those people or entities, including but not limited to the people and entities listed in paragraphs 22-148, that are induced by or receive contributions from the indirect infringers and directly, either literally or jointly, infringe the '491 Patent. These direct infringers include but are not limited to the literal direct infringers, for example MNOs, wireless operators, wireless customers, and end-users (*e.g.* MNO subscribers) which have in the past or presently make, use, sell, offer for sale, or import infringing communication networks comprising subscriber units, base stations, and/or network hub switching centers, and modems that facilitate switching between communication paths in accordance with one or more claims of the '491 Patent, as well as any other person or entity that jointly infringes the '491 Patent.

153. Defendants' infringement of the '491 Patent has been deliberate and willful at least

Hopkins & Carley
Attorneys At Law
San Jose

since the date of the filing of the original complaint in his action or since the date they were effectively served with the original complaint.

154.    The Defendants in this action have been on notice of the patent-in-suit and of EON's allegations of infringement since the filing of the original complaint in this matter on October 22, 2010. Since that time, no Defendant has changed its behavior relating to the conduct at issue in this case. The Defendants' have continued to act in this manner despite a high likelihood that they infringe the patent-in-suit.

155.    EON is in compliance with the requirements of 35 U.S.C. § 287.

156.    Defendants' infringement will continue unless enjoined by this Court.

157.    EON has suffered, and will continue to suffer, irreparable injury as a result of Defendants' infringement.

158.    EON has been damaged by Defendants' infringement, and will continue to be damaged until this Court enjoins Defendants.

## PRAYER FOR RELIEF

WHEREFORE, EON prays for the following relief:

A.    That each Defendant be adjudged to have infringed the '491 Patent, directly or indirectly by way of inducement or contributory infringement, literally or under the doctrine of equivalents;

B.    That each Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be preliminarily and permanently restrained and enjoined from directly or indirectly infringing the '491 Patent;

C.    An award of damages pursuant to 34 U.S.C. §284 sufficient to compensate EON for the Defendants' past infringement and any continuing or future infringement up until the date Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

D.    An assessment of pre-judgment and post-judgment interest and costs against Defendants, together with an award of such interest and costs, in accordance with 35 U.S.C.

§ 284;

E.     That Defendants be directed to pay enhanced damages, including EON's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

F.     That EON have such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

EON demands a trial by jury of any and all issues triable of right before a jury.

Dated: July 27, 2012                                    HOPKINS & CARLEY
                                                                      A Law Corporation


                                                                      By: */s/ John V. Picone III*
                                                                      John V. Picone III

                                                                      **Attorneys for Plaintiff**
                                                                      **EON Corp. IP Holdings, LLC**

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

626\931925.1

PLAINTIFF EON CORP. IP HOLDINGS, LLC'S SECOND AMENDED COMPLAINT CV 12-1011 EMC