

**SAN JOSE**
THE LETITIA BUILDING
70 S FIRST STREET
SAN JOSE, CA 95113-2406
T 408.286.9800
F 408.998.4790

**PALO ALTO**
200 PAGE MILL ROAD
SUITE 200
PALO ALTO, CA 94306-2062
T 650.804.7600
F 650.804.7630

MAILING ADDRESS
PO BOX 1469
SAN JOSE, CA 95109-1469

hopkinscarley.com

JOHN V. PICONE III
jpicone@hopkinscarley.com
408-299-1388
Fax 408-938-6219

December 3, 2012

*Via Electronic Filing*

The Hon. Edward M. Chen
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *EON Corp. IP Holdings LLC v. Sprint Spectrum, L.P., et al.,*
              Case No. 3:12-cv-01011 EMC

Dear Judge Chen:

      Pursuant to the Court's Civil Standing Order on Discovery and the Court's Civil Minutes issued subsequent to the October 26, 2012 further case management conference (Dkt. No. 569), Plaintiff EON Corp. IP Holdings, LLC ("EON") and Defendants HTC America, Inc., Clavister AB, Kineto Wireless, Inc., Aruba Networks, Inc., Broadsoft, Inc., Cisco Systems, Inc., Meru Networks, Inc., Airvana, Inc., Sprint Spectrum, L.P., Mavenir Systems, Inc., Sonus Networks, Inc., Motorola Mobility LLC, Motorola Solutions, Inc., U.S. Cellular Corporation and Sercomm Corporation (collectively, "Defendants") submit this joint letter brief. At the October 26, 2012 further case management conference, Judge Chen ordered the parties in the above-captioned matter to meet and confer regarding the timing and scope of damages contentions and/or a damages discovery plan and either: i) enter into a stipulation regarding same; or ii) file a brief joint letter stating their disagreement. (*See* Dkt. No. 569, p. 2). This brief joint letter summarizes the parties' respective positions relating to damages contentions in this case.

      Prior to filing this request for relief, counsel with full and complete authority on discovery matters met and conferred by telephone[1] concerning the issues raised herein. Attached are the competing versions of the parties' proposed damages contentions provisions (**Exhibit A** is Defendants' proposed stipulation with attachment and **Exhibit 4** is EON's proposal). In support of their respective proposals, the parties set forth below their respective positions below.

---

[1] Plaintiff's counsel is located on the West coast and numerous counsel for Defendants are located on the East coast, and thus the parties respectfully submit there was good cause to meet and confer by telephone rather than in person concerning the matters raised in this joint letter brief.

December 3, 2012
Page 2

## I.      EON's Position Regarding Damages Contentions In This Case

### A.      Summary of the Dispute

Defendants in this case seek to impose a novel "damages contentions" procedure. While, in theory, an early disclosure of damages theories and facts sounds appealing, in reality, Defendants propose that EON file an early, binding Expert Report on damages without the benefit of necessary damages discovery. Imposition of Defendant's proposal in this case is both unrealistic and prejudicial.

Defendants first introduced the concept of damages contentions in this case during the drafting of the first joint case management conference statement. Given that damages contentions are not required by the Federal Rules of Civil Procedure nor the Local Rules for the Northern District of California, EON took the position that damages contentions were not required in this case. During the first case management conference on June 22, 2012 ("June 22nd CMC"), the issue of damages contentions was addressed by the parties. EON indicated that if the Court was inclined to require damages contentions in this case, despite the fact that something as detailed as the Defendants were requesting was typically done at the expert report stage, the Defendants must provide to EON damages documentation and information relevant to lost profits and reasonable royalties in order for EON to prepare the very thorough and precise analysis regarding lost profits and/or reasonable royalties defendants were demanding. [Dkt. No. 442, Transcript of Proceedings[2], at p. 24:22-25:3]. The Court requested that the parties meet and confer regarding damages contentions and advise the Court of their progress. As noted above, this issue had not been resolved at the time of the October 26, 2012 further case management conference ("October 26th CMC"). At that time, the Court ordered the parties to either come to an agreement or file a brief joint letter setting forth their respective positions regarding this issue.

