KILPATRICK TOWNSEND & STOCKTON LLP
STEVEN D. MOORE (admitted *pro hac vice*)
CARL E. SANDERS (admitted *pro hac vice*)
JAMES L. HOWARD (admitted *pro hac vice*)
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: 336 607 7300; Facsimile: 336 607 7500
E-mail: smoore@kilpatricktownsend.com
E-mail: csanders@kilpatricktownsend.com
E-mail: jihoward@kilpatricktownsend.com

KILPATRICK TOWNSEND & STOCKTON LLP
BYRON R. CHIN (State Bar No. 259846)
JESSICA L. HANNAH (State Bar No. 261802)
Two Embarcadero Center, 8th Floor
San Francisco, CA 94111
Telephone: 415-576-0200; Facsimile: 415-576-0300
E-mail: bchin@kilpatricktownsend.com
E-mail: jhannah@kilpatricktownsend.com

Attorneys for Defendant
MOTOROLA MOBILITY LLC AND MOTOROLA SOLUTIONS, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

EON CORP. IP HOLDINGS, LLC,

Plaintiff,

v.

SENSUS USA INC., ET AL.,

Defendants.

Civil Action No. 3:12-cv-01011-JST (EDL)

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF INVALIDITY FOR INDEFINITENESS AND REGARDING TESTIMONY AND DOCUMENTS OF DR. DAVID LYON**

Hearing Date:
Time:
Courtroom:



## Table of Contents

I. INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

II. STATEMENT OF ISSUES TO BE DECIDED ....................................... 2

III. LEGAL STANDARD ....................................... 2

IV. ARGUMENT ....................................... 3

A. The "Switching Means" Limitation Is Indefinite Because the '491 Patent Fails To Disclose Sufficient Corresponding Structure. ....................................... 3

1. One of Ordinary Skill in the Art Would Not Understand an "Electronic Switch" to Be Able to "Select a Communication Path" and How it Might Do So is Not Disclosed in the '491 Patent. ....................................... 3

2. Even if "Selecting a Communication Path" Required Only Switching, the Disclosure is Still Insufficient. ....................................... 6

3. The Testimony of One of Ordinary Skill in the Art Cannot Define Corresponding Structure, Which Must Be Disclosed in the '491 Patent. ....................................... 6

4. Even if Dr. Lyon's Testimony Were Directed to the Correct Inquiry, His Testimony Shows that the Disclosure of the '491 Patent Is Inadequate. ....................................... 7

B. The Texas Court Incorrectly Found that the '491 Patent Disclosed "Logic" for "Selecting a Communications Path." ....................................... 9

V. CONCLUSION ....................................... 10



## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amtel Corp. v. Info. Storage Devices, Inc.*,
198 F.3d 1374 (Fed. Cir. 1999) .......... 3

*Aristocrat Techs. Australia Pty. Ltd. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008) .......... 6, 7, 8

*B. Braun Med., Inc. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997) .......... 2

*Biomedino, LLC, v. Waters Techs. Corp.*,
490 F.3d 946 (Fed. Cir. 2007) .......... 2, 7

*Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371 (Fed. Cir. 2009) .......... passim

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
412 F.3d 1291 (Fed. Cir. 2005) .......... 2, 7

*EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
No. 6:10-cv-379-LED-JDL, 2012 WL 3073432 (E.D. Tex. Feb. 8, 2012) .......... 9, 10

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012) .......... 6, 7

*Exxon Research and Eng'g Co. v. U.S.*,
265 F.3d 1371 (Fed. Cir. 2001) .......... 3

*Halliburton Ener. Serv., Inc. v. M-I LLC d/b/a M-I Drilling Fluids LLC*,
514 F.3d 1244 (Fed. Cir. 2008) .......... 2

*In re Donaldson Co. Inc.*,
16 F.3d 1189 (Fed. Cir. 1994) (*en banc*) .......... 3

