KILPATRICK TOWNSEND & STOCKTON LLP
Steven D. Moore (State Bar No. 290875)
Byron R. Chin (State Bar No. 259846)
Jessica L. Hannah (State Bar No. 261802)
Two Embarcadero Center, 8th Floor
San Francisco, CA 94111
Telephone: 415-576-0200; Facsimile: 415-576-0300
E-mail: smoore@kilpatricktownsend.com
E-mail: bchin@kilpatricktownsend.com
E-mail: jhannah@kilpatricktownsend.com

KILPATRICK TOWNSEND & STOCKTON LLP
Carl E. Sanders (admitted pro hac vice)
James L. Howard (admitted pro hac vice)
1001 West Fourth Street
Winston-Salem, NC  27101-2400
Telephone: 336 607 7300; Facsimile: 336 607 7500
E-mail: csanders@kilpatricktownsend.com
E-mail: jihoward@kilpatricktownsend.com

Attorneys for Defendants and Counterclaimants
MOTOROLA MOBILITY LLC

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| EON CORP. IP HOLDINGS, LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>SENSUS USA INC., ET AL.,<br><br>          Defendants. | Civil Action No. 3:12-cv-01011-JST<br><br>**DEFENDANTS' NOTICE OF MOTION MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>Hearing:  March, 13, 2014<br>Time:  2:00 pm<br>Location: Courtroom 9, 19th Floor |



**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...............................................................................................1

   A.   ASSERTED CLAIMS ..............................................................................3

      1.   Sprint .............................................................................................3

      2.   U.S. Cellular ..................................................................................3

      3.   Motorola ........................................................................................4

      4.   HTC ...............................................................................................4

      5.   Cisco .............................................................................................5

   B.   STATEMENT OF FACTS ........................................................................6

      1.   The Conditional "If" Limitations .................................................6

         (a)   Use of Wi-Fi (Wi-Fi Access Point or Mobile Hotspot) as Accused "Modem" ..............................................................................8

         (b)   Use of Femtocell as Accused "Modem" ........................................9

      2.   Femtocells are Low Power Base Stations. ...............................10

      3.   Third Party Network Operation Centers Do Not Meet the Court's Construction of "Network Hub Switching Center" ............................................................................................11

II.  LEGAL STANDARDS......................................................................................11

III. ARGUMENT ....................................................................................................12

   A.   The Conditional "If" Limitation Is Not Met by the Accused Handsets ................................................................................................12

      1.   Claims 5 and 17.........................................................................13

      2.   Claims 1, 12, and 13..................................................................14

   B.   Femtocells are Cellular Base Stations ..................................................15

   C.   Third Party Network Hub Switching Centers .......................................16

   D.   Asserted Dependent Claims 2, 7, 9, 11, 14, 18, 19, 21, and 23 ..........17

IV.  CONCLUSION .................................................................................................17



# TABLE OF AUTHORITIES

**CASES**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
    501 F.3d 1307 (Fed. Cir. 2007) ........................................................ 12

*BMC Res., Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) ........................................................ 12

*Brocade Commc'ns. Sys., Inc. v. A10 Networks, Inc.*,
    873 F. Supp. 2d 1192 (N.D. Cal. 2012) ........................................... 11

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005) ........................................................ 12

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) .............................................................. 12

*Linear Tech. Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004) ........................................................ 12

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 17

*Pitney Bowes, Inc. v. Hewlett–Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999) ........................................................ 11

*SkinMedica, Inc. v. Histogen Inc.*,
    727 F.3d 1187 (Fed. Cir. 2013) ........................................................ 11

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013) ........................................................ 11

*Wolverine World Wide, Inc. v. Nike, Inc.*,
    38 F.3d 1192 (Fed. Cir. 1994) .......................................................... 17



**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 13, 2014, at 2:00 p.m., in Courtroom 9, 19th Floor of the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Motorola Mobility LLC ("MML"), HTC America, Inc. ("HTC"), U.S. Cellular Corporation ("U.S. Cellular"), Sprint Spectrum L.P. ("Sprint") and Cisco Systems, Inc. ("Cisco) (collectively "Defendants") will and hereby do move this Court for summary judgment of non-infringement in Defendants' favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The Motion will be based upon this Notice, the Memorandum of Points and Authorities, the Declarations and Exhibits filed herewith, the Proposed Order, and other such argument and evidence as the Court may consider at the hearing on the Motion.

## I.      INTRODUCTION

Plaintiff EON Corp IP Holdings, LLC ("EON") alleges that Sprint Spectrum L.P. ("Sprint"), U.S. Cellular Corp. ("U.S. Cellular"), Cisco ("Cisco"), HTC America, Inc. ("HTC"), and Motorola Mobility LLC ("Motorola") (collectively "Defendants") infringe U.S. Patent No. 5,592,491 ("the '491 patent"). The '491 patent claims a system/method offering two paths that a subscriber unit can use to communicate with a network—a default "Path A" (which EON contends is a cellular network) and an alternative "Path B" through a "modem" (which EON contends is a Wi-Fi access point, Mobile Hotspot, or femtocell). EON alleges that Defendants Sprint and U.S. Cellular directly and indirectly infringe by operating cellular networks; that Defendants Motorola and HTC indirectly infringe by providing the infringing "subscriber units" for use in those networks (handsets and handsets operating as mobile hotspots); and that Defendant Cisco indirectly infringes by providing the infringing "modems" (femtocells) for use in the AT&T cellular network. For the reasons set forth below, and in light of the Court's constructions in its Order Construing and Determining Validity of Claims of the '491 patent ("*Markman* Order") (D.I. 748), Defendants do



