United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EON CORP IP HOLDING LLC,

Plaintiff,

v.

SPRINT SPECTRUM, L.P., et al.,

Defendants.
_______________________________________/

No. C -12-01011 JST (EDL)

**ORDER GRANTING MOTION TO STRIKE AND DENYING MOTION TO SEAL**

Defendant HTC America, Inc. ("HTC") moves to strike all references in Plaintiff's expert reports relating to HTC devices that Plaintiff did not identify in its infringement contentions. HTC also moves to seal Exhibits A, B, and C to the Klein declaration. For the reasons set forth below, the Court grants HTC's motion to strike and denies its motion to seal.

**I. Background**

Plaintiff is the assignee of U.S. Patent No. 5,592,491, titled "Wireless Modem." The '491 patent relates to using a modem as a backup means of transmitting data to and from a "subscriber unit" (e.g., smart phone or other device) when the cellular path for transmitting data is not available. The cellular path comprises a local base station repeater cell (e.g., a cell phone tower), individual subscriber units (e.g., smart phones), and remote receivers. When the cellular path is unavailable, the '491 patent describes using a modem to provide an alternative path, referred to as Path B. Path B provides that the local base station repeater cell transmits data to the modem via a telephone line or other type of connection. The modem (e.g., a Wi-Fi access point) then transmits this data to the subscriber unit via radio waves. In return, the subscriber unit transmits data to the modem via radio waves. The modem then transmits this data to the local base station repeater cell. The independent claims of the '491 patent are directed to a "two-way communication network," "method of

communicating between subscriber units and a local base station repeater cell," "a digital cellular communication system," "two-way communication system," and "method of communicating between a subscriber unit and a network hub switching center in a two-communication system."

On October 22, 2010, Plaintiff sued HTC and other Defendants in the Eastern District of Texas, alleging that Defendants Sprint Spectrum, L.P. ("Sprint") and U.S. Cellular directly infringed the '491 patent and that HTC and others indirectly infringed. The case was subsequently transferred to this District. Plaintiff served infringement contentions, including claim charts, on Defendants on July 24, 2012. Plaintiff accused Sprint and U.S. Cellular of directly infringing through their "networks." (Picone Decl. Ex. A at 5.) Plaintiff accused HTC of indirectly infringing by making, using, and selling "subscriber units." (Id. at 6.) According to Plaintiff, HTC contributed to infringement by selling dual-mode subscriber units that were specially made for use in the allegedly infringing Sprint and U.S. Cellular networks. HTC allegedly induced infringement by intentionally instructing end users to make or use the networks by providing dual mode subscriber units, technical support, advertisements, marketing materials, instruction booklets, and service manuals. (Id. at 10.) Plaintiff's claim chart for HTC stated that the HTC subscriber units were: "All dual-mode devices (i.e., devices that can communicate over the cellular network or a Wi-Fi network)." (Klein Decl. Ex. C. at 1.) Plaintiff's claim chart also named six HTC/Sprint subscriber units and seven HTC/U.S. Cellular subscriber units, e.g., "HTC EVO Design 4G" and "HTC Touch Pro 2." Id. Plaintiff stated that a complete list was unavailable but that it would update "this element . . . upon receipt of discovery." Id.

On the same day that Plaintiff served HTC with infringement contentions, including a claim chart regarding HTC's alleged infringement, it also served all Defendants with a claim chart directed to Sprint's alleged infringement. In that claim chart, Plaintiff stated:

> Subscriber units are devices that can access the core network and network hub switching centers through a base station or a modem. All dual-mode devices (i.e. devices that can communicate over the wide area or macronetwork (e.g. cellular network or WiMAX) or a local area network (e.g. Wi-Fi network) sold by Sprint are subscriber units. Known dual-mode subscriber units are listed [in] a letter sent in conjunction with these contentions. [Plaintiff] will update the letter as discovery progresses, older dual-mode devices operable on the Sprint Network are disclosed by Sprint, and new dual-mode phones are brought to market.

(Picone Decl. Ex. B at 8.)

