UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EON CORP IP HOLDINGS LLC,

         Plaintiff,

    v.

CISCO SYSTEMS INC, et al.,

         Defendants.

Case No.  12-cv-01011-JST

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

Re: ECF No. 924.

## I.    INTRODUCTION

In this patent infringement action involving "Wireless Modem" Patent No. 5,592,491 ("the '491 Patent"), Defendants Cisco Systems, Inc. ("Cisco"), Sprint Spectrum L.P. ("Sprint"), HTC America, Inc. ("HTC"), United States Cellular Corporation ("U.S. Cellular"), Motorola Mobility LLC, and Motorola Solutions, Inc. (collectively, "Motorola") (collectively, "Defendants") have moved for summary judgment of noninfringement.  The matter came for hearing on March 13, 2014.

The '491 Patentee invented a system, and a set of methods, through which subscriber units respond to the unavailability of a cellular connection by transferring instead to a connection through a modem.  But the accused networks do not do that.  In the accused networks, cellular phones transfer to a modem-based Wi-Fi connection *whenever* there is a Wi-Fi connection, *regardless* of whether there is or is not an available cellular connection.  Accordingly, and for other reasons set forth more fully herein, Defendants are entitled to summary judgment of noninfringement of all asserted claims.

## II.    BACKGROUND

### A.    Procedural History

Plaintiff EON Corp. IP Holdings ("EON") filed this case in the Eastern District of Texas

on October 22, 2010.  Plaintiff EON Corp. IP Holdings, LLC's Original Complaint, Case No. 2:10-cv-00448-DF (E.D. Tex. Oct. 22, 2010), ECF No. 1.  The current defendants are Cisco Systems, Inc. ("Cisco"), Sprint Spectrum L.P. ("Sprint"), HTC America, Inc. ("HTC"), United States Cellular Corporation ("U.S. Cellular"), Motorola Mobility LLC, and Motorola Solutions, Inc. (collectively, "Motorola") (collectively, "Defendants").  In January 2012, the Texas Court granted Defendants' motion to transfer venue to this Court.  Order granting Joint Motion to Transfer Venue to the Northern District of California, Case No. 2:10-cv-00448-DF (E.D. Tex. Jan. 9, 2012), ECF No. 277.

EON asserts that Defendants Sprint and U.S. Cellular directly and indirectly infringe the '491 Patent, and that the remaining defendants indirectly infringe.  Joint Case Management Statement 2:15-23, ECF No. 650.  The '491 Patent is a continuation-in-part of U.S. Patent No. 5,388,101 ("the 101 Patent"), which is incorporated by reference into the '491 Patent.

On May 10, 2013, the Court held a hearing for the purpose of construing disputed terms in the claims of the '491 Patent.  ECF No. 711.  At that hearing, the Court requested further briefing on issues regarding the invalidity of two of the claims of the patent.  The parties provided that supplemental briefing on May 24, May 31, and, at Defendants' request, on July 3, 2013, at which point the Court took the matter under submission. ECF Nos. 722, 724, 728, & 746.

After consideration of the arguments and evidence presented by the parties, and the relevant portions of the record, the Court issued an order construing the terms and determining that claims 1 and 13 were invalid. Order Construing and Determining Validity of Claims of United States Patent No. 5,592,491 ("First Cl. Constr. Order"), ECF No. 748, 2013 WL 3455631, 2013 U.S. Dist. LEXIS 95003 (N.D. Cal. July 8, 2013).  In February 2014, the Court granted EON's motion to reconsider the Court's invalidity determination and clarify its construction of the "modem communicatively coupled" term (neither of which form the basis of the instant motion for summary judgment).  Order Granting Motion for Reconsideration, ECF No. 965, 2014 WL 793323, 2014 U.S. Dist. LEXIS 24781 (N.D. Cal. Feb. 25, 2014). The Court then issued a revised claim construction order in conformance with its order granting the motion for reconsideration. Revised Order Construing and Determining Validity of Claims of United States Patent No.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  5,592,491 ("Rev. Cl. Constr. Order"), ECF No. 979, 2014 WL 938511, 2014 U.S. Dist. LEXIS

2  29746.

3          After discovery, Defendants now move for summary judgment of noninfringement.

4          **B.       Patent-in-Suit and Asserted Claims**

5          The '491 Patent includes system claims 1, 12, and 13, and method claims 5 and 17.  A

6  systems claim includes structural elements; "unlike use of a system as a whole . . . [a] method or

7  process consists of one or more operative steps." NTP, Inc. v. Research in Motion, Ltd., 418 F.3d

8  1282, 1318 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1174 (2006).

9          The system claims read on a communication network.  Claim 1 contains, among others, the

10  limitations of a "network hub switching center," '491 Patent 6:17, "subscriber units . . . including

11  switching means," id. 6:19-21, a "local base station repeater cell communicating with . . .

12  subscriber units," id. 6:22-26, and a "modem . . . for transferring [signals] . . . if [] subscriber units

13  are unable to directly communicate with said local base station repeater cell." Id. 6:57-64.  Claim

14  12 contains, among others, limitations similar to the above in claim 1, except for the network hub

15  switching center. Id. 8:11-35.  Claim 13 contains, among others, limitations similar to the above

16  in claim 1, but it does not explicitly recite the local base station repeater cell as a claimed element.