Defendants argued and continue to argue that: i) if they understood the lay of the land with respect to damages early in the case, it would help them evaluate whether or not they could settle, and not spend millions of dollars in legal fees on litigation; ii) what Defendants are looking for from EON is a 10,000 or 20,000-foot view in terms of EON's basic theory, as opposed to the more precise documentation once the parties get into the finer details of the case; and iii) Defendants were looking for a more phased approach to figure out what the theory of damages are and then start filling in the details that will define the scope of comprehensive

---

[2] A true and correct copy of Dkt. No. 442, Transcript of Proceedings, is attached hereto as **Exhibit 1**.

614\960028.2

December 3, 2012
Page 3

discovery[3] [Dkt. No. 442, Transcript of Proceedings, at p. 22:8-12; Dkt. No. 574, Transcript of Proceedings[4], at p. 15:25-17:3.]

While EON was skeptical, given the fact that Defendants were requesting all damages theories, including the legal and factual basis and evidence of same set forth by Bates numbers for documentation supporting EON's theories [see Dkt. No. 567, Supplemental Joint Case Management Conference Statement, pages 16-22 and Attachment A[5]], EON agreed to meet and confer with Defendants to determine whether the parties could agree to: i) an agreed upon form of damages contentions; and ii) an agreed upon list of categories of documents Defendants must produce in order to allow EON to provide Defendants the damages contentions they seek. Unfortunately, the meet and confer process failed, and Defendants continue to demand that EON provide detailed and specific damages contentions to Defendants, effectively on par with expert reports, without producing to EON any documentation other than limited sales information for certain products sold – despite knowing that this limited amount of information is insufficient to enable EON to provide the contentions sought. Judge Chen agreed with EON on this point at the October 26th CMC[6].

### B.   Damages Contentions Should Not Be Required In This Case

Given Defendants' conflicting position regarding damages contentions, i.e. that EON provide its complete damages theories and facts and documents supporting those theories and facts without the benefit of discovery, EON asserts that damages contentions should not be required in this case. After counsel speaking for Defendants at the October 26th CMC advised Judge Chen what Defendants were looking for in terms of damages contentions, Judge Chen indicated that this description "suggests that discovery ought to be left to the more traditional process, rather than trying to set forth in Exhibit A, which is almost the end, and not the mid-point game. Maybe we ought to just jettison that, and just let you start off with some contention interrogatories or something along those lines, to figure out what their basic theory is. And then, that might help define the scope of what the more detailed discovery will look like." *See* Dkt. No. 574, Transcript of Proceedings, at 17:23-18:6.

---

[3] Despite Defendants' assertion that they are looking for a more phased approach to damages contentions, their proposal makes clear that this is not their true intention.

[4] A true and correct copy of Dkt. No. 574, Transcript of Proceedings, is attached hereto as **Exhibit 2.**

[5] A true and correct copy of Dkt. No. 567, Supplemental Joint Case Management Conference Statement and Attachment A thereto is attached hereto as **Exhibit 3**.

[6] Judge Chen to Defendants' counsel: "All right. So, that's the question. If what we're leading to is a meaningful exchange of contentions along the lines that are set forth in Attachment A – which does require, for instance, all legal and factual basis for – including factors and evidence relevant to determination of a reasonable royalty rate. Certainly seems like what you have proposed, which is just the sales numbers, is going to be a little light. Don't you think?" *See* Dkt. No. 574, Transcript of Proceedings, at p. 13:9-17.

      **C.** **Should The Court Require Damages Contentions In This Case, EON's Proposed Damages Contentions Should Be Adopted As They Allow EON To Provide All Damages Theories, Including The Legal And Factual Basis And Evidence Of Same Set Forth By Bates Numbers For Documentation Supporting EON's Theories, As Defendants Demand**

If the Court requires EON to prepare damages contentions in this case, given that the Defendants have refused to change their unrealistic position relating to damages contentions, EON respectfully requests that the Court adopt EON's proposal for damages contentions, which is attached hereto as **Exhibit 4**. Simply put, EON's proposal requires Defendants to produce the documents in their possession, custody or control on which EON's damages theories would depend, before requiring EON to commit to specific legal theories, arguments and evidence in support of same. EON's proposal does not create any burden or prejudice to Defendants beyond their existing obligations pursuant to the Federal Rules of Civil Procedure, Local Rules of the Northern District of California or the General Orders and Standing Orders of this Court.