*In re Katz Interactive Call Processing Patent Litig.*,
639 F.3d 1303 (Fed. Cir. 2011) .......... 8

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
344 F.3d 1205 (Fed. Cir. 2003) .......... 2, 7

*Net MoneyIN, Inc. v. VeriSign, Inc.,
545 F.3d 1359 (Fed. Cir. 2008)* .......... 8

*Noah Sys., Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012) .......... 8



**STATUTES**

35 U.S.C. § 112, ¶ 2 .................... passim

35 U.S.C. § 112, ¶ 6 .................... 2



## I. INTRODUCTION AND SUMMARY OF ARGUMENT

At the Claim Construction Hearing on May 10, 2013, the Court requested further briefing on the issues regarding the invalidity for indefiniteness of asserted independent claims 1 and 13 and their dependents in U.S. Patent No. 5,592,491 ("the '491 patent"). *See* Civil Minutes from Claims Construction Hearing (Dkt. 711). Defendants submit this Supplemental Brief regarding the disputed claim term "switching means for selecting a communication path within said network [or communication system]."[1]

The parties agree that the function associated with this means-plus-function limitation is "selecting a communication path within said network [or communication system]." Because the '491 patent discloses insufficient structure for performing the function of "selecting a communications path," this term is indefinite, rendering asserted claims 1 and 13 and their dependents invalid under 35 U.S.C. § 112, ¶ 2. While "electronic switch 13" is disclosed in the specification, there is no description of how "electronic switch 13" would "select[] a communication path."

Indeed, the deposition testimony of EON Corp. IP Holdings's ("EON") expert witness, Dr. David Lyon, confirms this term is indefinite. Dr. Lyon concedes that a person of ordinary skill in the art would have known "innumerable" ways to implement this selecting function and that none of these ways is disclosed in the '491 patent. This concession is fatal, as the Federal Circuit has repeatedly held that the purpose of means-plus-function claim language is to restrict the scope of the claim to the structure described in the specification for performing the claimed function or equivalent structures. As the Federal Circuit held in *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371 (Fed. Cir. 2009), a means-plus-function claim that can perform its function by "any possible means," but lacks disclosure of the specific structure that the inventor chose to perform the function, is indefinite and invalid as a matter of law. *Id* at 1385.

---

[1] This brief is submitted on behalf of Defendants Motorola Mobility LLC, Motorola Solutions, Inc., Aruba Networks, Inc., Broadsoft Inc., Cisco Systems, Inc., Mavenir Systems Inc., Meru Networks Inc., Sercomm Corporation, Sonus Networks Inc., HTC America, Inc., United States Cellular Corporation, and Sprint Spectrum L.P. (collectively "Defendants").



## II. STATEMENT OF ISSUES TO BE DECIDED

Whether the phrase "switching means for selecting a communication path within said network [or communication system]" included in asserted claims 1 and 13 of the '491 patent and their dependents is indefinite because the specification fails to disclose sufficient structure for performing the undisputed "selecting a communications path" function of this "means-plus-function" limitation.

## III. LEGAL STANDARD

A claim limitation expressed in "means plus function" language is governed by 35 U.S.C. § 112, ¶ 6. *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). A patentee using means-plus-function terms must clearly link a corresponding structure in the specification with the claimed function. *See Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003) (failure to disclose adequate structure amounts to impermissible functional claiming). A structure disclosed in the specification qualifies as a "corresponding structure" if the specification or the prosecution history "clearly links or associates that structure to the function recited in the claim." *B. Braun Med.*, 124 F.3d at 1424.