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT                                                                                   - 1 -
CASE NO. 3:12-CV-01011-JST

not infringe the '491 patent claims as a matter of law and, therefore, are entitled to summary judgment as to all claims.[1]

First, this Court found that "the claims recite a simple 'if, then' automatic switching" between communication paths and, although subscriber units may be designed to switch between Paths A and B at the user's whim, "that is not what is claimed as novel." *Markman* Order at 28. The Court likewise found that the automatic switching from Path A to Path B must be based on the "present-tense condition" of the subscriber unit either (a) being "unable to directly communicate with the [digital transmitter/local base station repeater cell]" (claims 1, 12, and 13), or (b) not "receiving a signal from the local base station repeater cell" (claims 5 and 17).  (*Id.* at 27, 32-34). Because the accused subscriber units do not switch from Path A (*i.e.*, accused cellular path) to Path B (*i.e.*, accused Wi-Fi or accused femtocell path) based on the required condition, the conditional "if" limitations of system claims 1, 12, and 13 and of method claims 5 and 17 are not met as a matter of law.  EON's allegations to the contrary simply disregard this Court's claim constructions.

Second, EON's femtocell-based infringement allegations against Sprint and Cisco fail for the additional reason that femtocells are cellular base stations (and not "modems") within the architecture of the accused networks.  Therefore, the alleged subscriber unit is never not "receiving a signal from the local base station repeater cell."[2]

Finally, the accused third party network operation centers and data centers (*i.e.,* web servers) are not "switching centers" that are part of an accused cellular network, and are, therefore, not

---

[1] The motion for summary judgment addresses all claims asserted by EON against any defendant. As noted below, however, EON has not asserted that all defendants infringe the same set of claims. Each defendant does not, by joining this motion for summary judgment, waive objections to any attempt by EON to assert claims and theories that EON failed to assert as to that defendant in its Patent Local Rule disclosures.
[2] Defendants dispute EON's contention that cellular base stations in the Sprint, US Cellular, and AT&T networks meet the local base station repeater cell limitations recited in the '491 patent, but to simplify the issues raised in this motion, Defendants refer to base stations as part of the accused cellular Path A.



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT
CASE NO. 3:12-CV-01011-JST

"network hub switching centers" as construed by the Court.  Therefore, Wi-Fi communications directed to these third-party structures cannot infringe.

### A.   ASSERTED CLAIMS

#### 1.   Sprint

EON's infringement contentions allege that Sprint directly and indirectly infringes claims 1, 2, 5, 7, 9, 12, 13, 14, 16, 17, 18, 19, 21, and 23 of the '491 patent.  *See* Declaration of V. Raman Bharatula ("Bharatula Decl.") at Ex. A at 3 (EON's Patent Local Rule 3-1 and 3-2 Disclosures).  In the Opening Expert Report of Dr. David Lyon Regarding Infringement and the Sprint Network ("Lyon's Sprint Report"), Dr. Lyon stated "I understand that EON accused Sprint and the handset manufacturers (HTC and Motorola) of infringing directly or indirectly Claims 1, 2, 5, 7, 9, 12, 13, 14, 16, 17, 18, 19, 21, and 23" of the '491 patent and opined that (i) Mobile Hotspots meet the "modem" requirement of independent claims 1, 5, and 12; (ii) Wi-Fi access points meet the "modem" requirement of independent claims 13 and 17; and (iii) femtocells meet the "modem" requirement of independent claim 17.  *See* Bharatula Decl. at Ex. B, ¶¶ 3, 352, 373, 374, 390, 413 (Lyon's Sprint Report).  Because Mobile Hotspots, Wi-Fi access points, and femtocells provide the default communication Path A and not the alternative communication Path B as accused by EON, and for at least the other reasons set forth in the present motion, Sprint is entitled to summary judgment of no infringement of all asserted claims against Sprint.

#### 2.   U.S. Cellular

EON's infringement contentions allege U.S. Cellular directly and indirectly infringes claims 1, 2, 5, 7, 9, 12, 13, 14, 17, 19, and 21 of the '491 patent.  *See* Declaration of Ashish Nagdev ("Nagdev Decl.") ¶ 3.  In addition to these claims, EON's disclosed consultant on alleged infringement states that EON also accuses U.S. Cellular of directly and indirectly infringing claims 16, 18, and 23 of the '491 patent.  *See* Nagdev Decl., at Ex. B at 5 (Opening Expert Report of Dr.



David L. Lyon Regarding Infringement and the U.S. Cellular Network ("Lyon's U.S. Cellular Report")).  EON recently agreed to withdraw any opinion from Dr. Lyon concerning U.S. Cellular's alleged direct or indirect infringement of claims 16, 18, and 23 of the '491 patent, and that EON will not pursue those claims against U.S. Cellular.  Neither EON nor Dr. Lyon allege that U.S. Cellular infringes through the use of femtocells, because U.S. Cellular does not make use of femtocells on its network.  *See generally* Nagdev Decl., Ex. A; Declaration of Jeffrey Baenke ("Baenke Decl.") ¶ 4.  U.S. Cellular is entitled to summary judgment of no infringement of all asserted claims (notwithstanding Dr. Lyon's erroneous inclusion of claims 16, 18, and 23) against U.S. Cellular for at least the reasons set forth in the present motion.