Also on July 24, 2012, Plaintiff emailed Sprint and U.S. Cellular letters identifying devices that it believed were subscriber units. Although the letters were addressed to Sprint and U.S. Cellular, all Defendants received the letters. (Klein Decl. Ex. M.) Plaintiff sent the letter "as additional information to crystallize [its] infringement case." (Klein Decl. Exs. D, G.) Plaintiff stated that "the claims of the '491 patent are directed to networks," "[c]ommunications networks are the accused devices," and subscriber units were "elements." (Id.) Plaintiff defined subscriber units as "any phone or device that can communicate with the core network over both the cellular network) . . . and a Wi-Fi . . . network." (Id.) Plaintiff stated that it would update the letters as discovery progressed. The letters identified the same HTC/U.S. Cellular devices that Plaintiff disclosed in its claim chart to HTC and identified three of the HTC/Sprint devices disclosed in that claim chart. (Id.) The letter to Sprint also identified the HTC Flyer, a tablet, as a subscriber unit, even though it was not disclosed in the infringement contentions served on the same day. (Klein Decl. Ex. D.) Plaintiff emailed Sprint and U.S. Cellular additional letters in April 2013, which were also received by HTC. These letters identified as subscriber units the same HTC devices that were listed in the July 2012 letters, except that Plaintiff's letter to Sprint identified a HTC/Sprint device that previously had been disclosed in the infringement contentions but not in the July 2012 letter. (Klein Decl. Exs. E, H.) The bodies of the letters were the same as that of the July 2012 letters.

On October 4, 2013, Plaintiff requested leave to amend its infringement contentions in light of the District Court's ruling on claim construction. (Dkt. 789.) Plaintiff asserted that it did not seek to add any new products to its contentions. (Id. at 14.) On October 25, 2013, while the motion was pending, Plaintiff sent additional letters to Sprint and U.S. Cellular. There is no dispute that HTC received these letters as well. These letters identified ten HTC/Sprint devices and three HTC/U.S. Cellular devices that were not disclosed in the infringement contentions. (Klein Decl. Exs. F, I.) The same day, Plaintiff filed a reply in support of its motion to amend its contentions and reiterated that it was not seeking to add new products to its contentions. (Dkt. 809 at 4.) Sprint, U.S. Cellular, and Plaintiff subsequently filed supplemental briefs regarding whether the District Court should consider Plaintiff's October 25 letters, whether the letters constituted an attempt to amend Plaintiff's infringement contentions, and whether the Local Patent Rules required Plaintiff to

United States District Court
For the Northern District of California

identify subscriber units by name or model number. The District Court did not address these issues, however, in its order denying Plaintiff's motion to amend. (Dkt. 843.)

On December 11, 2013, Plaintiff served two expert reports by Dr. Lyon regarding infringement of the Sprint and U.S. Cellular networks that referred to eleven HTC/Sprint devices that were not disclosed in Plaintiff's infringement contentions and three HTC/U.S. Cellular devices that were not disclosed in the contentions. (Klein Decl. Exs. A, B.) The HTC/U.S. Cellular devices in the expert reports were all identified in the October 25, 2013 letter. Two HTC/Sprint devices in Plaintiff's expert reports had not previously been identified in the infringement contentions or the letters. (Klein Decl. Ex. N.) Of the eleven new HTC/Sprint devices listed in Plaintiff's opening expert reports, seven were released before Plaintiff served its infringement contentions in July 2012. (Id.) All three of the new HTC/U.S. Cellular devices listed in the expert reports were also released before July 2012. (Id.) HTC filed the pending motions to strike and seal on January 23, 2014, and the Court held a hearing on March 4, 2013.

**II. Discussion**

It is undisputed that Plaintiff's expert reports refer to HTC devices not disclosed by name or model number in Plaintiff's infringement contentions and that Plaintiff did not amend its contentions with respect to HTC. It is also undisputed that a court may strike from expert reports accused products that are not disclosed in infringement contentions. Oracle Am., Inc. v. Google, Inc., Case No. 10-3561 WHA, 2011 U.S. Dist. LEXIS 109544, at *9-*10 (N.D. Cal. Sept. 26, 2011) (striking from expert report accused products identified for the first time in report); Monolithic Power Sys. v. O2 Micro Int'l Ltd., Case. No. 08-4567 CW, 2009 U.S. Dist. LEXIS 101035, at * 9-*10 (N.D. Cal. Oct. 16, 2009) (denying motion to amend infringement contentions and striking portions of expert reports addressing accused products not disclosed in infringement contentions).