17  Id. 8:36-54.

18          The claimed network functions as follows.  When the subscriber units are able to directly

19  communicate with the local base station repeater cell, they use that communication path ("Path

20  A"). Id. 3:33-48.  When the subscriber units cannot communicate through Path A, the switching

21  means within the units transfer to communicate instead with the local base station repeater cell

22  through the modem ("Path B"). Id. 3:49-48.

23          This feature is described in method claims 5 and 17.  Claim 5 claims a method of

24  communicating between a subscriber unit and a local base station repeater cell.  The method

25  includes the first steps of "determining whether a subscriber unit . . . is receiving a signal from

26  said local base station repeater cell," id. 7:9-12.  If it is, it transmits data through Path A, id. 7:13-

27  26, and if not, it transmits data through Path B. Id. 7:27-43.  Similarly, claim 17 claims a method

28  of communicating between a subscriber unit and a network hub switching center.  If the subscriber

United States District Court
Northern District of California

1   unit is receiving a signal from the local base station repeater cell, data is transmitted between the

2   subscriber unit and the network hub switching center through Path A.  Id. 9:5-12.  If not, data is

3   transmitted between the subscriber unit and the network hub switching center through Path B.  Id.

4   9:13-29.

5         C.     **Accused Products and Services**

6         EON alleges that Defendants Sprint and U.S. Cellular directly infringe the '491 Patent by

7   selling, offering to sell, making, and using the Sprint and U.S. Cellular Networks, respectively.

8   EON's Patent Local Rule 3-1 and 3-2 Disclosures ("Infringement Contentions") 6:20-7:7, Exh. A

9   to Declaration of Byron R. Chin, ECF No. 928-4.[1]  These networks are the wireless

10  communication networks offered to Sprint and U.S. Cellular subscribers.  Id.  The networks

11  provide access to wireless communication facilities, including cellular, LTE, and Wi-Fi facilities

12  and their related components.  Id.  In addition, EON alleges that Sprint and U.S. Cellular indirectly

13  infringe.  Their subscribers allegedly directly infringe by using the networks, and Sprint and U.S.

14  Cellular contribute to this direct infringement by providing material components.  Id. 9:19-10:17.

15  Sprint and U.S. Cellular also allegedly induce direct infringement by intentionally encouraging or

16  instructing subscribers to use the infringing networks.  Id.

17        EON also claims that Defendants HTC and Motorola indirectly infringe by selling,

18  offering to sell, making, using, and importing into the United States subscriber units that are

19  material components of the claimed invention.  Id. 10:18-11:20.  EON further alleges that

20  Defendant Cisco indirectly infringes by providing material components to mobile network

21  operators ("MNOs") who make, use, sell or offer to sell femtocell networks, and to end-users who

22  make and use femtocell networks.  Exh. B to Declaration of John R. Gibson 13:17-14:2, ECF No.

23  924-8.[2]  EON also alleges that Cisco induces indirect infringement by encouraging or instructing

24

25  [1] The infringement contentions operative against all Defendants but Cisco are dated July 24, 2012
    and are filed with the Court as Exhibit A to the Chin Declaration, ECF No. 928-4.  The document

26  does not contain page numbers.  The Court's pagination begins with page 1 as the title page on

27  which the caption appears, which makes the page numbers one less than the Page Number on the
    ECF heading.

28  [2] The infringement contentions filed as Exhibit B to the Gibson Declaration, ECF No. 924-8, were

United States District Court
Northern District of California

1   MNOs and end-users to make, use, sell or offer to sell femtocell networks.  Id.

2   Generally, EON has two theories of infringement.  One is that Wi-Fi access points and

3   "mobile hotspots" function as the modems of the claimed invention.  These networks, EON

4   argues, allow cell phones (allegedly equivalent to the claimed subscriber units) to establish Wi-Fi

5   connections (allegedly equivalent to Path B) if there is no connection with a cellular tower

6   (allegedly equivalent to Path A).  The other theory is that femtocells, which are transceivers of

7   cellular signals, provide connections to cell phones (allegedly equivalent to Path B) if the cell

8   phones cannot establish connections to cellular towers.

9   **D.    Jurisdiction**

10  Since this is a "civil action arising under" an "Act of Congress relating to patents," this

11  Court has jurisdiction pursuant to 28 U.S.C. § 1338(a).

12  **E.    Legal Standard**

13  Summary judgment is proper when the "pleadings, depositions, answers to interrogatories,

14  and admissions on file, together with the affidavits, show that there is no genuine issue as to any

15  material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

16  56(c).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find

17  for the non-moving party, and "material" only if the fact may affect the outcome of the case.

18  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  All reasonable inferences must be

19  drawn in the light most favorable to the non-moving party.  Olsen v. Idaho State Bd. of Med., 363

20  F.3d 916, 922 (9th Cir. 2004).  These standards apply with full force to summary judgment

21  motions involving patent infringement claims.  See Union Carbide Corp. v. American Can Co.,

22  724 F.2d 1567, 1571 (Fed. Cir. 1984).

23  "A determination of patent infringement consists of two steps: (1) the court must first

24  interpret the claim, and (2) it must then compare the properly construed claims to the allegedly

25  infringing device."  Playtex Products, Inc. v. Procter & Gamble Co., 400 F.3d 901, 905-06 (Fed.

26  Cir. 2005) (citation omitted).  "To prove infringement, the patentee must show that the accused

27

28  made operative against Cisco by January 31, 2013 order of the Court, ECF No. 639.