      **D.** **Defendants' Damages Contention Proposal Is Unrealistic And Prejudicial, As It Demands Damages Contentions From EON On Par With Expert Reports With No Damages Discovery Other Than The Provision Of Limited Sales Information**

Despite Defendants' arguments to the contrary, a simple review of their proposed damages contentions reveal that EON must develop, explain and support, in detail, its complete damages case at the outset of this action without any significant fact discovery. While the Defendants' damages contention proposal purports to seek only "an identification of the type of damages being sought from each party," a closer read shows that it demands the entire legal and factual basis for EON's damages case, complete with Bates numbers for supporting documentation. [*see* Dkt. No. 567, Supplemental Joint Case Management Conference Statement, pages 16-22 and Attachment A]. Judge Chen recognized this contradiction at the October 26th CMC, referring to Defendants' proposed damages contentions as "almost the end game, and not the mid-point game,"[7] and criticizing them for requiring a commitment to "every fact, every document that supports that particular calculus" before the Defendants produce the bulk of their damages documents.[8]

---

[7] *See* Dkt. No. 574, Transcript of Proceedings, at p. 17:23-18:6.

[8] *Id.* at 20:25-21:16 (Judge Chen to Defendants' Counsel: "Well, the problem is if you look at Exhibit A, it's not phased in the way you suggest…It assumes that that's the measure of damages, and then you want commitment. If they're seeking 1 percent or 4 percent, you want to know every fact, every document that supports that particular calculus. Then you're getting into, you know, sort of what I would consider the second stage. You collapse it all, and that then brings up their question: 'Well, how am I we [sic] going to answer that unless we get some of these documents?' Maybe not all of these, but some of these 26 categories of documents?' So, you know, which way do you want it?").

December 3, 2012
Page 5

      Defendants' approach is unrealistic and prejudicial. EON, like most patent plaintiffs, is entitled to fact discovery to develop its theories and evidence before committing to its damages theories, as most of the key documents and evidence are currently in the Defendants' sole possession, custody and control. *See* Advisory Comm. note to 1993 Amendment to Fed. R. Civ. P. 26(a)(1) ("a party would not be expected to provide a calculation of damages which, *as in many patent infringement actions*, depends on information in the possession of another party or person.") (emphasis added). For instance, the most accurate measure of the value of the infringing networks to Sprint and U.S. Cellular may be the cost savings associated with offloading data traffic from the cellular networks, rather than building more cellular infrastructure; however, Defendants' analyses of these cost savings are maintained solely by the Defendants and are not publicly available. As another example, the revenues and margins of the accused products, along with past licensing practices of the Defendants, is a factor governing the appropriate royalty rate and royalty base under a reasonable royalty measure of damages. This information, however, is also maintained solely by the Defendants and is not publicly available.

      This type of overreaching by the Defendants is why the Patent Local Rules of the Northern District of California do not require damages contentions. Ultimately, the Patent Local Rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). The drafters of the Local Rules *chose* not to require contentions for damages, as they did for infringement and invalidity, striking that balance in favor of the patentee. Indeed, the other Courts that have adopted Local Patent Rules have also declined to implement damages contentions.

      As can be seen from a review of Defendants' proposal, Defendants propose that EON's damage contentions should contain, to the extent EON seeks lost profits, (1) the demand for the invention(s) describe in the Patent-in-Suit; (2) EON's capacity to manufacture and market the alleged infringing products; *and* (3) EON's economic damages and whether those damages can be quantified with reasonable probability. To the extent EON seeks a reasonable royalty, Defendant demand ***all*** of EON's claims, ***and all*** supporting evidence, regarding the appropriate royalty base, the methodology used to determine the royalty base, whether and how the entire market value rule and/or apportionment applies, the date of the hypothetical negotiation, the *Georgia-Pacific* factors[9] that EON intends to rely on, ***and*** other information. [*See see* Dkt. No. 567, Supplemental Joint Case Management Conference Statement, pages 16-22 and Attachment A and Defendants' proposed damages contentions attached hereto as **Exhibit A**]. Just analyzing the *Georgia-Pacific* factors requires EON to evaluate 15 factors to determine the type of monetary payments that would compensate for a patent infringement.[10] Defendants cannot

---

[9] *Georgia-Pacific Corp.* v. *United States Plywood Corp.,* 318 FSupp 1116, 6 USPQ 235 (SD NY 1970).