The "duty to link or associate structure to function is the *quid pro quo* for the convenience of employing § 112, ¶ 6." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). If a patent claim contains a means-plus-function limitation, the patent specification must actually disclose structure capable of performing the specified function. *See id.* at 1300-02 (finding that numerous structures proposed by the plaintiff as corresponding structure either did not perform the recited function or were not disclosed in the specification); *see also Biomedino, LLC, v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007) (finding a means-plus-function term indefinite where the alleged corresponding structure was a box labeled "control" and the specification explained that the control function may be accomplished "by known differential pressure, valving and control equipment"). The statutory provisions of § 112, ¶ 6 prevent "the overbreadth inherent in open-ended functional claims … which effectively purport to cover any and all means so long as they perform the recited functions." *Halliburton Ener. Serv., Inc. v. M-I LLC d/b/a M-I Drilling Fluids LLC*, 514 F.3d 1244, 1256 n. 7 (Fed. Cir. 2008).



If the patent does not disclose adequate structure, the applicant has failed to particularly point out and distinctly claim the invention as required by the second paragraph of § 112. *In re Donaldson Co. Inc.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (*en banc*).

Because indefiniteness goes hand-in-hand with claim construction, it is appropriate for the Court to address indefiniteness issues at the claim construction stage. *See Exxon Research and Eng'g Co. v. U.S.*, 265 F.3d 1371, 1376 (Fed. Cir. 2001); *see also Amtel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims… [and] therefore, like claim construction, is a question of law.").

## IV. ARGUMENT

### A. The "Switching Means" Limitation Is Indefinite Because the '491 Patent Fails To Disclose Sufficient Corresponding Structure.

The parties agree that the function performed by the "switching means" is "selecting a communication path within said network [or communication system]." Thus, the only dispute is whether the specification adequately discloses a corresponding structure to perform that function. EON alleges that the corresponding structure for the "selecting" function is simply an "electronic switch." EON's Opening Claim Construction Brief (Dkt. 628) at 17-18. However, as explained below, a mere "electronic switch" (as depicted in the patent as "electronic switch 13") is not sufficient to perform the full breadth of the function of "selecting a communication path within said network [or communication system]." Because insufficient structure for performing the "selecting" function is disclosed, the "switching means" limitation is indefinite.

#### 1. One of Ordinary Skill in the Art Would Not Understand an "Electronic Switch" to Be Able to "Select a Communication Path" and How it Might Do So is Not Disclosed in the '491 Patent.

As explained in Defendants' Responsive Claim Construction Brief (Dkt. 672), the claimed "selecting" function requires a determination, choice, or selection that requires logic, circuitry, an algorithm, or other details showing how an electronic switch could not just switch but also select the correct path. *Id.* at 15. However, the bare words "electronic switch 13" do not convey enough structure to perform this function.



The entirety of the description of the "electronic switch 13" in the specification of the '491 patent is contained in two short paragraphs, which read as follows:

> . . . As shown in FIG. 2, subscriber unit 12 includes switching means such as, for example, an **electronic switch 13** for selecting the path of communication between subscriber unit 12 and local base station repeater cell 10. Specifically, in the present embodiment, if subscriber unit 12 is able to detect rf signals from local base station repeater cell 10 **switching means 13** assumes a default position "Path A". When **switching means 13** of subscriber unit 12 selects Path A, subscriber unit 12 receives rf signals directly from local base station repeater cell 10 over rf link 14, and transmits data over an rf link 18 to remote receiver 16 which then transfers the data to local base station repeater cell 10 over hard link 20.
> With reference again to FIG. 2, when subscriber unit 12 is unable to receive rf signals directly from local base station repeater cell 10, **switching means 13** selects "Path B". Thus, if subscriber unit 12 is unable to receive rf signals from local base station repeater cell 10, communication between subscriber unit 12 and local base station repeater cell 10 occurs along Path B using modem 22. When **switching means 13** of subscriber unit 12 selects Path B, local base station repeater cell 10 transmits messages to modem 22 via, for example, telephone line 24 and public switched network 25.

'491 patent at 3:33-58 (emphasis added).[2] In other words, the '491 patent only discloses that the switching means may be an electronic switch and that the switch selects Path A or Path B. These paragraphs fail to describe how electronic switch 13 makes the claimed *selection*. Without a disclosure of how the selection is made, asserted independent claims 1 and 13 and their dependents are invalid as indefinite under 35 U.S.C. § 112, ¶ 2.