### 3. Motorola

EON's infringement contentions allege Motorola indirectly infringes claims 1, 2, 5, 7, 9, 12-14, 16-19, 21, and 23 of the '491 patent, but that Motorola does not directly infringe any claims.  *See* Declaration of Byron Chin ("Chin Decl.") at Ex. A.  In Dr. Lyon's U.S. Cellular Report and Dr. Lyon's Sprint Report, EON does not specify which claims Motorola allegedly indirectly infringes beyond the assertion that "I understand that EON accused [Sprint/U.S. Cellular] and the handset manufacturers (HTC and Motorola) of infringing directly or indirectly Claims 1, 2, 5, 7, 9, 12, 13, 14, 16, 17, 18, 19, 21, and 23."  *See* Lyon's U.S. Cellular Report ¶¶ 3, 8; *see also* Lyon's Sprint Report ¶¶ 3, 8.  Dr. Lyon's indirect infringement allegations as to Motorola are predicated on the use of certain accused Motorola devices in conjunction with, among other things, the Sprint or US Cellular cellular networks.  *See* Lyon's Sprint Report ¶¶ 462-475; Lyon's US Cellular Report ¶¶ 460-473.  Motorola is entitled to summary judgment of no infringement of all asserted claims against Motorola for at least the reasons set forth in the present motion.

### 4. HTC

EON's infringement contentions allege that HTC contributes to and induces the



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT
CASE NO. 3:12-CV-01011-JST

- 4 -

infringement of claims 1, 2, 5, 7, 9, 12, 13, 14, 16, 17, 18, 19, 21, and 23 of the '491 Patent, and that "mobile network operators ('MNOs'), including Sprint and U.S. Cellular" and "end users" are the direct infringers. *See* Declaration of Eric J. Klein ("Klein Decl.") ¶ 3.

In Lyon's U.S. Cellular Report and Lyon's Sprint Report, EON does not specify which claims HTC allegedly indirectly infringes beyond the assertion that "I understand that EON accused [Sprint/U.S. Cellular] and the handset manufacturers (HTC and Motorola) of infringing directly or indirectly Claims 1, 2, 5, 7, 9, 12, 13, 14, 16, 17, 18, 19, 21, and 23." *See id.*

HTC is entitled to summary judgment of no infringement for all claims asserted against HTC for at least the reasons set forth in the present motion.

**5.    Cisco**

In its operative infringement contentions, EON alleges that Cisco indirectly infringes claims 1, 2, 5, 7, 9, 12, 13, 14, 16, 17, 18, 19, 21, and 23 of the '491 Patent and that MNOs, including Sprint and U.S. Cellular, as well as the end-users of such networks, are the direct infringers. *See* Declaration of John R. Gibson ("Gibson Decl.") ¶ 3.

In the Opening Expert Report of Dr. David L. Lyon Regarding Cisco's Infringement ("Lyon's Cisco Report"), however, Dr. Lyon states that EON now only accuses Cisco of indirectly infringing Claims 13, 14 16, 17, 18, 19, 21, and 23 of the '491 Patent by virtue of Cisco's alleged inducement and contributory infringement vis-à-vis AT&T's cellular network and/or AT&T's end users. Gibson Decl. ¶ 4. Dr. Lyon does not render any opinions regarding Cisco and the Sprint or U.S. Cellular networks; rather, his opinions on alleged direct infringers are rendered solely as to AT&T and the end users of the AT&T network.

Dr. Lyon further states that EON is not seeking damages for Cisco's Wi-Fi-related infringement of Claim 13 and, therefore, his analysis of Wi-Fi-related infringement is inapplicable for Claim 13 and its dependents. *Id.* Because EON's operative infringement contentions only



allege that certain Wi-Fi routers (and not femtocells) meet the "modem" limitation of Claim 13, Cisco understands EON to no longer assert that Claim 13 and its dependents (*i.e.* Claims 14 and 16) are indirectly infringed by the provision of any Cisco component. *Id.* ¶ 5.  Similarly, Dr. Lyon states that although he "performed an infringement analysis of Claim 17 for femtocell and Wi-Fi-related infringement, I understand that EON is not seeking damages for Cisco's Wi-Fi-related infringement of Claim 17" and, therefore, only his "analysis of Femtocell-related infringement is applicable for Claim 17 and its dependents." *Id.* ¶ 6.

Accordingly, it is Cisco's understanding that EON has limited its infringement case against Cisco solely to its allegations that Cisco indirectly infringes Claim 17 and its dependents through the sale of femtocells to AT&T for use in the AT&T cellular network.  With that in mind, Cisco is entitled to summary judgment of no infringement of claim 17 if either (a) the use of a Cisco femtocell in AT&T's cellular network does not meet the claim's conditional "if" limitation, or (b) a femtocell in AT&T's network is properly considered a cellular base station.

### B.   STATEMENT OF FACTS

A general discussion of the '491 Patent and the alleged novelty of the claimed invention is provided in Defendants' Responsive Claim Construction Brief (D.I. 645) at pages 1-4.  Rather than repeating that discussion here, Defendants incorporate it by reference.

This Motion raises three grounds showing that all of EON's infringement contentions with respect to all five independent claims of the '491 patent fail as a matter of law.  The material undisputed facts are set forth below.