The parties dispute, however, whether Plaintiff was required to disclose HTC devices by name or model number in its infringement contentions under Patent Local Rule 3-1(b). This rule provides that infringement contentions must contain:

> Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if

> known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process.

Patent L.R. 3-1(b) (emphasis added).

Plaintiff argues that this rule does not apply to HTC devices because the devices are not accused instrumentalities but rather constitute claim limitations, i.e., subscriber units. According to Plaintiff, the Sprint/U.S. Cellular networks are the accused instrumentalities, and its only obligation with respect to claim limitations is to "identify[] specifically where each limitation of each asserted claim is found within each Accused Instrumentality" in its claim charts under Patent Local Rule 3-1(c). Plaintiff asserts that it complied with this rule by stating in its charts that "[a]ll dual mode devices (i.e., devices that can communicate over the cellular network or a Wi-Fi network sold by HTC)" meet the subscriber unit limitation. Plaintiff further argues that applying Patent Local Rule 3-1(b) to claim limitations would be unduly burdensome because it would require Plaintiff to disclose by name or model number that which constitutes every claim limitation, e.g., every cell phone tower, and it would require Plaintiff to move to amend its contentions every time HTC releases a new product. Plaintiff maintains that imposing this requirement would undermine the Local Patent Rules' goal of streamlining cases.

Plaintiff's interpretation of the Local Patent Rules is unpersuasive. Plaintiff cites no authority for its assumption that a claim limitation cannot also be an accused instrumentality in the case of an indirect infringer. Patent Local Rule 3-1(b) requires contentions to disclose "for each asserted claim" each accused instrumentality "of each opposing party of which the party is aware." Patent L.R. 3-1(b). HTC is a defendant in this case, and it is being sued for contributory infringement and for inducing infringement because of its devices (as well as materials related to those devices). Plaintiff must therefore disclose accused HTC devices according to Patent Local Rule 3-1(b). Although Patent Local Rule 3-1(c) refers to claim limitations as being "within" accused instrumentalities, this rule does not exempt a device that constitutes not only a claim limitation as to a direct infringer but also an accused instrumentality of a party accused of indirect infringement from disclosure under Patent Local Rule 3-1(b) in its infringement contentions against the indirect infringer.

Additionally, nothing in the rules suggests that alleged indirect infringers should receive less notice of the basis on which they are accused of indirect infringement than required for direct infringers. To the contrary, Patent Local Rule 3-1(d) provides that "[f]or each claim which is alleged to have been indirectly infringed," the contentions must contain "an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." Patent L.R. 3-1(d). The court addressed the interplay between Patent Local Rules 3-1(b) and 3-1(d) in Fujitsu Ltd. v. Belkin Int'l, Inc., Case No. 10-3972 LHK, 2012 U.S. Dist. LEXIS 142102 (N.D. Cal. Sept. 28, 2012). The court found that the plaintiff failed to comply with Patent Local Rules 3-1(b) and (d) because it did not disclose to an accused indirect infringer the name or model number of the direct infringer's products upon which the indirect infringement allegations were based. Id. at *26-*27. Unlike Fujitsu, this motion does not involve the accused instrumentalities of the accused direct infringers – Sprint and U.S. Cellular – but rather the accused indirect infringer's own devices. However, similar to an indirect infringer's entitlement to notice under Patent Local Rule 3-1(b) and (d) of the name or model number of a direct infringer's devices, an indirect infringer is entitled to notice under Patent Local Rule 3-1(b) of which of its own devices contribute to or induce infringement as part of Patent Local Rule 3-1(d)'s required "description of the acts of the alleged indirect infringer that contribute to or are inducing that indirect infringement."