5

device meets each claim limitation, either literally or under the doctrine of equivalents." Playtex Products, Inc. v. Procter & Gamble Co., 400 F.3d 901, 906 (Fed. Cir. 2005) (citation omitted).

"To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1353 (Fed. Cir. 2001).  To survive a motion for summary judgment of noninfringement, a patentee must set forth competent evidence that "features of the accused product would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the non-movant." Intellectual Science and Technology, Inc. v. Sony Electronics, Inc., 589 F.3d 1179, 1183 (Fed. Cir. 2009) (citations omitted).  "Summary judgment of noninfringement under the doctrine of equivalents is appropriate if no reasonable jury could determine two elements to be equivalent." Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1164 (Fed. Cir. 2004) (citation and internal quotation marks omitted).  If expert testimony is provided by the patentee in an attempt to defeat summary judgment, the testimony proffered must be supported by sufficient facts and be reasonable in light of the undisputed factual record.  See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209 (1993).

## III.   ANALYSIS

Defendants move for summary judgment of non-infringement for three reasons, stemming from the Court's construction of two terms in the patent.  First, they argue that, given the Court's construction of the "transferring . . . if" terms in claims 1, 5, 12, 13 and 17, they are entitled to judgment of noninfringement against those claims and their dependents.  Second, they argue that a femtocell cannot be the claimed "modem" of the Patent, and therefore they are entitled to summary judgment of noninfringement on all theories related to femtocell networks.  Third, they argue that, on the basis of the Court's construction of "network hub switching center," they are entitled to summary judgment of noninfringement as to Claims 1, 13 and 17, as well as their dependents.

The Court addresses each the first and third arguments, and finds it unnecessary to address

the second.  The Court then addresses EON's argument that, regardless of the Court's order on literal infringement, it has viable contentions under the Doctrine of Equivalents.

As a preliminary matter, the Court notes that there is significant admissible evidence demonstrating that the accused products and services do not infringe, while all of the pertinent evidence EON submitted is unsworn and hence inadmissible.  For that reason alone, Defendants are entitled to summary judgment.  The Court will nonetheless consider EON's arguments assuming *arguendo* that its evidence is admissible.

**A.      The "Transferring . . . If" Terms**

**1.      Systems Claims (1, 12 and 13, and their dependent claims)**

The Court has construed the "transferring . . . if" terms in the systems claims as follows:

| Claim | Term | Construction |
|---|---|---|
| 1 | "transferring . . . if said local subscriber units are unable to directly communicate with said local base station repeater cell" | "transferring . . . if said local subscriber units are unable, for some reason other than the user intentionally disabling said unit, to directly communicate with said local base station repeater cell."  The system is binary, meaning the subscriber unit either directly communicates with the base station repeater cell or the modem. The "transferring function" of the modem is conditioned on whether the subscriber unit is unable to directly communicate with the local base station repeater cell. |
| 12 | "transferring . . . if said subscriber units are unable to communicate directly with said digital transmitter" | "transferring . . . if said local subscriber units are unable, for some reason other than the user intentionally disabling said unit, to directly communicate with said digital transmitter."  The system is binary, meaning the subscriber unit either communicates directly with the digital transmitter or the modem. The "transferring function" of the modem is conditioned on whether the subscriber unit is unable to directly communicate with the digital transmitter. |

| 13 | "transferring . . . if said at least one subscriber unit is unable to communicate directly with a local base station repeater cell" | "transferring . . . if said local subscriber units are unable, for some reason other than the user intentionally disabling said unit, to directly communicate with said local base station repeater cell."  The system is binary, meaning the subscriber unit either communicates directly with the local base station repeater cell or the modem. The "transferring function" of the modem is conditioned on whether the subscriber unit is unable to directly communicate with the local base station repeater cell. |
|---|---|---|

Rev. Cl. Constr. Order 22:7-25:5, 28:11-18, 30:1-7, 30:20-26, 2014 WL 938511, at *12-14,  2014

U.S. Dist. LEXIS 29746, 47-54, 56.  Defendants argue they are entitled to judgment of

noninfringement because, on the undisputed facts, the accused handsets' transferring is *not*

conditioned on the unavailability of "Path A" communication, and therefore the accused networks

do not fall within the scope of the systems claims.  The Court addresses this first with regard to

Wi-Fi routers and mobile hotspots, and next with regard to femtocell-based networks.

### a.      Wi-Fi Routers and Mobile Hotspots

As the Court has construed the scope of the systems claims, the "'transferring function' of

the modem is conditioned on whether the subscriber unit is unable to directly communicate" with

the local base station repeater cell or digital transmitter.  Put another way, the system transfers

from "Path A" to "Path B" only if Path A is unavailable.  But it is undisputed that the handsets in

the accused networks switch from cellular to Wi-Fi regardless of whether cellular service is

available.  In the accused networks, handsets switch to "Path B" even when the handset is able to

communicate through Path A, and the accused networks therefore fall outside the scope of the

claims.

EON contends otherwise, for two reasons.  First, EON points out that the accused handsets

do not *automatically* switch to Wi-Fi in the sense that they only do so after the user has configured

the handset to connect to Wi-Fi.  A handset user must first configure the handset to connect to Wi-

Fi servers automatically, or the user must specifically approve the connection to a particular Wi-Fi

server (and, if necessary, enter a password).  But this is irrelevant.  It remains the case that

transferring is not conditioned on the unavailability of cellular service.

EON also argues that the "transferring . . . if" terms are satisfied by handset users manually connecting to Wi-Fi.  Essentially, EON argues that the handset user's assessment, decision-making, and manual intervention is part of the claimed system, at least when the user is responding to a condition of cellular nonconnectivity.

Even assuming that this is a viable infringement theory under the operative infringement contentions, it is foreclosed by the "conditional limitation" the Court has construed the systems claims to contain: "the 'transferring function' of the modem is conditioned on whether the subscriber unit is unable to directly communicate with the local base station repeater cell."  The system claimed in the '491 Patent is one that transfers when there is condition of nonconnectivity over Path A, not a system that is dependent upon other factors.

Moreover, the Court also concluded in the claim construction order that "[n]othing in the claims, or in the specification, contemplates a role for the user in affirmatively selecting one path over another."  24:16-17.  At claim construction, Defendants urged the Court to construe the "transferring . . . if" terms such that "[a] user rendering the subscriber unit unable to communicate with the local base station repeater cell does not fall within the scope of the claim."  Defendants' Responsive Claim Construction Brief 6-9 ("Defts' Cl. Constr. Br."), No. 645.  EON objected to that construction, but not by providing any reason to believe that a person of ordinary skill in the art would view the claim terms as having a broad enough scope to encompass a user intentionally prompting a transfer to Path B.  Instead, EON pointed out a minor ambiguity in Defendants' proposed construction: that a user could be said to "render" a unit unable to communicate if she *unintentionally* took an action that had the *effect* of prompting an inability to communicate (for example, by wandering into an area in which there was no cellular service, or, as EON's counsel argued at claim construction, driving through a tunnel).  EON's Opening Claim Construction Brief 23:16-24:1, EON's Reply Claim Construction Brief 4:21-24, ECF No. 628; Transcript of Proceeding 52:6-54:18.

The Court agreed that an unintentional "rendering" could fall within the scope of the claim, and revised Defendants' proposed construction accordingly.  But the Court otherwise adopted

United States District Court
Northern District of California

1    Defendants' view of claim scope: a user deciding to switch to Path B is not part of the system that

2    the Patent claims for transferring.

3           EON relies on a sentence of dicta in the Court's claim construction order: "a user could

4    still respond to an inability to communicate without falling outside of the scope of the claim."

5    Rev. Cl. Constr. Order 25:20-21, 2014 WL 938511, at *14, 2014 U.S. Dist. LEXIS 29746, 54.  In

6    retrospect, this sentence could have been clearer, but it should have been plain enough from the

7    surrounding context and the Court's actual construction that intentional user intervention is not

8    part of the claimed system, even if the user is responding to poor communications over Path A.

9    What the Court had in mind was a situation in which a device performs all of the claimed system

10   steps automatically, but also contains a preliminary step through which a user can activate the

11   system after deciding that cellular connectivity problems might make the system necessary.  At the

12   claim construction phase, without knowing details of the way the accused devices operated, the

13   Court was attempting only to make clear that user involvement would not take an otherwise

14   infringing device outside the scope of the claims.  But the sentence was not intended to

15   accommodate the concept that volitional user intervention forms part of the claimed system, as the

16   Court's actual construction of the terms establishes.

17          The foregoing alone establishes that the accused networks do not satisfy the claimed

18   system limitations in any iterations or operations.  However, it is important to note that EON's

19   noninfringement arguments are in significant tension with the arguments EON just recently made

20   in persuading the Court to reverse its invalidity determination.  The Court initially concluded that

21   Claims 1 and 13 were invalid, since the Patent disclosed insufficient structure to perform the

22   function claimed by the means-plus-function term "switching means."  First Cl. Constr. Order 4:1-

23   9:21, 2013 WL 3455631, at *2-6, 2013 U.S. Dist. LEXIS 95003, 15-27.  The Court concluded that

24   a mere "electronic switch" was insufficient structure to perform the claimed function of "selecting

25   a communications path," since the Court construed "selecting a communications path" to involve a

26   process through which the device itself gathers information about rf signal, determines whether the

27   unit is able to receive sufficient signal, and then decides on an appropriate path.  Id.

28          EON persuaded the Court otherwise, arguing that "the other components of the subscriber

1     unit disclosed in the '101 Patent perform the 'gathering' and 'determining' functions which the

2     Court wrongly ascribes to the switching means."  Motion for Reconsideration 5:2-4, ECF No. 880.

3     EON argued that, given the specific components disclosed in the '101 Patent (a "frequency control

4     component," a "data processor," etc.) the "'101 Patent discloses the *subscriber unit's ability* to

5     detect and gather rf signals and determine whether the signal from a base station is strong or

6     weak."  Id. 5:4-7 (emphasis added).  On this basis, the Court agreed that the Patent already

7     disclosed specific structures capable of performing the gathering and determining functions, and

8     so the Court construed the "selecting" function added in the '491 Patent to be a much narrower

9     task capable of being performed by an "electronic switch."  Order Granting Motion for

10    Reconsideration, 2:4-5:16, 2014 WL 793323, at *1-3, 2014 U.S. Dist. LEXIS 24781, 8-16.

11          Now, however, EON argues that determining the sufficiency of signal strength, and

12    deciding to communicate over Path B, are actions that need *not* be performed by the subscriber

13    unit and the data processor, software, and controller disclosed in the '101 Patent.  Instead, EON

14    now argues that these actions are taken by a *user* – despite the fact that that a user is not disclosed

15    to be part of the claimed system in either patent's specifications.

16          EON cannot have it both ways.  If the structures actually disclosed in the '101

17    specification need not be the entities that "gather information about signal strength and analyze it,"

18    id. 3:6-8, then the Court would construe the "selecting" function added to the '491 Patent to be a

19    much broader, intelligent determination for which the Patents fail to disclose sufficient structure.

20    "[M]eans-plus-function language . . . does not encompass the human being as the 'means' or any

21    part thereof."  Application of Foster, 438 F.2d 1011, 1015 (C.C.P.A. 1971).  At claim

22    construction, EON did not argue that "selecting a communications path" is a function performed

23    by a user; it argued that it is a function performed by "electronic switch 13."  On the other hand, if

24    the "determining" processes are performed entirely by the subscriber unit, and the "electronic

25    switch" merely toggles between the two paths on the basis of those determinations, there is no

26    room left for a human user to be part of the claimed system.

27                              **b.      Femtocells**

28          The foregoing analysis applies even more strongly to EON's femtocell-based infringement

United States District Court
Northern District of California

11

United States District Court
Northern District of California

theories.  It is undisputed that the accused handsets transfer when there *is* a femtocell-based communications path, rather than when there *isn't* a cell-tower communications path.  The handsets transfer regardless of whether there is a cell-tower connection, and the handsets' transferring is not conditioned on the unavailability of Path A, as the systems claims require.

Moreover, unlike Wi-Fi, which a user can manually decide to activate after realizing that there is no cellular reception, a connection to a femtocell cannot be established manually by a handset user.  A femtocell transmits the same type of cellular signal that is transmitted by a cell tower, so when a user realizes that there is no reception from a cell tower, there is no separate antenna to turn on to seek out a femtocell connection.  EON submits an expert report in which the expert turned off his *femtocell* network, went into an area with no cellular service, and then turned the femtocell network back on.  Exh. 4 to Declaration of Mark Halderman ("Halderman Decl.") ¶¶ 317-28, ECF No. 953-9.  But EON submits no evidence suggesting that the handset itself is manipulated by the user to transfer from cellular to a femtocell connection.  Therefore, even assuming the Court had not already determined that user interactions are not part of the claimed system, EON would have no viable infringement theory.

EON argues that femtocells "are deployed to resolve coverage issues related to the cellular networks."  Opp. 3:7-8.  What EON is arguing is that, when a user discovers she is not getting good cellular service in an area, and calls a femtocell provider to install femtocells, the user and the provider have, through those actions, become part of a "system" that the Patentee invented for assessing signal strength and transferring between communications paths.  The brain functions that occur after a cellphone user realizes her calls keep getting dropped, the phone call the user makes to the provider to place an order, the shipping and installation of the femtocells – all this is part of the claimed system.

These actions are, as a matter of law, not part of the system the '491 Patentee invented.  "[A]pparatus claims cover what a device *is*, not what a device *does*."  Hewlett-Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1468 (Fed Cir. 2010) (emphasis in the original).  Whether or not the end-user or the femtocell installer *do* the actions described above, they are not what the claimed system *is*.

### c.    Conclusion

On the undisputed facts, no uses of the accused networks meet the limitations of the systems claims or their dependents.  Therefore, Defendants Sprint and U.S. Cellular are entitled to summary judgment against the claim of direct infringement of the systems claims and their dependents.  End-users also do not directly infringe since their manual participation is not part of the claimed system.  Therefore, since no entity accused of direct infringement actually infringes, all Defendants are also entitled to summary judgment against the claims of indirect infringement.

### 2.    Method Claims (5, 17 and their Dependent Claims)

The Court construed the "transferring . . . if" terms in the method claims in a similar manner as it construed the terms in the systems claims:

| Claim | Term | Construction |
|-------|------|--------------|
| 5 | "if said subscriber unit is receiving a signal from said local base station repeater cell, performing the steps of . . ."<br><br>"if said subscriber unit is not receiving a signal from said local base station repeater cell, performing the steps of . . ." | The method steps listed after 'if said subscriber unit is not receiving a signal from said local base station repeater cell, performing the steps of' are not performed if the subscriber unit is receiving a signal from said local base station repeater cell.  Using the modem to communicate regardless of whether there is signal reception does not fall within the scope of the claim. |
| 17 | "if said subscriber unit is receiving a signal from said local base station repeater cell, performing the steps of . . ."<br><br>"if said subscriber unit is not receiving a signal from said local base station repeater cell, performing the steps of . . ." | The method steps listed after 'if said subscriber unit is not receiving a signal from said local base station repeater cell, performing the steps of' are not performed if the subscriber unit is receiving a signal from said local base station repeater cell.  Using the modem to communicate regardless of whether there is signal reception does not fall within the scope of the claim. |

Rev. Cl. Constr. Order 26:6-27:16, 27:18-24, 30:20-26, 2014 WL 938511, at *14, 2014 U.S. Dist. LEXIS 29746, 54-56.  As with the systems claims, the Court has construed the method claims such that the transferring steps are only performed when there is a condition of non-connectivity over Path A.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The first step in the claimed methods is "determining whether a subscriber unit . . . is

2  receiving a signal." '491 Patent 7:9-12, 9:1-4.  The next method steps are "transmitting" steps.  If

3  the unit is receiving a signal, the next steps are "transmitting outgoing data" from the base station

4  or network hub switching center, and "transmitting incoming data" from the subscriber unit,

5  through a cellular path.  Id. 7:14-26, 9:7-14.  If the unit is not receiving a signal, the next steps are

6  "transmitting said outgoing data" from the base station or network hub switching center, and

7  "transmitting said incoming data" from the subscriber unit, through a modem.  Id. 7:27-44, 9:15-

8  30.

9    As articulated in EON's papers and at oral argument, EON's infringement theory is that

10  end-users perform the first method step: "determining whether" the subscriber unit "is receiving a

11  signal."  Defendants Sprint and U.S. Cellular therefore are entitled to judgment as a matter of law

12  that they cannot be direct infringers under 35 U.S.C. § 271(a).  "Absent an agency relationship

13  between the actors or some equivalent . . . a party that does not commit all the acts necessary to

14  constitute infringement has not been held liable for direct infringement."  Akamai Technologies,

15  Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1307 (Fed. Cir. 2012) (en banc) cert. granted,

16  134 S. Ct. 895 (U.S. 2014) and cert. dismissed, 133 S. Ct. 1520 (U.S. 2013) and cert. dismissed,

17  133 S. Ct. 1521 (U.S. 2013).  On EON's theory, it is not U.S. Cellular and Sprint who "determine"

18  whether the unit is receiving a signal.  Neither is it any device or component these Defendants

19  make or any inherent feature of the networks Defendants operate or produce.  It is the user, using

20  her own own mental and sensory capacities, who performs this step.  No Defendant performs this

21  step, and therefore no Defendant is a direct infringer of the method claims.

22    "[A] party who performs some of the steps of a method claim itself and induces another to

23  perform the remaining steps that constitute infringement" can currently be liable in some

24  circumstances for induced infringement under 35 U.S.C. § 271(b).  Id. at 1309.  But as EON

25  acknowledged at oral argument, there is no allegation of divided or joint infringement in this case.

26  Therefore, EON's argument is only viable insofar as it argues that Defendants induce end-users to

27

28

14

perform *all* of the claimed method steps.

But that is not what the operative infringement contentions state.[3]  First of all, in the operative claim charts, EON explicitly accuse the *mobile network operators*, not the end-users, of being the entities who perform the "transmitting" steps.  See, e.g., Exh. A to Declaration of Carl Sanders ("Sanders Decl."), ECF No. 1022-1, at 23-24 ("*Sprint performs* the steps in this portion of Claim 5 by initiating two-way communication with dual-mode subscriber devices in its network . . ..") (emphasis added); id. at 32-33, see also Exh. P to Sanders Decl., at 24-25, 32-33.  This, of course, makes sense.  A cellphone user cannot be the entity who transmits outgoing data from a base station.  Perhaps a cellphone user could be said to be transmitting outgoing data from the cellphone.[4]  But the claims require that the practitioner of the claimed method transmit outgoing data from the base station or network hub switching center.  In any case, whether or not the users *could* perform these steps, the infringement contentions contain no allegations saying that they do.  The claim charts say nothing at all about the user directly infringing by performing the claimed "transmitting" steps.  The entirety of this portion of the claim chart discusses the operators of the mobile networks.  In a case without a divided infringement allegation, this is fatal to EON's claims.

Second, the claim charts also cannot be fairly interpreted as accusing the end-user of performing the "determining" step.  The claim charts identify only the "subscriber unit" as the

---

[3] "The Northern District of California has adopted local rules that require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity." O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1359 (Fed. Cir. 2006).  The infringement contentions must contain, for each opposing party, "[s]eparately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process."  Patent L.R. 3-1(c).  The contentions must also contain "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function."  Patent L.R. 3-1(c).

[4] To be clear, the Court expresses no view on this point.

United States District Court
Northern District of California

1  instrumentality that practices the "determining" step, and make no mention of the user whatsoever.

2  See, e.g., Exh. A to Sanders Decl., at 21-22, 32.  EON therefore did not identify in its claim charts

3  the "method, act, or other instrumentality" that it now contends infringes the method claim.  Patent

4  L.R. 3-1(b).  In a plaintiff's 3-1(b) disclosures, a party may identify an infringing method or

5  process "by any product, device, or apparatus which, when used, allegedly results in the practice

6  of the claimed method or process," but this exception does not explicitly apply to the limitation-

7  by-limitation claim charts required by Local Rule 3-1(c).  Compare Patent L.R. 3-1(b) with 3-1(c).

8       In some situations, it may suffice for a patent plaintiff to cite only a device or product in

9  alleging infringement of a method claim – for example, if the user's natural or expected use of that

10  device results in infringement.  It might be sufficient if a user used a device like the one suggested

11  in the '101 and '491 Patent specifications, in which specific components within the subscriber unit

12  assessed signal strength and switched communications paths on their own.  But on EON's theory,

13  the only sense in which the user uses the subscriber unit to "determine" signal strength is by

14  looking at the cellphone's digital display and counting the number of bars, or by deducing from

15  the unit's failure to download a web page that it must not be receiving a signal.  See, e.g.,

16  Transcript of Proceeding 47:5-9.  Naming a device as the accused instrumentality is insufficient to

17  bring an allegation that the user herself performs the method steps, in a manner that has only a

18  tangential relationship to the named device.  See, e.g., CSR Tech. Inc. v. Freescale Semiconductor,

19  No. 12-cv-02619-RS-JSC, 2013 WL 503077, at *1-5 (N.D. Cal. Feb. 8, 2013).

20       But even if EON's infringement theory were an operative contention in this case, the Court

21  would find that Defendants would be entitled to summary judgment against any such theory as a

22  matter of law.  It would not be too much of an exaggeration to say that, under EON's view of

23  claim scope, cellphone users are practicing the patented method whenever they determine that they

24  are having difficulties with cell service, and then seek out any kind of solution to that problem that

25  involves a modem.  If a user has cell phone connectivity problems, and decides to steal her

26  neighbor's Wi-Fi, she is practicing a method the '491 Patentee invented.  If she borrows a friend's

27  phone, and that phone happens to be connected to Wi-Fi, she is practicing a method the '491

28  Patentee invented.   If she decides to build her own modem and connect to the internet through

United States District Court
Northern District of California

1   that, she is infringing the patented method.

2       Such an expansive view of claim scope is incorrect as a matter of law.  From the intrinsic

3   and extrinsic record, from the perspective of a person or ordinary skill in the art, it is plain that this

4   is not "what the inventors actually invented and intended to envelop with the claim."  Phillips, 415

5   F.3d at 1316.  Again, as the Court already held, "[n]othing in the claims, or in the specification,

6   contemplates a role for the user in affirmatively selecting one path over another."  Rev. Cl. Constr.

7   Order 24:16-17, 2014 WL 938511, at *13, 2014 U.S. Dist. LEXIS 29746, 51.  That phrase

8   appeared it in portion of the Court's order discussing the systems claims, but it is equally true of

9   the method claims.  While a method claim is normally agnostic as to the user who performs the

10  steps, here it is more than implausible that the user actions accused in this case form part of the

11  method the '491 Patentee invented.  EON's view of claim scope is also foreclosed by the Court's

12  construction that the transferring steps "are not performed if the subscriber unit is receiving a

13  signal," and that "[u]sing the modem to communicate regardless of whether there is signal

14  reception" falls outside the scope of the claimed method.  On the undisputed facts, the actions

15  allegedly taken by users in using the accused networks fail to meet these claim limitations.

16      Consider, for example, EON's argument that the user is practicing the claimed method if

17  she determines she is not getting sufficient cellular coverage in her home, decides to order

18  femtocells, and then, once they are installed, uses her phone, which automatically begins

19  transmitting data through the femtocell connection.  On EON's theory, it might seem that the user

20  would have performed the "determining" step at the moment she assessed signal strength in her

21  home and found it lacking.  But the claims only recite present-tense conditions; the transferring

22  occurs *when* the unit is not receiving a signal, not because of some condition that obtained in the

23  past.  At oral argument, EON's counsel suggested that the "determining" would have to occur only

24  at the precise moment she actually connects through an installed femtocell.  Transcript of

25  Proceeding 37:8-20, ECF No. 1025.  Our user would have to again assess the signal strength and

26  find it lacking one final time at the very moment the device in her hand performs its automatic

27  switch.  This incongruity is yet more evidence that the true scope of the patented invention is

28  considerably closer to the specifications and embodiments in the intrinsic record it is to the most

1  stretched possible reading of the claim terms.

2      For these, among other reasons, the language of the claim terms will not bear the weight of

3  EON's proposed infringement theories.  Nor is there sufficient support from the intrinsic and

4  record to support EON's view of claim scope as a matter of law.

5              **3.      Conclusion**

6      All Defendants are entitled to summary judgment of noninfringement against all asserted

7  claims, and their dependents, on the basis of the foregoing analysis.

8      **B.      Network Hub Switching Center**

9      At claim construction, the Court construed this term as follows:

| Claim | Term | Construction |
|-------|------|--------------|
| 1, 13 & 17 | "network hub switching center" | "a switching center that performs the switching functions needed for operation of the subscriber units in a group of cells that the switching center services." |

Rev. Cl. Const. Order 13:26-17:7, 2014 WL 938511, at *8-10, 2014 U.S. Dist. LEXIS 29746, 32-

39.  Defendants argue they are entitled to judgment against infringement of Claims 1, 13 & 17,

and their dependents, because they argue that the claimed "network hub switching center" cannot

be a third-party server that provides for email, social networks, location services, search engines,

or other Internet-based services.  In its claim construction order, the Court stated:

> In its papers, and at the hearing, EON seems to be maintaining that the scope of
> this term is broad enough to encompass a switching center that serves any cells
> anywhere in the world, even those completely unrelated to the network.  After
> carefully reviewing the intrinsic record, the Court concludes that this is not the
> appropriate "understanding of what the inventors actually invented and intended
> to envelop with the claim."  Phillips, 415 F.3d at 1316.

Rev. Cl. Const. Order 16:25-17:1, 2014 WL 938511, at *10, 2014 U.S. Dist. LEXIS 29746, 38.

EON argues that Defendants fail to rebut EON's infringement expert's contentions that a

third-party Internet server may constitute the claimed "network hub switching center."  EON's

Response Brief 22:12-25, 23:21-24:1, ECF No. 947.  EON also argues that a construction that

requires the switching center to be a cellular core network component would not make sense, since

a preferred embodiment of the '491 Patent includes the public switched network, which is not part of a cellular network.  Id. 23:1-4.  The modem communicates with the network hub switching center through the public switched network.  Id.  EON further claims that the ownership of the network hub switching center is irrelevant.  Id. 23:10-20.  It argues that since a network subscriber uses each and every element of the claimed network, the subscriber directly infringes and Defendants indirectly infringe.  Id.

The Court disagrees.  First, in rejecting EON's contention in the claim construction order, the Court used the word "network" to mean a cellular core network, not something as expansive as the Internet.  The '491 Patent itself provides a basis for this interpretation.  Contrary to what EON argues, the public switched network is part of the cellular network.  As shown in Fig. 2 of the '491 Patent, the public switched network is coupled between the local base station repeater cell and the modem.  '491 Patent Fig. 2.

Second, EON's argument that ownership is irrelevant also misses the mark.  Although a claim is infringed when each and every limitation is met, regardless of ownership of the accused elements, the limitations can only be met by elements that fall within the scope of the limitation.  Here, since a third-party party server does not fall within the scope of the term "network hub switching center," EON's argument fails.

Defendants are also entitled to judgment of noninfringement on claims 1, 13 & 17 for the additional reason that the accused networks do not contain the "network hub switching center" claimed in the invention.

### C.    Doctrine of Equivalents

In its opposition, EON argues that even if its claims for literal infringement fail to survive summary judgment, it still has viable claims under the doctrine of equivalents ("DOE").  EON's Response Brief 5:7-18, ECF No. 947.  EON's infringement expert report states that if the conditional "if" terms are not satisfied literally, they are satisfied under the DOE.  Id. 5:19-6:1.  Defendants counter that EON's DOE contentions are irrelevant to the present motion because they "merely address a user's 'perceived' strength of the cellular signal or the timing of a user's installation of a Wi-Fi access point, and do not address the fact that the handsets will communicate

over Wi-Fi without regard to the absence or deficiency of the cellular path." Defendants' Reply Brief 7:7-12, ECF. No. 968.[5]

Defendants have the better argument. The Court rejects EON's DOE contentions regarding literal infringement through the use of femtocells, as explained *supra*. Although femtocells are often deployed in situations where there is no Path A connection, a handset's transferring function is still not conditioned on the unavailability of cellular service. Installing femtocells as a response to poor cellular coverage does not meet the conditional "if" requirement. As for alleged infringement through the use of Wi-Fi, the Court agrees with Defendants that "[n]one of EON's equivalency theories addresses the fact that the user is unable to condition the handset's use of Wi-Fi on the absence of a cellular path, the deficiency of a cellular path, or any aspect of the cellular path." Defendants' Reply Brief 7:13-16, ECF. No. 968. Moreover, as previously discussed, the user's decision to enable Wi-Fi is not part of the claimed system. These arguments are equally applicable to the DOE contentions EON has very recently offered.

Notwithstanding Defendants' valid objections to the admissibility of EON's expert reports, the Court has carefully reviewed the reports and the DOE arguments contained within. All of them stem from the same assumptions the Court has rejected as a matter of law, and all of them essentially seek to evade the limitations of the claimed method and system. See, e.g., Exh. 3, Lyon Sprint Report at ¶¶ 250-255; Exh. 4, Lyon US Cellular Report at ¶¶ 224-227; Exh. 5, Lyon Cisco Report at ¶¶ 232-23. This is not a situation in which an element is outside the literal reach of a claim, but within the scope of its equivalent function. All of EON's DOE contentions are foreclosed by the Court's view of claim scope.

While determining equivalency is normally a question of fact for the jury, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." Warner-Jenkinson Co., Inc. v.

_____

[5] EON also objects that Defendants did not specifically mention the DOE in their motion. The Court concludes that the arguments Defendants made in their motion apply equally to EON's DOE-based infringement theories, but in any case the Court granted EON leave to file a sur-reply addressing the argument, so it has now been fully briefed.

United States District Court
Northern District of California

United States District Court
Northern District of California

Hilton Davis Chem. Co., 520 U.S. 17, 39, n.8 (1997).  EON's "theory of equivalence would entirely vitiate" a limitation contained with the claims, and therefore there is "no further *material* issue for the jury to resolve."  Id. (emphasis in the original).  See also Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1318 (Fed. Cir. 1998) (summary judgment of non-infringement under the DOE appropriate when "no reasonable finder of fact could have found infringement by equivalents because the differences between the allegedly infringing devices and the claimed inventions were plainly not insubstantial"); see also DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1017 (Fed. Cir. 2006) (citing Tronzo v. Biomet, Inc., 156 F.3d 1154, 1160 (Fed. Cir. 1998) (theory of equivalence "legally insufficient" where, "rather than demonstrate an insubstantial difference between a limitation and an element in the accused device, the theory effectively eliminated a limitation in its entirety").

## IV.    CONCLUSION

EON has provided no admissible evidence to preclude summary judgment.  But even the evidence it has submitted fails to create a triable issue of fact, given the legal scope of the claims in the Patent-in-Suit.  Moreover, the theories EON has advanced for infringement of the method claims are inconsistent with the operative infringement contentions in this case.

For the foregoing reaons, Defendant's Motion for Summary Judgment of Noninfringement is GRANTED.  All pending deadlines and hearings in this action are VACATED.  Defendants shall submit a proposed form of judgment consistent with this order.

**IT IS SO ORDERED.**

Dated:  April 1, 2014

_____
JON S. TIGAR
United States District Judge