[10] Those factors are: 1) The royalties received by Georgia-Pacific for licensing the patent, proving or tending to prove an established royalty; 2) The rates paid by the licensee for the use of other similar patents; 3) The nature and scope of the license, such as whether it is exclusive or

December 3, 2012
Page 6

argue, in good faith, that they expect only a 10,000 or 20,000-foot view in terms of EON's basic damages theories or a phased approach to damages when demanding that all of this information be contained in EON's damages contentions. At best, this argument is disingenuous to the Court. To highlight the disingenuousness of Defendants throughout the case management conferences regarding the damages contention proposals, the Court, during the July 11th CMC asked the Defendants specifically how EON was supposed to provide meaningful contentions that the Defendants were requesting without documentation. The Defendants responded that "Well, Your Honor, we certainly are going to provide them documentation as part of the discovery process."[11] It is clear, however, that what Defendants actually intend to do is limit EON's ability to obtain discovery based on the damages contentions it serves.[12]

While EON is willing to provide the information requested by Defendants in its damages contentions, Defendants must first produce certain categories of information to allow EON to comply with the demanded contentions, such as: (1) Defendants' sales, pricing, and margins for the accused products; (2) Defendants' analyses of the value of infringing systems; and (3) Defendants' patent licensing practices. All of these categories concern documents that a defendant would normally have to produce in a patent infringement dispute to determine reasonable royalties or lost profits. EON has also asked for a brief period of time (approximately one month) to take Defendants' depositions to ensure EON understands the meaning of these

---

nonexclusive, restricted or nonrestricted in terms of territory or customers; 4) Georgia-Pacific's policy of maintaining its patent monopoly by licensing the use of the invention only under special conditions designed to preserve the monopoly; 5) The commercial relationship between Georgia-Pacific and licensees, such as whether they are competitors in the same territory in the same line of business or whether they are inventor and promoter; 6) The effect of selling the patented specialty in promoting sales of other Georgia-Pacific products; the existing value of the invention to Georgia-Pacific as a generator of sales of nonpatented items; and the extent of such derivative or "convoyed" sales; 7) The duration of the patent and the term of the license; 8) The established profitability of the patented product, its commercial success and its current popularity; 9) The utility and advantages of the patent property over any old modes or devices that had been used; 10) The nature of the patented invention, its character in the commercial embodiment owned and produced by the licensor, and the benefits to those who used it; 11) The extent to which the infringer used the invention and any evidence probative of the value of that use; 12) The portion of the profit or selling price that is customary in the particular business or in comparable businesses; 13) The portion of the realizable profit that should be credited to the invention as distinguished from any nonpatented elements, manufacturing process, business risks or significant features or improvements added by the infringer; 14) The opinion testimony of qualified experts; and 15) The amount that Georgia-Pacific and a licensee would have agreed upon at the time the infringement began if they had reasonably and voluntarily tried to reach an agreement.

[11] Dkt. No. 442, Transcript of Proceedings, at 25:18-23.

[12] Dkt. No. 547, Transcript of Proceedings, at 15:16-17 ("We want them to tell us what is the theory, and then we can use that theory to frame discovery.")

614\960028.2

December 3, 2012
Page 7

documents. The Defendants have unjustifiably refused EON's proposal and the parties are now at a standstill.

The Defendants' argument that their proposal would only require EON to disclose the damages theories and evidence now known to EON is misleading. As set forth in detail above, the prejudicial scheme proposed by the Defendants would force EON to *commit* to the factual and legal basis for its damages theories prior to any significant discovery, and without the ability to amend at a later date should new information come to light during discovery. The entire purpose of the contentions, at least according to Defendants, is to narrow the scope of discovery that Defendants must produce.[13] In this manner, the Defendants proposal seeks to prejudice EON by forcing it to commit to its damages contentions without the benefit fact discovery, a benefit conferred to all parties to litigation by the Patent Local Rules, while at the same time preventing EON from obtaining discovery on legal and factual theories not disclosed in the contentions.

As the Chief Justice of the Federal Circuit, Judge Rader, has stated regarding damages in a patent case, "I recommend that trial judges use their authority, including DAUBERT inquiries, to ascertain early in the case the approximate dollar value of the case. With some searching inquiry into the parties' damages model, the trial judge can get a good idea of the worth of the contested technology and its implications in the market place. The parties also benefit from early damages discussions and disclosures because it can provide a realistic evaluation of both Defendant's exposure and Plaintiff's damages calculation and further promote early and effective mediation. This inquiry can occur at the onset of the case during case management conferences or even a little later in connection with *Markman* hearings. With an understanding of the case's true worth, the trial judge would then be poised to identify cases that would benefit from tailoring the standard procedures to fit the case and its significance. In colloquial terms, the court may adjust timing and procedures of the case to make sure a billion-dollar case gets a "billion-dollars' worth" of process—adequate time and witnesses and confidential information protections and more—and a thousand-dollar case gets . . . well, less.[14]" Judge Rader advocates early disclosure of documents related to damages. What Judge Rader *does not advocate* is that plaintiffs should provide all theories of damages and all evidence supporting same - that cannot be amended at any time - without the benefit of damages discovery that it is entitled to, that is

---

[13] *See* Transcript of Proceedings, October 26, 2012, at p. 15:4-6 (Defendants' Counsel to Judge Chen: "And, the idea behind the damages contentions is let them get their position out early, and then we can use that to frame discovery."); 16:19-22 (Defendants' Counsel to Judge Chen: "We would then be able to use that information to frame damages discovery, so the parties aren't running down rabbit trails when it's not going to be relevant to the outcome of the case.")

[14] Chief Judge Randall R. Rader, U.S. Court of Appeals for the Fed. Circuit, Speech at the E.D. Texas Judicial Conference, *The State of Patent Litigation*, at 14-16 (Sept. 27, 2011), a true and correct copy of which is attached hereto as **Exhibit 5**.

December 3, 2012
Page 8

not publically available and is in the sole possession, custody or control of the defendants of that case - which is exactly what Defendants' proposal contemplates.

### E. Defendants Reliance on the *Brandywine* Opinion is Misplaced, Is Not Binding And Should Not Be Given Any Credence By This Court

Defendants have previously relied on *Brandywine Commc'ns Techs. LLC v. Cisco Sys., Inc.*, Case No. 12-01669 (N.D. Nov. 13, 2012) in support of their proposal. *Brandywine* is distinguishable from the issue addressed by this letter. *Brandywine* concerns the disclosures required by Rule 26(a)(1)(A)(iii), not separate damages contentions. *See id.* at 2:1-12. Initial disclosures can be amended without court approval and do not limit the damages recoverable at trial, at least where the defendant is aware (*e.g.*, through discovery) that a greater amount is sought. *See* Fed. R. Civ. P. 26(e)(1)(A); Hon. William W. Schwarzer, et al., *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial*, § 11.284 (Rutter Group 2012). In contrast, Defendants do not contemplate allowing EON to amend its damages contentions with or without a showing of good cause and the contentions sought are not required by the Federal Rules of Civil Procedure or the Northern District Local Rules. In fact, Defendants cannot point to any cases in this District that have employed damages contentions because none exist. As explained above, the Defendants prejudicial plan is to limit EON's discovery of information solely in the Defendants' possession, custody and control on the basis the facts or theories on which discovery are sought are not included in EON's damages contentions. This will force EON to engage in costly, inefficient motion practice to amend its contentions just so that it can obtain the discovery to which it would normally be entitled and include information contained in that discovery in its damages contentions. As such, the *Brandywine* opinion is inapposite in this case and does not support the proposed damages contentions offered by Defendants.

### F. EON's Request For Oral Argument[15]

EON requests, at the Court's convenience, a hearing on the issue of damages contentions as set forth in this letter.

---

[15] On November 6, 2012 Defendants sent to EON a draft Stipulation Regarding Discovery Provisions (ESI Provisions and 30(b)(6) Depositions) and Damages Contentions ("Stipulation"), a true and correct copy of which is attached hereto as **Exhibit 6**. EON prepared its arguments in this brief based on Defendants' position in the Stipulation. To the extent Defendants' positions differ in the brief, EON will address those differences at the hearing on this issue.

614\960028.2

II.     **Defendants' Argument: Plaintiff should be required to disclose and specify the methodology for calculating damages that it contends are appropriate in this case based on the information currently available to Plaintiff.[16]**

Whether couched in terms of "damages contentions" or EON's compliance with its Rule 26(a)(1)(A)(iii) initial disclosure requirements, or, as the Court suggested, a response to a common Interrogatory,[17] EON should be required to disclose to Defendants – within 30 days of entry of the Court's Order – its damages theory and the factual support underlying that theory ***currently in EON's possession***. Similar to infringement contentions, early disclosure of a party's damages theories can be a useful tool to narrow the issues in patent litigation and frame subsequent discovery. Also similar to infringement contentions, a patent plaintiff must have at the outset of its case a theory of what damages it intends to pursue and information that is applicable to that theory, such as certain data points that can be used as part of a *Georgia Pacific* analysis. EON should have disclosed this information as part of its Initial Disclosures,[18] but it did not. *See* EON's Initial Disclosures (attached as **Exhibit C** and stating in relevant part that EON is seeking "damages pursuant to 34 U.S.C. § 284 sufficient to compensate EON for defendants' infringement of the Patent-in-Suit"). Accordingly, Defendants request that the Court adopt their form of damages contentions (attached hereto as **Exhibit A**) that are narrowly tailored to satisfy this disclosure obligation.

By comparison – and in an intentional effort to portray Defendants' proposal as unduly burdensome and unwieldy – EON has proposed a much different process (production by Defendants of nearly all damages-related information) with a much different end game (a disclosure akin to an expert damages report that is provided essentially at the end of fact discovery). Put simply, the contentions proposed by EON would require that each Defendant (regardless of the theory of damages that is asserted against that Defendant) undertake an

---

[16] Defendants provided EON with a draft Stipulation Regarding Discovery Provisions (ESI Provisions and 30(b)(6) Depositions) and Damages Contentions on November 6, 2012. The parties subsequently met and conferred on November 28, 2012 concerning their proposed damages contentions and the parties exchanged respective portions of this joint letter brief and attachments thereto on Monday, December 3, 2012. Defendants provided EON with their portions of this joint letter brief and respective exhibits at 1:36 p.m. PST on December 3, 2012. EON provided Defendants with their portions of this joint letter brief approximately one hour thereafter, at 2:46 p.m. PST.

[17] *See* October 26, 2012 Transcript of Proceedings, at 18 (**Court:** "Maybe we ought to just jettison that, and just let you start off with some contention interrogatories or something along those lines, to figure out what their basic theory is.").

[18] Order Regarding Initial Rule 26 Disclosure Requirements for Damages in Patent Actions, Dkt. No. 114, *Brandywine Commcn's Techs., LLC v. Cisco Sys., Inc.*, No. C 12-01669 WHA, (N.D. Cal. Nov. 13, 2012) ("*Brandywine Order*") (attached hereto as **Exhibit B**).

December 3, 2012
Page 10

exhaustive search for damages-related discovery, produce such discovery to EON, and even offer witnesses for damages-related depositions before EON is required to provide any explanation of its damages theories against Defendants.  The heart of EON's proposal is a list of categories of information that it seeks on an expedited basis and that amounts to nothing less than scorched-earth damages discovery.  Indeed, EON's proposal would undermine the reasonable limits on searching of electronic documents that EON has already agreed to.  EON's current proposed deadline for EON to serve damages contentions would likely not even occur until *after* the current close of discovery (which is currently scheduled for July 1, 2013 or 75 days after claim construction ruling, whichever is later).  These tactics are exactly what Defendants' proposal is intended to prevent, by requiring EON to disclose its damages theories and then using those theories to frame damages discovery.

Moreover, EON does not need the information it seeks from Defendants to provide damages contentions along the lines proposed by Defendants.  Presumably, EON developed – before bringing this lawsuit – a theory as to the damages each Defendant would owe based upon the scope of that Defendant's alleged infringement.  That theory would be informed by, among other things:

- whether EON is seeking a royalty based upon handset sales and, if so, which handsets are part of the royalty base;
- whether EON is seeking a royalty based upon sales of network components and, if so, which products are part of the royalty base;
- whether EON believes that the entire sale of the handsets or network components is subject to inclusion in the royalty base (based upon an entire-market value rule analysis) or, if not, what portion of the sales of the accused products can be attributed to the patented functionality;
- whether EON has a licensing policy and, if so, whether that licensing policy is applicable to the current action; and
- whether EON is seeking a lump-sum royalty or a running royalty.

All of this information is *currently* within EON's control; EON does not need any discovery from Defendants' to provide it current contentions regarding these topics.  And, in fact, EON has already admitted that it "can probably give them a pretty good answer" on many of these topics.  (*See* October 26, 2012 Transcript of Proceedings, at 23).

EON should be required to disclose now its damages theories and the underlying information currently known to EON that went into those theories.[19]  This is especially true

---

[19] In the parties' October 19, 2012 Supplemental Joint Case Management Conference Statement, EON agreed that its damages contentions would contain "(1) the form of damages being sought (i.e., lost profits, reasonable royalty, or established royalty) and (2) the nature of the asserted damages base (e.g., entire market value or apportionment, including how and why that base

where, as here, EON has asserted claims against a disparate group of Defendants that provide a wide array of accused products, most of which are wholly unrelated to each other. For example, the damages theory (and, therefore, damages calculation) and associated damages discovery relevant to EON's claims against the wireless network operator defendants will presumably be very different from the damages theory against network component provider defendants. In fact, that was the case in the last lawsuit pursued by EON involving the same patent at issue here. In that lawsuit, EON's damages claims against the mobile network operators was primarily tied to the volume of Wi-Fi handsets sold by the mobile network operators and for the remaining defendants, EON merely claimed that each was jointly and severally liable for some portion of the mobile network operators' damages.[20] In other words, after EON took exhaustive and very expensive discovery from defendants that supplied products to the mobile network operators, it pursued a theory that was wholly independent of most of that discovery and instead focused only on the volume of products the defendants supplied to the mobile network operators. Rather than repeat that wasteful exercise here, EON should be required to disclose to each Defendant its damages *theory* (and the facts that it believes supports that theory that are currently known to EON) at the outset of the litigation.

Defendants' request is not novel. In fact, Judge Alsup recently addressed a similar request in *Brandywine Commcn's Techs., LLC v. Cisco Sys., Inc.*, No. C 12-01669 WHA. In that matter, the defendants requested information regarding the plaintiff's damages theories at the outset of the case. Judge Alsup found that such information was required to be disclosed as part of a patent plaintiff's initial disclosures: "the patent plaintiff must list each such asserted *Georgia Pacific* factor and identify all evidence it [will] rely on for that factor, save and only except for such evidence as it could not be reasonably expected to possess (and does not possess) at the outset of the litigation." *Brandywine Order* at 3*; see also Oracle USA, Inc. v. SAP AG*, 246 F.R.D. 541, 545, 548 (N.D. Cal. 2009) ("The orderly case management of complex litigation requires defining the basic contours of the litigation from the outset, *including the damages sought*, and directing discovery accordingly in order to avoid runaway costs. … [T]he record here shows that Plaintiffs, and not Defendants, possessed the necessary information even before filing the complaint, and well before they served their initial disclosures and first responses to discovery requests.") (emphasis added); Compensatory Damages Issues in Patent Infringement Cases: A Pocket Guide for Federal District Court Judges, at 10 (Feb. 2011) (attached hereto as **Exhibit E**) (Damages disclosures may be "essential to the efficient management of the litigation,

---

should be applied)." *See* **Exhibit 3**. EON must support its damages theory with those facts and documentation that are reasonably available to it at this time.

[20] *See EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-cv-379-LED-JDL (E.D. Tex. Aug. 30, 2012), Proposed Joint Pretrial Order, at 15-16 (Dkt. No. 976) (explaining that EON contended that "Nokia, RIM and Samsung are jointly and severally liable with T-Mobile for the alleged infringement related to each of their devices on the T-Mobile network" and, therefore, a reasonable royalty for the accused infringement would be, *inter alia*, "$3.00 for each Wi-Fi + cellular device made, sold, offered for sale, used or imported on either the T-Mobile or Verizon networks") (attached hereto as **Exhibit D**).

December 3, 2012
Page 12

and courts overseeing damages disclosures should be mindful of the role these disclosures may play in the early resolution of the litigation.") ("*Compensatory Damages Issues*"). This is exactly what Defendants' proposal contemplates. (*See* Defendants' Proposed Stipulation Regarding Damages Contentions, **Exhibit A**).

Contrary to EON's protestations, Defendants do not seek a full and complete analysis of EON's damages case at this early stage or that EON "provide all theories of damages and all evidence supporting same" or even that EON identify evidence supporting its damages theories that are "not publically available and is in the sole possession, custody or control of the defendants." Defendants merely request that EON be required to set forth its damages theory and the facts and evidence *currently available* to it that it purports supports its damages theory.[21] Disclosure of this information at the outset of the case will better enable the parties to target discovery to truly relevant documents and information and prevent the waste of time and money that is too often associated with damages discovery in patent cases.[22] Early disclosure will also assist the parties in analyzing potential settlement.[23]

For their part, Defendants agree to respond to EON's damages contentions by providing their individual theories (as supported by evidence currently in each Defendant's possession and disclosed to EON) as to why EON's proposal is not supported under the circumstances. This staged discovery process will allow both sides to more accurately and effectively analyze the damages issues in the case and assist in determining whether there is the possibility of early resolution of the case.

Moreover, contrary to EON's repeated suggestions, Defendants' proposal allows for future amendment if a good faith basis arises. *See* **Exhibit A** at Attachment A (providing that "[t]o the extent a party later learns through discovery information that provides a good faith basis to amend its contention, the party may seek leave to make such amendment by order of the Court upon a showing of (i) good cause based on newly discovered information that was not otherwise

---

[21] "The rule [Fed. R. Civ. P. 26(a)(1)(A)(iii)] does not require a full exposition of the type required at trial or in an expert report but it does expressly require an initial computation and disclosure of the evidence that will be relied on to the full extent the patent plaintiff could or should know of it in the exercise of the type of pre-suit diligence required by Rule 11." *Brandywine Order*, at 3; *see also id.* at 4 ("[T]hat some material is as yet unknown does not excuse non-disclosure of what is or should be known.").

[22] *Cf. Compensatory Damages Issues*, **Exhibit E**, at 10 ("These requirements avoid a 'shifting sands' approach to infringement or invalidity that is unfair to the litigants and unnecessarily prolongs the case and increases costs.").

[23] *See, e.g.*, Chief Judge Randall R. Rader, "The State of Patent Litigation," E.D. Tex. Judicial Conference (attached hereto as **Exhibit F**) ("The parties also benefit from early damages discussions and disclosures because it can provide a realistic evaluation of both Defendant's exposure and Plaintiff's damages calculation and further promote early and effective mediation.").

December 3, 2012
Page 13

available to the party and (ii) absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment."). Moreover, the possibility of a need to amend in the future should not deter the Court from requiring to provide the information that is currently in its possession. This is the same process and procedure employed by the Court with its preliminary infringement and invalidity contentions. *See* Patent Local Rule 3-6.

For the aforementioned reasons, Defendants respectfully request that the Court enter Defendants' Proposed Stipulation Regarding Damages Contentions attached as **Exhibit A** hereto.

Respectfully Submitted,

*/s/ John V. Picone III*  */s/ Matthew S. Yungwirth*
John V. Picone III  Matthew S. Yungwirth
Counsel for Plaintiff  Counsel for Defendants
EON Corp. IP Holdings, LLC  Cisco Systems, Inc. and
 Sonus Networks, Inc.
 (on behalf of Defendants)

614\960028.2