In *Blackboard*, the Federal Circuit dealt with similarly inadequate disclosure. There, the patentee asserted that the structure that performs the recited "means for assigning" function is "a server computer with an access control manager and equivalents thereof." 574 F.3d at 1382. The patentee argued that the access control manager assigns access and control levels by creating an access control list. *Id.* at 1383. The Federal Circuit held this was not sufficient: "The ACM is essentially a black box that performs a recited function. *But how it does so is left undisclosed*." *Id.* (emphasis added). The Court went on to explain:

[2] The '491 patent is attached as Exhibit 1 to the Declaration of Jessica L. Hannah in Support of Defendants' Responsive Claim Construction Brief (Dkt. 645-1).

> A patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function. To allow that form of claiming under section 112, paragraph 6, would allow the patentee to claim all possible means of achieving a function. . . . **That ordinarily skilled artisans could carry out the recited function in a variety of ways is precisely why claims written in "means-plus-function" form must disclose the particular structure that is used to perform the recited function**. By failing to describe the means by which the access control manager will create an access control list, Blackboard has attempted to capture any possible means for achieving that end. Section 112, paragraph 6, is intended to prevent such pure functional claiming."

*Id.* at 1385 (emphasis added).

Lack of "particular structure" to "perform the recited function" is precisely the flaw with the claims at issue. The specification does not disclose how electronic switch 13 performs the "selecting" function claimed in the '491 patent; thus, there are "innumerable" ways for an ordinarily skilled artisan to implement the "switching means" of the '491 patent. One may be able to configure an electronic to select between communications paths, but the '491 patent fails to describe or claim any specific way to do so. In the words of EON's expert, Dr. David Lyon, "[the '491 patent] simply says the path has been chosen [*i.e.*, selected] and – and implies communication will begin." Hannah Decl., Exh. 20 (Deposition of David L. Lyon in *EON Corp. IP Holdings, LLC v. Sprint Spectrum, L.P.*, No. 3:12-cv-01011 (N.D. Cal.) ("Lyon Depo.")) at 94:18-21.[3] Dr. Lyon further admitted that the '491 patent fails to describe even one way to implement the "switching means" of the invention of the '491 patent, and further that it can be implemented in "innumerable" ways. *Id.* at 87:2-12 (noting there are "innumerable" ways to implement the electronic switch of the '491 patent); *see also id.* at 87:24-88:1 ("to the best of my recollection and memory, [the '491 patent] does not have a specific description of how to build a circuit for controlling an electronic switch").

Further, the '491 patent fails to explain how the "electronic switch" could be built. No description of input, output, or function is provided. *See id.* at 28:18-22. For example, with

---

[3] "Hannah Decl." hereinafter refers to the Declaration of Jessica L. Hannah in Support of Defendants' Supplemental Brief in Support of Invalidity of Indefiniteness and Regarding Testimony and Documents of Dr. David Lyon attached hereto.



respect to the input, Dr. Lyon testified that "switches require control signals." *Id.* at 97:3-4. Yet, the '491 patent fails to disclose any such control signal or other input. *Id.* at 54:6-10 (no control signal). Likewise, it fails to disclose any circuit diagram, output, or control ports. *Id.* at 35:16-19; 37:3-20; 38:22-39:6. In essence, there is no "recipe" for building the "electronic switch" of the '491 patent that will select a path. *Id.* at 89:7-15. The relevant claims of the '491 patent therefore fail to fulfill the "public notice function" of 35 U.S.C. § 112, ¶ 2 and are invalid as indefinite.

**2. Even if "Selecting a Communication Path" Required Only Switching, the Disclosure is Still Insufficient.**

Further, even if the breadth of the "selecting" function required only implementing the result of a choice of a communications path, electronic switch 13 is still insufficient structure to perform this function. Dr. Lyon testified that electronic switch 13 performs the "logical function" of "toggling" between two communication paths, *id.* at 104:24-105:3, but the '491 patent discloses no structure within the subscriber unit between which the electronic switch toggles. The '491 patent shows electronic switch 13 floating in space, toggling between desired results (Path A or Path B) as opposed to structure. *See* '491 patent, figs. 2, 3. The labels "Path A" and "Path B" within the block labeled "switching means" in figures 2 and 3 are not structure within the subscriber unit connected to electronic switch 13. This leaves the reader to guess as to what structure the switch may be connected. As discussed below, it is irrelevant that one of ordinary skill may be able to design different outputs for connection to the electronic switch that would correspond to Path A and Path B (*e.g.*, two different transceivers operating at different frequencies). *See ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012) (citing *Aristocrat Techs. Australia Pty. Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337 (Fed. Cir. 2008)). The absence of this structure within the '491 patent likewise is fatal.

**3. The Testimony of One of Ordinary Skill in the Art Cannot Define Corresponding Structure, Which Must Be Disclosed in the '491 Patent.**

EON attempts to supplement the '491 patent's inadequate disclosure with the testimony of Dr. David Lyon. This testimony, however, cannot fill in the '491 patent's missing disclosure. While it is undisputed that the question of whether a claim is indefinite is based on how the claim limitation would be understood by one of skill in the art, "the testimony of one of ordinary skill in



the art cannot supplant the total absence of structure from the specification." *Default Proof Credit Card Sys.*, 412 F.3d at 1302; *see also Biomedino,* 490 F.3d at 950–53. The indefiniteness inquiry for means-plus-function claims is concerned with whether the patent describes specific structure that performs the function in question, not whether one of ordinary skill in the art may otherwise know or find a way to practice the invention that is not described in the patent. *ePlus,* 700 F.3d at 519 (citing *Aristocrat*, 521 F.3d at 1337). To assess whether a means-plus-function claim is indefinite, therefore, we do not "look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent." *Id.* (quoting *Med. Instrumentation*, 344 F.3d at 1212). Rather, we "look at the disclosure of the patent and determine if one of skill in the art would have understood that disclosure to encompass [the required structure]." *Id.* Accordingly, Dr. Lyon's testimony that one of ordinary skill in the art would understand how to build an electronic switch to select a communication path is not relevant to this analysis.

**4. Even if Dr. Lyon's Testimony Were to be Considered, His Testimony Confirms that the Disclosure of the '491 Patent Is Inadequate.**

Dr. Lyon's testimony confirms that the '491 patent lacks the details necessary to avoid indefiniteness. Dr. Lyon has repeatedly admitted that electronic switch 13 may take any of a number of forms, including being nothing more than a general purpose microprocessor. Hannah Decl., Exh. 20 (Lyon Depo.) at 120:8-18. Specifically, Dr. Lyon testified that: "So what meets the claim element, the restriction of the claim element subscriber unit, including switching means, is the electronic switch which is built or executed as a microprocessor that is within that subscriber unit." Hannah Decl., Exh. 21 (Deposition of David Lyon, Ph.D. from *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.,* No. 6:10-cv-379-LED-JDL (E.D. Tex.), Vol. 1 taken June 13 2012 ("T-Mobile Lyon Depo.")) at 164:1-5; *see also id.* at 164:8-11 ("Q. So sitting here today, your position is that the electronic switch is the microprocessor or a microprocessor in the unit. Is that correct? A. Yes."); *id.* at 168:6-10 ("Q. Do you have an opinion as to whether the microprocessor literally meets the electronic switch structure?" A. "Can it meet the electronic switch structure? Yes, my opinion is it can."). He has further testified that "the microprocessor can be a switch in – in – in – with a function of selecting a path." Hannah Decl., Exh. 20 (Lyon Depo.) at 104:19-23.



On other occasions, Dr. Lyon has opined that the electronic switch that selects the communication path is a microprocessor running software: "[m]y opinion is that the electronic switch is the processor on which the software is – happens to be running." Hannah Decl., Exh. 21 (T-Mobile Lyon Depo.) at 167:1-3. And on yet other occasions, Dr. Lyon opined that in "[previously accused subscriber units], my opinion is that a subscriber initiated, network initiated or software initiated command that actuates an electronic switch (or its equivalent) in the device to select the cellular or Wi-Fi communication path meets the switching means element of the claim." Hannah Decl., Exh. 22 (Opening Expert Report of Dr. David L. Lyon Under Fed. R. Civ. P. 26(a)(2)(B) Regarding Infringement of United States Patent No. 5,592,491 Relating to the T-Mobile Network), ¶ 357. Regardless of which theory EON advances in support of its construction, they all fail under well accepted claim construction principles.

First, a general purpose computer or microprocessor is legally insufficient corresponding structure for a means-plus-function claim. In *Blackboard*, the Federal Circuit surveyed case law on this topic and confirmed that a more complete disclosure is required: "[t]o avoid purely functional claiming in cases involving computer-implemented inventions, we have consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." 574 F.3d. at 1384 (quoting *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008)); *see also Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (citing *Aristocrat*, 521 F.3d at 1333) (structure disclosed in the specification must be more than simply a general purpose computer or microprocessor). This is particularly true with respect to a function such as "selecting a communication path" that is not among the basic functions that are performed by any general purpose microprocessor. *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011)). Instead, the structure must be provided by way of an algorithm for performing the function. *Aristocrat*, 521 F.3d at 1333.

Here, if a special purpose or programmed microprocessor is needed to perform the function, no such microprocessor is disclosed in the patent. Particularly, the '491 patent fails to disclose an algorithm for a microprocessor. Instead, Dr. Lyon speculates that the microprocessor may be programmed to perform the "selecting" function, but was unable to identify any



description of such programming in the ’491 patent. For example, he has testified “[m]y opinion is that the electronic switch is the processor on which the software is – happens to be running.” Hannah Decl., Exh. 21 (T-Mobile Lyon Depo.) at 167:1-3. He has further testified that “[t]he structure that performs the function of selecting a communication path – in other words, that switching means is the microprocessor as it is a collection of switches and as it is driven by software.” *Id.* at 161:21-25. In fact, no such implementation or software is disclosed in the ’491 patent. The ’491 patent is devoid of any discussion of software or programmed microprocessors; it only discloses an electronic switch. Absent structure capable of performing the § 112 function, EON’s patent claims are invalid. *Blackboard*, *supra*, 574 F.3d at 1385.

### B. The Texas Court Incorrectly Found that the ’491 Patent Disclosed “Logic” for “Selecting a Communications Path.”

In its Reply Claim Construction Brief (Dkt. 654), EON argues that the structure of “switching means” does not require the disclosure in the specification of “design controls” because Texas Court in *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-cv-379-LED-JDL, 2012 WL 3073432, at *3 (E.D. Tex. Feb. 8, 2012) recognized that “the logic for determining which path the electronic switching means selects is identified in the claims and elsewhere throughout the specification separate from the term “switching means.” EON’s Reply Claim Construction Brief (Dkt. 654) at 10-11. However, the Texas Court incorrectly found logic associated with “selecting a communications path” in the ’491 patent where none exists.[4] The Texas Court found:

> . . . Figures 2 and 3 show simplified logic for implementing the electronic switch. For example, Figure 2 shows a switching means 13 with two positions, Path A and Path B. The figure shows arrow indicating that Path A has been selected. Thus, Figure 2 depicts the switching means as a binary switch where either path A or Path B is selected. . . . [While]the figures in and of themselves do not satisfy 112 ¶ 6, but read in conjunction with disclosure and the claims (as described above) provide sufficient guidance such that a person of ordinary skill in the art could determine the proper structure.

*Id.* at *4 (internal citations omitted).

[4] The Texas Court’s Order regarding the Defendants’ Motion for Summary Judgment of Indefiniteness from the T-Mobile case is attached as Exhibit 23 to the Hannah Decl.



The "logic" identified by the Texas Court does not identify how the "switching means" "selects a communications path," but instead identifies when *subscriber unit 12 switches communications paths*. *See* '491 patent at 6:62-64 (Claim 1) ("if said *subscriber units* are unable to directly communicate with said local base station repeater cell"); *id*. at 8:49-51 (Claim 13) ("if said *subscriber units* are unable to communicate directly with said digital transmitter"); *id.* at 5:3-7 ("Because there is no local base station repeater cell, *subscriber unit 12* is unable to receive rf signals from a local base station repeater cell. Thus, switching means 13 selects Path B, such that *communication to and from subscriber unit 12 occurs through modem 22*")." (emphasis added to all)). While the *selection* of a communications path by *switching means 13* may be related to the *switching* of communications paths by *subscriber unit 12*, the two are not one in the same. The Texas Court conflates the terms "switch" and "select," while failing to take into account the fact that the "switching means 13" is a component within subscriber unit 12. Thus, the Texas Court's holding that "the logic for determining which path the electronic switching means selects is identified in the claims and elsewhere throughout the specification", *id.* at *3, is incorrect.

## V. CONCLUSION

For all the foregoing reasons, and the reasons set forth in their Claim Construction Brief (Dkt. 672), Defendants respectfully request that the Court find that the term "switching means" is indefinite under § 112, ¶ 2 for failure to recite adequate corresponding structure.

DATED: May 24, 2013

Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON LLP**

By: */s/ Jessica L. Hannah*
Jessica L. Hannah



Steve Moore (NC Bar No. . 23367)
Carl E. Sanders (NC Bar No. 34190)
James L. Howard (NC Bar No. 39769)
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
E-mail: smoore@kilpatricktownsend.com
E-mail: csanders@kilpatricktownsend.com
E-mail: jihoward@kilpatricktownsend.com

Jessica L. Hannah (State Bar No. 261802)
Byron Chin (State Bar No. 259846)
Two Embarcadero Center, 8th Floor
San Francisco, CA 94111
Telephone: 415-576-0200
Facsimile: 415-576-0300
Email: jhannah@kilpatricktownsend.com
Email: bchin@kilpatricktownsend.com

**Attorneys for Defendants**
**MOTOROLA SOLUTIONS, INC. AND MOTOROLA MOBILITY LLC**

**K&L GATES LLP**
By: *_/s/ John J. Cotter_*
John J. Cotter (*pro hac vice*)
One Lincoln Street
Boston, MA 02111

Michael E. Zeliger (SBN 271118)
630 Hansen Way
Palo Alto, CA 94304

**Attorneys for Defendant**
**SPRINT SPECTRUM L.P.**

**ANDREWS KURTH LLP**

By: _/s/ *Gerald C. Conley*_
Gerald C. Conley (admitted *pro hac vice*)
geraldconley@andrewskurth.com
Mark A. Shoffner (admitted *pro hac vice)*
markshoffner@andrewskurth.com
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: 214-659-4400
Facsimile: 214-659-4401





Ralph W. Tarr, Esq.
24011 Alder Place
Calabasas, CA 91302-2394
(818) 591-7846 (Voice and Facsimile)
ralphwtarr@gmail.com

**Attorneys For Defendant**
**MAVENIR SYSTEMS, INC.**

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: *\/s/ Kellie M. Johnson*

TODD LANDIS (admitted *pro hac vice*)
tlandis@akingump.com
KELLIE M. JOHNSON (admitted *pro hac vice*)
kmjohnson@akingump.com
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

FRED I. WILLIAMS (admitted *pro hac vice*)
fwilliams@akingump.com
300 West 6th Street, Suite 1900
Austin, Texas 78701
Telephone: 512.499.6200
Facsimile: 512.499.6290

TERESA W. GHALI (SBN 252961)
tghali@akingump.com
580 California Street, Suite 1500
San Francisco, CA 94104
Telephone: 415-765-9500
Facsimile: 415-765-9510

**Attorneys for Defendant**
**HTC AMERICA, INC.**

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

By: *\/s/ Brian D. Range*

M. CRAIG TYLER (admitted *pro hac vice*)
BRIAN D. RANGE (admitted *pro hac vice*)
ABRAHAM DELAO (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI



Professional Corporation
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746-5546
Telephone: (512) 338-5400
Facsimile: (512) 338-5499
Email: ctyler@wsgr.com; brange@wsgr.com; adelao@wsgr.com

**Attorneys for Defendant**
**ARUBA NETWORKS, INC.**

**DUANE MORRIS LLP**

By: */s/ Matthew S. Yungwirth*
1075 Peachtree Street, Suite 2000
Atlanta, Georgia 30309
Telephone: (404) 253-6900
Facsimile: (404) 253-6901
Matthew S. Yungwirth (admitted *pro hac vice*)
Email: msyungwirth@duanemorris.com
L. Norwood Jameson (admitted *pro hac vice*)
Email: wjameson@duanemorris.com
Alison M. Haddock (admitted *pro hac vice*)
Email: amhaddock@duanemorris.com
David C. Dotson (admitted *pro hac vice*)
Email: dcdotson@duanemorris.com
Stephanie A. Hansen (admitted *pro hac vice*)
Email: sahansen@duanemorris.com

Joseph A. Powers (admitted *pro hac vice*)
Email: japowers@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1842
Facsimile: (215) 689-3797
Richard L. Seabolt, Esq. (SBN 67469)
Email: rlseabolt@duanemorris.com

Richard L. Seabolt, Esq. (SBN 67469)
Email: rlseabolt@duanemorris.com
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001

**Attorneys for Defendants**
**CISCO SYSTEMS, INC. and**
**SONUS NETWORKS, INC.**



**COOLEY LLP**

*/s/ Nelson Kuan*
Lowell D. Mead (CA Bar No. 223989)
lmead@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Jonathan G. Graves (*pro hac vice*)
jgraves@cooley.com
Nelson Kuan (*pro hac vice*)
nkuan@cooley.com
Reston Town Center
One Freedom Square
11951 Freedom Drive
Reston, VA 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

**Attorneys for Defendant**
**BROADSOFT, INC.**

**SIDLEY AUSTIN LLP**

By: */s/ Bryan K. Anderson*
Richard J. O'Brien
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Bryan K. Anderson
Ashish Nagdev
1001 Page Mill Road, Bldg. 1
Palo Alto, CA 94304
Telephone: (650) 565-7000
Facsimile: (650) 565-7100

**Attorneys for Defendant**
**UNITED STATES CELLULAR CORPORATION**



**ANDREWS KURTH LLP**

By: */s/ Robert A. Gutkin*

Robert A. Gutkin (CA Bar No. 119781)
robertgutkin@andrewskurth.com
1350 I Street, NW, Suite 1100
Washington, DC 20005
Telephone: (202) 662-2785
Facsimile: (202) 974-9536

**Attorneys For Defendant SERCOMM CORPORATION**

**MORRISON & FOERSTER LLP**

By: */s/ L. Scott Oliver*

L. SCOTT OLIVER
DIANA LUO

**Attorneys for Defendant MERU NETWORKS, INC.**



**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I hereby certify that I have obtained the concurrence in the filing of this document from all the signatories for whom a signature is indicated by a "conformed" signature (/s/) within this e-filed document and I have on file records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request.

Dated: May 24, 2013

*/s/ Jessica L. Hannah*
Jessica L. Hannah

Attorney for Defendants Motorola Solutions, Inc. and Motorola Mobility LLC

4611928V.1