#### 1.   The Conditional "If" Limitations

Claims 1, 5, 12, 13, and 17 all require "subscriber unit(s)" that communicate with a network either via (i) a local base station or a digital transmitter (default "Path A") or, (ii) if the subscriber unit(s) are either (a) "unable to [directly] communicate" with Path A (the digital transmitter/local



base station) (claims 1, 12, 13), or (b) "not receiving a signal from" Path A (the local base station) (claims 5 and 17), then via a "modem" ("Path B"). '491 Patent at 6:17-64, 7:9-43, 8:10-54, 8:65-9:29. The '491 patent describes the conditions upon which path is selected as follows:

First, select "Path A" if it is available. *Id.* at 3:40-43 ("if subscriber unit 12 is able to detect rf signals from local base station repeater cell 10 switching means assumes a default position 'Path A'").

Second, select "Path B" only if "Path A" is unavailable. *Id.* at 3:49-51 ("when subscriber unit 12 is unable to receive rf signals directly from local base station repeater cell 10, switching means 13 selects 'Path B'").

Third, once communicating over "Path B," select "Path A" as soon as it is again available. *Id.* at 4:41-56 ("by including remote receiver 16, the present invention is able to function in a standard manner as soon as subscriber unit 12 is able to receive rf signals from local base station repeater cell 10.").

This requirement is set forth in the conditional "if" limitations recited by claims 1, 5, 12, 13 and 17 for which the Court provided the following constructions:

| Term | Court's Construction |
|------|---------------------|
| Claims 5 & 17:<br>"if said subscriber unit is receiving a signal. . ." and "if said subscriber unit is not receiving a signal . . . " | "The method steps listed after 'if said subscriber unit is not receiving a signal from said local base station repeater cell, performing the steps of' are not performed if the subscriber unit is receiving a signal from said local base station repeater cell. Using the modem to communicate without there first being a determination that there is no signal reception does not fall within the scope of the claim." *Markman* Order, at 30-31. |
| Claims 1,12, & 13:<br>"transferring . . . if said…subscriber unit(s) are unable to communicate directly[3] with … [digital transmitter (claim 12)/local | "'transferring . . . if said local subscriber units are unable, for some reason other than the user intentionally disabling said unit, to directly communicate with said [digital transmitter/local base station repeater cell].' The system is binary, meaning the subscriber unit either communicates directly with the [digital transmitter/local base station repeater cell] or the modem. The 'transferring function' of the modem |

---

[3] Claim 1 reads "directly communicate" while claims 12 and 13 read "communicate directly".



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT
CASE NO. 3:12-CV-01011-JST

- 7 -

| Term | Court's Construction |
|------|---------------------|
| base station repeater cell (claims 1 and 13)" | is conditioned on whether the subscriber unit is unable to directly communicate with the [digital transmitter/local base station repeater cell]." *Markman* Order, at 32-34. |

These conditional "if" constructions incorporate three other observations :

(1) "[T]he 'binary' limitation is a justified construction," *i.e.*, "the subscriber unit either communicates over Path A or Path B," but not both paths simultaneously. *Markman* Order, at 26-27.

(2) The claims recite a conditional limitation, wherein Path B is only chosen by the subscriber unit when it is unable to communicate directly through Path A. In other words, "[t]he claims recite present-tense conditions." *Markman* Order, at 27. "It makes perfect sense to provide for transfer when a subscriber unit is otherwise unable to communicate now, but it makes no sense to link the capability of transfer to an inability to communicate that happened at an undefined time in the past." *Id.* at 28.

(3) The user cannot be the reason the condition is satisfied. That is, "[n]othing in the claims, or in the specification, contemplates a role for the user in affirmatively selecting one path over another." *Id.* at 28. "The claims recite a simple 'if, then' automatic switching. They do not suggest an apparatus generally designed to switch at the user's whim." *Id.*.

As shown in further detail below, the components alleged to comprise the accused networks do not satisfy these conditional "if" conditions.

        **(a)**      **Use of Wi-Fi (Wi-Fi Access Point or Mobile Hotspot) as Accused "Modem"**

In each of the accused cellular networks (Sprint, U.S. Cellular, and AT&T), the communication by the accused subscriber units (*i.e.* handsets) over a Wi-Fi connection is not conditioned on whether the accused handset is unable able to communicate directly with, or is not receiving a signal from, a local base station. Declaration of Jeffrey Baenke, ¶¶10-22; Declaration of



Satish Kulkarni ¶¶ 5-9; Ex. A to Klein Decl. ("HTC Dep. Tr.") at 21:10-14; Declaration of Thomas Keel ("Keel Decl."), ¶¶ 11-12.  Instead, the accused handsets can only be configured to automatically use a Wi-Fi connection (*i.e.* Path B) conditioned on the availability of the Wi-Fi connection (*i.e.* Path B).  Baenke Decl., ¶¶10-22; Kulkarni Decl. ¶¶ 5-9; HTC Dep. Tr. at 16:24-17:15; 19:10-14; Keel Decl., ¶¶ 11-12.  In other words, Path B or Wi-Fi is conditioned on its own availability, not Path A or the accused handset's cellular connection as required by the claims.  When the accused handset's Wi-Fi radio is turned on, the handsets <u>prefer</u> Wi-Fi and will communicate over an available Wi-Fi path as long as such a path remains available.  *Id.*  Wi-Fi becomes the default path for all communications that can travel over the Wi-Fi path.  The cellular network, on the other hand, is used to transmit data only if no Wi-Fi network is available.  Thus, the accused networks and accused handsets in those accused networks do not meet the conditional "if" limitation.

Moreover, the accused handsets are capable of utilizing the cellular network (*i.e.* Path A) for voice communications while simultaneously communicating over a Wi-Fi path (*i.e.* Path B).  HTC Dep. Tr. at 24:16-19; Keel Decl., ¶ 7.  Therefore, the accused handsets in the accused networks also do not meet the "binary" limitation.

### (b) Use of Femtocell as Accused "Modem"

Similar to Wi-Fi access points and Mobile Hotspots, femtocells provide a communication path that is preferred over other cellular components alleged to meet the local base station repeater cell and digital transmitter limitations.  In other words, the accused cellular networks are configured such that a handset preferentially uses the femtocell for communications with the network based on whether the handset is within range of the femtocell, and not dependent on whether the handset is or is not receiving a signal from or capable of communicating with a local base station.  Declaration of Madhusudan Nanjanagud ("Nanjanagud Decl."), ¶¶ 3-6; Talley Decl. ¶¶ 5-10.  Similar to the Wi-Fi



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT
CASE NO. 3:12-CV-01011-JST

- 9 -

access point scenario described above, the system is set up such that the use of the femtocell is conditioned on the handset being in the presence of the femtocell, and not conditioned its inability to communicate with the cell tower or whether it is receiving a signal from the cell tower. Nanjanagud Decl. ¶ 3-6; Talley Decl. ¶¶ 5-10.  In other words, the femtocell, not the cell tower, is the default path (i.e., Path A).  Nanjanagud Decl. ¶¶ 3-6; Talley Decl. ¶¶ 5-10.

Accordingly, use of a femtocell in the accused networks does not meet the conditional "if" limitations.

### 2.      Femtocells are Low Power Base Stations.

EON contends that a femotcell is a "modem" in the accused network.  However, a femtocell "is an in-building mini cell tower," not the claimed "modem."  Nanjanagud Decl. ¶ 2; Gibson Decl. ¶¶ 9-15  Indeed, the accused subscriber units (i.e., cellular handsets) see the femtocell as a cellular base station and communicate with it using the same cellular radio, protocols, and licensed frequency bands they would use if they were communicating with a cell tower (a so-called macro-cellular base station).[4]  Nanjanagud Decl. ¶ 3; Talley Decl. ¶ 4; Declaration of Naveen Aerrabotu ¶¶ 5-7; HTC Dep. Tr. at 29:13-24; 30:11-18.  In other words, femtocells are akin to the network components accused to meet the local base station repeater cell and digital transmitter limitations, only smaller, not the modem limitation.  Therefore, femtocells are more appropriately considered as part of the '491 Patent's default Path A, not the alternative Path B.  As such, the subscriber unit, when in the presence of a femtocell, is never "not" receiving a signal from, or unable to communicate directly with, a base station as required by all claims as the condition precedent for use of the alternative Path B.  Nanjanagud Decl. ¶ 3; Talley Decl. ¶ 5; Aerrabotu Decl. ¶¶ 5-7.  EON's contention that a femtocell is the "modem," rather than a local base station, is incorrect and uniformly refuted by the evidence in this case.

---

[4] In fact, femtocells deployed in consumer premises must be connected to a separate high speed internet connection such as a cable or DSL modem.  Nanjanagud Decl. ¶ 7; Talley Decl. ¶ 3.



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT                                                           - 10 -
CASE NO. 3:12-CV-01011-JST

### 3. Third Party Network Operation Centers Do Not Meet the Court's Construction of "Network Hub Switching Center"

The '491 Patent discloses a network architecture that in certain claimed embodiments includes a "network hub switching center" (referred to herein as the "NHSC"). '491 Patent at 9:13-29. EON alternatively contends that this limitation can be met either by (1) certain components found within the "core" of the accused cellular networks (not addressed in this Motion), or (2) certain servers that are not part of the cellular network, but which can be accessed by the accused handsets via the Internet, bypassing the cellular network. *See* Nagdev Decl., Ex. A (EON's Infringement Contentions with respect to U.S. Cellular) at Ex. B at 1-4; Bharatula Decl. Ex. A at (EON's Infringement Contentions with respect to Sprint) Ex. A at 5-8. The evidence, however, is undisputed that these third-party servers are not part of any accused cellular network and cannot, therefore, be "network hub switching centers" as construed by the Court.

## II. LEGAL STANDARDS

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1194 (Fed. Cir. 2013). The analysis for a summary judgment of non-infringement is a two-step process: "First, the claims of the patent must be construed to determine their scope. Second, a determination must be made as to whether the properly construed claims read on the accused device." *Brocade Commc'ns. Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1200 (N.D. Cal. 2012) (quoting *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999)). "Summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1325 (Fed. Cir. 2013) (internal quotes omitted).

EON bears the burden of proving that the accused network contains every limitation or



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT
CASE NO. 3:12-CV-01011-JST

- 11 -

performs every step in the asserted claims.  *See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007)*; see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311-12 (Fed. Cir. 2005) (direct infringement of a system claim requires that the system include every limitation set forth in the claims, including all structural limitations); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774-75 (Fed. Cir. 1993) ("[A] method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method."). Likewise, to establish indirect infringement (inducement or contributory infringement), an underlying act of direct infringement must be shown.  *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004).  EON is thus required to show either specific acts of direct infringement, or that use of the accused devices necessarily results in direct infringement. *See ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

## III.    ARGUMENT

### A.    The Conditional "If" Limitation Is Not Met by the Accused Handsets

There is no dispute as to how the accused handsets operate: they use a cellular radio, which EON contends corresponds to "Path A," to communicate with a macro-cellular base station, unless they are receiving a signal from a Wi-Fi access point, Mobile Hotspot, or femtocell.  If the handset is receiving a Wi-Fi signal (from a Wi-Fi access point or Mobile Hotspot), the handset will use its Wi-Fi radio (*i.e.*, the accused Path B) to communicate, provided that the subscriber has associated and authenticated the handset with the relevant device.  Baenke Decl., ¶¶10-22; Kulkarni Decl. ¶¶ 5-9; HTC Dep. Tr. at 19:10-14; 20:10-16; Keel Decl., ¶¶ 7-11; *see also* Declaration of Ashish Nagdev, ¶¶ 7-12; Ex. B to Klein Decl.at RFA Nos. 13-16.   Similarly, if the handset is receiving an acceptable signal from a femtocell, the handset will communicate with the femtocell (*i.e.*, the accused Path B), provided that the handset is registered for use with the femtocell.  Nanjanagud Decl. ¶¶ 3-6; Talley Decl. ¶¶ 5-10; Aerrabotu Decl. ¶¶ 6-7.  EON's claims of infringement,



therefore, turn on a question of law: whether it is possible to infringe the asserted claims when communication with the accused "modem" (*e.g.*, a Wi-Fi Access Point, Mobile Hotspot, or femtocell) is never conditioned on "if" the device is receiving a signal from, or able to communicate with, a local base station/digital transmitter. Without a subscriber unit that meets this conditional "if" limitation, EON's claims against all of the accused networks and the components of those networks should fail as a matter of law.

According to the Court's construction of the conditional "if" terms, a subscriber unit may use Path B only if Path A is unavailable. *Markman* Order, at 22, 32-34. And with respect to claims 5 and 17, the Court's construction expressly states that the modem (*i.e.*, "Path B") is not used "if the subscriber unit is receiving a signal from said local base station repeater cell" and further that, if the transition to Path B occurs "without there first being a determination that there is no signal reception" on Path A, such a functionality falls outside the scope of the claim. *Id.* at 30-31.

As shown herein, it is undisputed that the accused handsets do not first determine if a cellular communications path, *i.e.* the alleged Path A, is available prior to using a Wi-Fi access point, Mobile Hotspot, or femtocell communications path, *i.e.* the alleged Path B. It is also undisputed that the accused handsets use the alleged Path B even if the accused handsets are receiving signals from the accused cellular path or are able to use the accused cellular path. Therefore, use of the accused handsets cannot, as a matter of law, infringe any of claims 1, 5, 12, 13, or 17, or their asserted dependent claims.

### 1.    Claims 5 and 17

Claims 5 and 17 both require that a subscriber unit use Path B instead of Path A "if said subscriber unit is not receiving a signal from said local base station repeater cell." But it is undisputed that the accused networks and the accused handsets within those networks are configured such that a handset will use Path B, *i.e.* the accused Wi-Fi or femtocell communications



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT                                                                      - 13 -
CASE NO. 3:12-CV-01011-JST

path, (i) even if there is signal reception on Path A and (ii) not dependent on any determination that there is no signal reception on Path A.  HTC Dep. Tr. at 21:10-14; Kulkarni Dep. Tr. at 43:24-45:4, 52:17-20; Nanjanagud Decl. ¶3-6; Talley Decl. ¶¶ 5-10; Baenke Decl. ¶¶10-22;  Kulkarni Decl. ¶¶ 5-9; Keel Decl., ¶¶ 7-13*; see also* Nagdev Decl., ¶¶7-12.  Thus, the accused handsets and networks cannot be found, as a matter of law, to meet the "if said subscriber unit is receiving…/if said subscriber unit is not receiving" limitations as construed by the Court, and therefore cannot be used to infringe either of claims 5 or 17.

### 2.    Claims 1, 12, and 13

Claims 1, 12, and 13 each recite a system comprising a modem "transferring . . . if said…subscriber unit(s) is/are unable to communicate directly[5] with … [digital transmitter (claim 12)/local base station repeater cell (claims 1 and 13)]." '491 Patent, claims 1, 12, and 13.  The Court's construction of this claim limitation requires that the claimed modem must be used only "if said local subscriber units are unable, for some reason other than the user intentionally disabling said unit, to directly communicate with said [digital transmitter/local base station repeater cell]." *Markman* Order, at 32-34.  The Court further articulated that "[t]he system is binary, meaning the subscriber unit either communicates directly with the [digital transmitter/local base station repeater cell] or the modem. The "transferring function" of the modem is conditioned on whether the subscriber unit is unable to directly communicate with the [digital transmitter/local base station repeater cell]." *Id*.  Thus, to satisfy this claim element, the network/system must be designed such that a subscriber unit communicates through the modem only dependent on the subscriber unit being "unable … to directly communicate with said [digital transmitter/local base station repeater cell]."

Thus, to infringe claims 1, 12, and 13, the system must be configured such that a subscriber

---

[5] Claim 1 reads "directly communicate" rather than "communicate directly" in claims 12 and 13.



unit communicates with the claimed modem, e.g. a Wi-Fi access point or Mobile Hotspot, based on the condition that the subscriber unit is "unable … to directly communicate" on the cellular communications path.

The accused handsets and networks do not operate this way.  Instead, the accused handsets use a Wi-Fi communications path as soon as such a path is available (i.e., because it sees an available Wi-Fi path and irrespective of whether there is an available cellular path).  Baenke Decl., ¶¶10-22; Kulkarni Decl. ¶¶ 5-9; Keel Decl., ¶¶ 7-13.  Thus, the accused handsets cannot satisfy the conditional "if" limitation of claims 1, 12, and 13 when using Wi-Fi.  In short, the undisputed facts are that the accused handsets will use the accused Path B irrespective of whether the handset is able to communicate on the cellular communications path.  Kulkarni Dep. Tr. at 43:24-45:4, 52:17-20; Baenke Decl., ¶¶10-22; Kulkarni Decl. ¶¶ 5-9; HTC Dep Tr. at 21:10-14; ; Keel Decl., ¶¶ 11-13; *see also* Nagdev Decl., ¶¶7-12.  Thus, there is no genuine issue of material fact that the accused modems are not used based on the condition required by claims 1, 12, and 13 and, therefore, defendants do not directly or indirectly infringe claims 1, 12, and 13 as a matter of law.

## B.    Femtocells are Cellular Base Stations

With respect to EON's allegations regarding Sprint and Cisco's alleged infringement of claim 17, EON contends that the steps involving transmissions through the "modem" path can be satisfied by a femtocell.  However, the accused femtocells are micro-cellular base stations (*i.e.*, mini cell towers).  Nanjanagud Decl. ¶ 2; Gibson Decl. ¶¶ 9-15; Talley Decl. ¶ 2; Aerrabotu Decl. ¶¶ 5-7.  Likewise, EON's invalidity expert in another case conceded this point in his printed publications.  Gibson Decl. ¶ 14.

This undisputed fact is dispositive as to EON's femtocell allegations.  Claim 17 requires transferring data to a "modem" only if the subscriber unit is not receiving a signal from or is unable to communicate with a local base station repeater cell.  Because the femtocell is a local base station,

any device connected to it is by definition receiving a signal from a local base station.  In the parlance of the '491 Patent, there is only potential use of Path A, and no potential use of Path B.  As such, the steps that follow "if said subscriber unit is not receiving a signal from said local base station repeater cell" can never be performed in the accused networks.  Accordingly, summary judgment of non-infringement of claim 17 as to EON's femtocell-based allegations is proper as a matter of law.

### C.    Third Party Network Hub Switching Centers

As noted above, in its attempt to capture Wi-Fi communications – which do not traverse the cellular network core and, therefore, do not utilize a "network hub switching center" within the cellular network core – EON argues that "third parties may operate Network Hub Switching Centers that are accessible and used by the MNO and end users.  For example, US Cellular customers can connect to third party email servers…social networks…location services…search engines…and other internet based services using subscriber units provided by US Cellular via US Cellular's Network or thorugh a Wi-Fi communications link."  Nagdev Decl., Ex. A (EON's Infringement Contentions with respect to U.S. Cellular) at Ex. B at 4.  EON also argues that "third parties may operate Network Hub Switching Centers that are accessible and used by Sprint and end users.  For example, Sprint customers can connect to third-party email servers . . . social networks . . . location services . . . search engines . . . and other internet based services using subscriber units provided by Sprint via Sprint's Network or through a Wi-Fi communications link.  Bharatula Decl., Ex. A at Ex. A at 8.  These third party servers alleged to be Network Hub Switching Centers do not meet the Court's construction of the NHSC term.

Specifically, in concluding that the NHSC term needed construction, the Court noted that "Defendants now urge that construction is necessary to resolve the parties' dispute over whether the scope of these claims encompasses a switching center that is not part of the network."  *Markman*



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT
CASE NO. 3:12-CV-01011-JST

- 16 -

Order, at 17.  In rejecting EON's proposed construction – which would encompass third party

switching centers, *i.e.*, the "Internet-based Network Hub Switching Centers" that EON now accuses

– the Court held:

> In its papers, and at the hearing, EON seems to be maintaining that
> the scope of this term is broad enough to encompass a switching
> center that serves any cells anywhere in the world, even those
> completely unrelated to the [accused cellular] network.   After
> carefully reviewing the intrinsic record, the Court concludes that
> this is not the appropriate 'understanding of what the inventors
> actually invented and intended to envelop with the claim.'

*Phillips*, 415 F.3d at 1316.  *Markman* Order, at 20 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303,

1316 (Fed. Cir. 2005).  Moreover, the Court noted that "the switching center serves those units that

are part of the network."  *Markman* Order, at 19.  In other words, the Court agreed with Defendants

that third-party internet servers, which are not part of any accused mobile network, cannot be the

accused NHSC.  Defendants are, therefore, entitled to summary judgment on all claims wherein

EON alleges that third-party centers that are not part of any accused cellular network are the recited

"network hub switching center" of the claims.

### D.    Asserted Dependent Claims 2, 7, 9, 11, 14, 18, 19, 21, and 23

Claims 2, 7, 9, 11, 14, 16, 18, 19, 21, and 23 depend from and further limit one of claims 1,

5, 13, or 17.  Where an independent claim is not infringed, any claims depending from that claim

are also not infringed.  *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir.

1994).  Thus, for at least the same reasons set forth above with respect to claims 1, 5, 13, and 17,

Defendants cannot be found to infringe the dependent claims and are entitled to summary judgment

of non-infringement.

## IV.    CONCLUSION

For the reasons stated above, Defendants do not infringe any of the asserted claims of the

patent-in-suit as a matter of law, and summary judgment should be granted in their favor.



1

2 DATED:  February 5, 2014          Respectfully submitted,

3                                  KILPATRICK TOWNSEND & STOCKTON LLP

4

5                                  By:  ___/s/ *Byron R. Chin*_____
                                        BYRON R. CHIN

6
                                   STEVEN D. MOORE (State Bar No. 290875)
7                                  JESSICA L. HANNAH (State Bar No. 261802)
                                   BYRON R. CHIN (State Bar No. 259846)
8                                  CARL E. SANDERS (admitted pro hac vice)
                                   JAMES L. HOWARD (admitted pro hac vice)
9
                                   Attorneys for Defendants
10                                 MOTOROLA MOBILITY LLC

11

12                                 */s/ Eric J. Klein*
                                   **AKIN GUMP STRAUSS HAUER & FELD LLP**
13                                 Teresa Ghali (SBN 252961)
                                   580 California Street, Suite 1500
14                                 San Francisco, CA 94104
                                   Telephone: (415) 765-9500
15                                 Email: tghali@akingump.com

16                                 Fred I Williams (admitted *pro hac vice*)
                                   300 West 6th Street, Suite 1900
17                                 Austin, Texas 78701
                                   Telephone: (512) 499-6200
18                                 Email: fwilliams@akingump.com

19                                 Eric J. Klein (admitted *pro hac vice*)
20                                 Todd Landis (admitted *pro hac vice*)
                                   Kellie M. Johnson (admitted *pro hac vice*)
21                                 1700 Pacific Avenue, Suite 4100
                                   Dallas, Texas 75201
22                                 Telephone: (214) 969-2800
                                   Email: tlandis@akingump.com
23                                 Email: eklein@akingump.com
                                   Email: kmjohnson@akingump.com
24

25                                 **Attorneys for Defendant HTC America, Inc**.

26

27

28



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT                                                      - 18 -
CASE NO. 3:12-CV-01011-JST

1

2

SIDLEY AUSTIN LLP

3

*/s/ Bryan K. Anderson*

4
Richard J. O'Brien
SIDLEY AUSTIN LLP

5
One South Dearborn
Chicago, IL  60603
Telephone:        (312) 853-7000

6

7
Bryan K. Anderson
Ashish Nagdev

8
SIDLEY AUSTIN LLP
1001 Page Mill Road, Bldg. 1
Palo Alto, CA  94304

9
Telephone:          (650) 565-7000

10
*Attorneys for United States Cellular Corporation*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

**DUANE MORRIS LLP**

2

*/s/ John R. Gibson*

3

Richard L. Seabolt, Esq. (SBN 67469)
Spear Tower, One Market Plaza, Suite 2200

4

San Francisco, CA 94105-1127
Telephone: 415 .957.3000

5

6

L. Norwood Jameson (admitted *pro hac vice*)
Matthew S. Yungwirth (admitted *pro hac vice*)
Alison M. Haddock (admitted *pro hac vice*)

7

John R. Gibson (admitted *pro hac vice*)
David C. Dotson (admitted *pro hac vice*)

8

Stephanie A. Hansen (admitted *pro hac vice*)
1075 Peachtree Street, Suite 2000

9

Atlanta, Georgia 30309
Telephone: 404.253.6900

10

11

Joseph A. Powers (admitted *pro hac vice*)
30 South 17th Street

12

Philadelphia, PA 19103-4196
Telephone: 215.979.1000

13

E-Mail: rlseabolt@duanemorris.com
E-Mail: wjameson@duanemorris.com

14

E-Mail: msyungwirth@duanemorris.com
E-Mail: japowers@duanemorris.com

15

E-Mail: amhaddock@duanemorris.com
E-Mail: jrgibson@duanemorris.com

16

E-Mail: dcdotson@duanemorris.com
E-Mail: sahansen@duanemorris. Com

17

*Attorneys for Defendant Cisco Systems, Inc.*

18

19

**K&L GATES LLP**

20

*/s/ John J. Cotter*

21

John J. Cotter (*pro hac vice*)

22

john.cotter@klgates.com
V. Raman Bharatula (*pro hac vice*)

23

raman.bharatula@klgates.com
**K&L GATES LLP**

24

State Street Financial Center

25

One Lincoln Street
Boston, MA 02111-2950

26

Telephone:  (617) 261-3100
Facsimile:  (617) 261-3175

27

K&L GATES LLP

28

630 Hansen Way
Palo Alto, CA 94304



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT                                                                                                              - 20 -
CASE NO. 3:12-CV-01011-JST

Michael E. Zeliger (SBN 271118)
michael.zeliger@klgates.com
**K&L GATES LLP**
630 Hansen Way
Palo Alto, CA 94304
Telephone:  (650) 798-6700
Facsimile:  (650) 798-6701

Attorneys for Defendant *Sprint Spectrum L.P.*

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I hereby certify that I have obtained the concurrence in the filing of this document from all the signatories for whom a signature is indicated by a "conformed" signature (/s/) within this e-filed document and I have on file records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request.

Dated: February 5, 2014          _/s/ Byron R. Chin_
                                                            Byron R. Chin

Attorney for Defendant Motorola Mobility LLC



DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT                                                                                    - 21 -
CASE NO. 3:12-CV-01011-JST