Plaintiff's concerns about the hypothetical burden this interpretation of the Local Patent Rules could impose do not justify deviating from the rules, especially under the circumstances here. While Plaintiff raises the specter that it will have to file serial motions to amend "each and every time HTC releases a new handset," here the majority of the "new" devices in Plaintiff's letters and expert reports were released publicly before Plaintiff served its contentions. If Plaintiff was concerned about the frequency with which HTC releases new devices, it could have brought its concern to the Court earlier. See Patent L.R. 1-3 (allowing the Local Patent Rules to be modified at the initial case management conference or at other times upon a showing of good cause). Moreover, the Local Patent Rules elected to place the burden of disclosure about infringement on the accuser, not the accused. See Oracle, 2011 U.S. Dist. LEXIS 109544 at *9-*10 ("Even if it would have been

easy for Google to compile an accurate list of all the devices Oracle considered to be Android devices, Rule 3-1(b) required Oracle to provide such a list in its disclosure of infringement contentions.").

Plaintiff failed to comply with Patent Local Rule 3-1(b). Plaintiff did not amend its infringement contentions with respect to HTC, and it wisely does not argue that its letters to Sprint and U.S. Cellular or its expert reports constitute amended infringement contentions. To the extent that Plaintiff suggests that its contentions were sufficient because Plaintiff defined subscriber units as "all dual mode devices (i.e. devices that can communicate over the cellular network or a Wi-Fi network)" in its claim chart, Plaintiff is incorrect. The Local Patent Rules do "not tolerate broad categorical definitions like 'mobile devices running Android.'" Oracle, 2011 U.S. Dist. LEXIS 109544 at *8; Vigilos LLC v. Sling Media Inc., Case No. 11-04117 SBA (EDL), 2012 U.S. Dist. LEXIS 189491, at *14 (N.D. Cal. July 12, 2012) ("[I]dentifying products by functionality is not sufficient.").

Finally, Plaintiff argues that striking its expert reports' reliance on the devices not disclosed in its infringement contentions would be unfairly prejudicial because its damages expert relied on those devices in calculating a reasonable royalty. Plaintiff also contends that HTC waited too long to raise the issue because it knew of Plaintiff's "intent to supplement its list of subscriber units throughout the discovery period but never complained until after service of [Plaintiff's] expert reports." (Pl.'s Opp. at 6-8.) Only three of the challenged HTC devices appear in Plaintiff's reports, so the impact on its expert reports is limited. (Klein Decl. Ex. N.) Further, whatever HTC knew or suspected, it is up to Plaintiff to comply with Patent Local Rule 3-1(b) as to HTC's devices. Oracle, 2011 U.S. Dist. LEXIS 109544 at *9-*10. While Plaintiff relies on Asus Computer Int'l v. Round Rock Res., LLC, Case No. 12-02099 JST, 2013 U.S. Dist. LEXIS 145824 (N.D. Cal. Oct. 8, 2013), the plaintiff there expressly relied on representative products in its infringement contentions, as permitted by the Local Patent Rules, yet the defendant waited a year before challenging the reasonableness of its use of representative products in its contentions. Here, by contrast, HTC did not delay in the face of similarly clear notice of any inadequacies in Plaintiff's contentions. Prior to the expert reports, Plaintiff only mentioned the HTC devices in letters addressed to Sprint and U.S.

United States District Court
For the Northern District of California

Cellular. Even if HTC could have discerned that Plaintiff believed that its letters to the other Defendants substituted for amended infringement contentions against HTC, Plaintiff represented in both its contentions and letters that it would update its letters as discovery progressed and new dual-mode phones were brought to market -- yet ten of the fourteen new HTC devices in the expert reports were released before Plaintiff served its contentions. Any prejudice to Plaintiff is self-inflicted. HTC is more likely to suffer prejudice if the new devices are not stricken because of inadequate notice, due to the need to revise its expert reports and respond to Plaintiff’s request for additional discovery regarding the newly identified devices. (Klein Decl. Ex. M.)

## III. Motion to Seal

The Court denies HTC's motion to seal Exhibits A, B, and C to the Klein declaration. HTC’s motion and declaration did not show good cause to seal. No other party filed a declaration in support of sealing, and the parties conceded at the hearing that the exhibits were not sealable.

## IV. Conclusion

The Court grants HTC's motion to strike and strikes any and all references to HTC devices in Plaintiff's opening expert reports related to infringement that were not identified in Plaintiff's infringement contentions served on July 24, 2012. (Prop. Order, Dkt. 919-2.) Within five days of this Order, Plaintiff shall serve revised reports to reflect this ruling. The Court denies HTC’s motion to seal.

**IT IS SO ORDERED.**

Dated: March 12, 2014

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge