1  RICHARD J. O'BRIEN
   robrien@sidley.com
2  SIDLEY AUSTIN LLP
   ONE SOUTH DEARBORN
3  CHICAGO, IL  60603
   (312) 853-7000
4  FAX: (312) 853-7036

5  BRYAN K. ANDERSON (SBN 170666)
   banderson@sidley.com
6  ASHISH NAGDEV (SBN 259921)
   anagdev@sidley.com
7  SIDLEY AUSTIN LLP
   1001 PAGE MILL ROAD, BLDG. 1
8  PALO ALTO, CA  94304
   (650) 565-7000
9  FAX: (650) 565-7100

10 Attorneys for United States Cellular Corporation

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13               SAN FRANCISCO DIVISION

14                                )  Case No. 3:12-cv-01011-JST
   EON CORP. IP HOLDINGS, LLC,    )
15                                )  Assigned to: Jon S. Tigar
              Plaintiff,          )
16                                )  **DEFENDANTS' NOTICE OF MOTION**
   v.                             )  **AND MOTION FOR ATTORNEYS'**
17                                )  **FEES AND SANCTIONS**
   SENSUS USA INC., et. al.,      )
18                                )  Hearing Date: July 24, 2014
              Defendants.         )  Time: 2:00 PM
19                                )  Courtroom: 9, 19th Floor
                                  )  Hon. Jon S. Tigar
20                                )
21

22            **NOTICE OF MOTION AND MOTION**

23 TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

24         PLEASE TAKE NOTICE that on Thursday, July 24, 2014 at 2 p.m. before the Honorable

25 Jon S. Tigar, in Courtroom 9 of the United States District Court of the Northern District of

26 California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102,

27 Defendants United States Cellular Corporation, Cisco Systems, Inc., Sprint Spectrum L.P., HTC

28 America, Inc., Motorola Mobility LLC and Motorola Solutions, Inc. ("Defendants") will and

1    hereby do move the Court to award Defendants attorneys' fees and sanctions.

2        This motion is made pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and this Court's

3    inherent authority to sanction.  It is based on this Notice of Motion and Motion, the attached

4    Memorandum of Points and Authorities, the declarations of Ashish Nagdev, Bryan K. Anderson, L.

5    Norwood Jameson, Fred I. Williams, John J. Cotter, Steve Moore, all matters of which this Court

6    takes judicial notice, this Court's file in this matter, and any other evidence and argument as may

7    be presented at the hearing on the Motion.

8        By this motion, Defendants seek to recover their attorneys' fees incurred since August 1,

9    2013 and an award of sanctions in the form of their expert witness expenses due to Plaintiff's

10   unreasonable pursuit of this case following this Court's dispositive claim construction ruling.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   LEGAL STANDARD ........................................................................... 2

    A.    Attorneys' Fees May Be Awarded under 35 U.S.C. § 285 for Any Case that "Stands Out from Others" Considering the "Totality of the Circumstances" ........ 2

    B.    The Court May Also Award as a Sanction Expert Witness Fees a Movant was Forced to Incur as a Result of Patentee's Bad Conduct ......................................... 3

    C.    The Court May Also Sanction Counsel for Reckless or Knowing Pursuit of a Frivolous Argument Under 28 U.S.C. § 1927 ....................................... 4

    D.    Attorneys' Fees in the Ninth Circuit Are Determined Using a "Lodestar" Analysis ................................................................................... 5

III.  ARGUMENT ....................................................................................... 6

    A.    EON Knew Defendants' Proposed Claim Construction Was Case Dispositive..... 6

    B.    EON Knew the Court's *Markman* Ruling Was Case Dispositive ......................... 6

    C.    Without Any (Valid) Reason, EON Avoided Appeal ............................................ 7

    D.    EON Forced Defendants to Complete Irrelevant Fact and Expert Discovery ........ 8

    E.    No Reasonable Patentee Would Pursue EON's "Phone Under The Bed" Infringement Theory ....................................................................... 12

    F.    Summary Judgment Confirmed That EON's Claims Lacked Any Merit............. 14

    G.    EON's Irrelevant and Baseless DOE Argument Was an Improper Delay Tactic. 15

    H.    EON's Counsel Pursued This Case in Bad Faith to Preserve EON's Other Lawsuits ......................................................................................... 16

    I.    EON Must Bear the Brunt of Judgment Delayed ................................................. 18

IV.   CONCLUSION ................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amstead Indus. Inc. v. Buckeye Steel Castings Co.*,
    23 F.3d 374 (Fed. Cir. 1994) ................................................................................................4

*Ballen v. City of Redmond*,
    466 F.3d 736 (9th Cir. 2006) ..............................................................................................5

*Brooks Furniture Mfg. v. Dutalier Int'l, Inc.*,
    393 F.3d 1378 (Fed. Cir. 2005) .......................................................................................2, 3

*Cabrales v. County of Los Angeles*,
    864 F.2d 1454 (9th Cir. 1988) ............................................................................................5

*Camacho v. Bridgeport Financial, Inc.*,
    523 F.3d 973 (9th Cir. 2008) ..............................................................................................5

*Cartner v. Alamo Group, Inc.*,
    2013-1293, 2013-1314, 2014 U.S. App. LEXIS 6677 (Fed. Cir. Apr. 11, 2014) .................16

*Cartner v. Alamo Group, Inc.*,
    No. 1:7 CR 01589, 2011 U.S. Dist. LEXIS 108497 (N.D. Ohio Sept. 23, 2011) .....................3

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ..............................................................................................................4

*Estate of Blas ex rel. Chargualaf v. Winkler*,
    792 F.2d 858 (9th Cir. 1986) ........................................................................................4, 17

*Highmark Inc. v. Allcare Health Mgmt. Sys.*,
    134 S.Ct. 1744 (2014) .........................................................................................................2

*iLor, LLC v. Google, Inc.*,
    631 F.3d 1372 (Fed. Cir. 2011) ......................................................................................4, 19

*In re Freeman*,
    30 F.3d 1459 (Fed. Cir. 1994) ...........................................................................................1

*In re Keegan Mgmt. Secs. Litig.*,
    78 F.3d 431 (9th Cir. 1996) ................................................................................................4

*Intel Corp. v. Terabyte Int'l, Inc.*,
    6 F.3d 614 (9th Cir. 1993) ..................................................................................................5

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ................................................................................................5

*Lakim Indus. v. Linzer Prods. Corp.,*
  No. 2:12-cv-04976, 2013 U.S. Dist. LEXIS 58958 (C.D. Cal. Jan. 24, 2013)........................3

*MarcTec, LLC v. Johnson & Johnson,*
  664 F.3d 907 (Fed. Cir. 2012)......................................................................................3, 4, 19

*Micromesh Tech. Corp. v. Am. Rec. Prods.,*
  No. C-06-6030 MHP, 2007 U.S. Dist. LEXIS 64241 (N.D. Cal. Aug. 30, 2007) ...................1

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,*
  No. C 08-04567, 2011 U.S. Dist. LEXIS 154454 (N.D. Cal. Mar. 3, 2011)..........................17

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,*
  No. C 08-04567, 2012 U.S. Dist. LEXIS 5109 (N.D. Cal. Jan. 17, 2012) ..............................5

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
  134 S.Ct. 1749 (2014)............................................................................................................2

*Phonometrics, Inc. v. Westin Hotel,*
  350 F.3d 1242 (Fed. Cir. 2003)........................................................................................ 3, 4-5

*Santiago v. CACH LLC,*
  No. 13-cv-02234, 2013 U.S. Dist. LEXIS 157809 (N.D. Cal. Nov. 4, 2013) .........................5

*Takeda Chem. Indus., Ltd. v. Mylan Labs, Inc.,*
  549 F.3d 1381 (Fed. Cir. 2008)..............................................................................................4

*Taurus IP, LLC v. DaimlerChrysler Corp.,*
  726 F.3d 1306 (Fed. Cir. 2013) ...................................................................................... 17-18

STATUTES

28 U.S.C. § 1927...................................................................................................... passim

35 U.S.C. § 285........................................................................................................ passim

## I.    **INTRODUCTION**

Defendants seek (i) to recover their attorneys' fees incurred since August 1, 2013[1] and (2) an award of sanctions in the form of their expert witness expenses, because EON unreasonably pursued this case for almost a year following this Court's dispositive claim construction ruling. There is no justifiable basis for EON to have believed it could establish infringement in light of the Court's construction of the conditional "if" limitations and the undisputed operation of the accused "subscriber units" and accused femtocells.  Rather than take the only reasonable course and accept Defendants' offer of a stipulated judgment to pursue an appeal, EON disregarded this Court's explicit ruling that "[n]othing in the claims, or in the specification, contemplates a role for the user in affirmatively selecting one path over another," (ECF No. 748 at 28), by resting its entire infringement theory on users manually selecting one path over another.  EON also continued to pursue its infringement theories based on third party web servers, like Google and Facebook servers, that EON contended were "network hub switching centers" despite this Court's explicit ruling that a "network hub switching center" is *not* "broad enough to encompass a switching center that serves any cells anywhere in the world."  *Id.* at 20.

EON's misbehavior in this case is more than sufficient basis for the Defendants' request for attorneys fees and sanctions.  EON's apparent motivation in prolonging this case regardless of the merits both explains EON's unwarranted positions and provides further evidence supporting this motion.   In July, 2013, EON had seven cases pending in which the '491 patent was asserted.[2]  If EON had agreed to final judgment in this case, then those other cases may have been stayed or even extinguished under the doctrine of collateral estoppel.[3]  Instead of risking its sole patent

---

[1] Defendants intend to seek fees and expenses through the full prosecution of this motion.  *See Micromesh Tech. Corp. v. Am. Rec. Prods.*, No. C-06-6030 MHP, 2007 U.S. Dist. LEXIS 64241, at *29 (N.D. Cal. Aug. 30, 2007) (finding fees incurred in prosecuting the fees and costs motions are recoverable under § 285).

[2] *EON Corp. IP Holdings, LLC v. Landis+Gyr Inc. et al.*, 6:11-CV-00317, (E.D. Tex. Jun 17, 2011); *EON Corp, IP Holdings, LLC v. AT&T Mobility LLC*, 3:11-CV-01555, (D.P.R. Jun 14, 2011); *EON Corp. IP Holdings, LLC v. LG Elecs. Mobilecomm USA, Inc.*, 6:12-CV-00941, (E.D. Tex. Dec 19, 2012); *EON Corp. IP Holdings, LLC v. Pantech Wireless, Inc.*, 6:12-CV-00942 (E.D. Tex. Dec 19, 2012); *EON v. Apple Inc.*, 6:12-CV-00943, (E.D. Tex. Dec. 19, 2012); *EON Corp. IP Holdings, LLC v. Asustek Computer Inc.*, 6:12-CV-00944, (E.D. Tex. Dec 19, 2012); *EON Corp. IP Holdings, LLC v. MetroPCS Commc'ns, Inc. et al.*, 2:12-CV-00633, (E.D. Tex. Oct 02, 2012).

[3] *See In re Freeman*, 30 F.3d 1459, 1466–67 (Fed. Cir. 1994) (if claim interpretation of prior action is the reason that patent holder lost prior action and the product was found to be non-infringing, then claim interpretation was necessary to the final decision of the prior action, and would be given preclusive effect in the second action).

litigation business, EON chose to buy time by flouting this Court's *Markman* ruling, without any regard for the substantial fees and costs Defendants would necessarily incur in order to obtain the inevitable judgment. EON's conduct resulted in a needless and wasteful multiplication of proceedings that included unnecessary fact discovery, including numerous depositions throughout the United States, preparation of expert reports and expert depositions, and summary judgment practice.

As a result, EON's unreasonable misbehavior and abuse of judicial process must be sanctioned under 35 U.S.C. § 285, 28 U.S.C. § 1927, and this Court's inherent authority.

## II. LEGAL STANDARD

### A. Attorneys' Fees May Be Awarded Under 35 U.S.C. § 285 for Any Case that "Stands Out from Others" Considering the "Totality of the Circumstances"

The United States Supreme Court recently explained the proper standard for assessing whether a case is "exceptional" for purposes of awarding attorneys' fees pursuant to 35 U.S.C § 285. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). Specifically, the Court rejected a standard that would require a showing of both subjective bad faith and exceptionally meritless claims, and cautioned district courts to consider the "totality of circumstances" and award attorney fees in any cases that "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id* at 1756. The Supreme Court also made clear that a patent litigant may establish entitlement to fees "by a preponderance of the evidence standard" that "allows both parties to share the risk of error in roughly equal fashion." *Id.* at 1758 (internal citations and quotation marks omitted). The related Supreme Court decision in *Highmark* recognizes that the largely factual determination of whether a case is "exceptional" is reviewed on appeal for an abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S.Ct. 1744, 1749 (2014).

While the Supreme Court did not adopt a specific test or standard under § 285 to determine what constitutes an "exceptional" case, the Court pointed approvingly to the "holistic, equitable" approach applied by the Federal Circuit prior to *Brooks Furniture Mfg. v. Dutalier Int'l, Inc.*, 393

F.3d 1378, 1381 (Fed. Cir. 2005).  Under this approach, vexatious, unjustified, or otherwise bad faith litigation may prove the existence of an exceptional case.  *Phonometrics, Inc. v. Westin Hotel Co.,* 350 F.3d 1242, 1246 (Fed. Cir. 2003).  Bad faith may be proved circumstantially, including because the patentee is "manifestly unreasonable in assessing infringement."  *Id.* (citation omitted) (approving the district court's finding of exceptionality where plaintiff continued to press its infringement action knowing that it could not accuse the defendant of violating the patent as the claims had been previously defined).

Even under the heightened and now-invalidated *Brooks Furniture* standard, pursuit of infringement allegations based on mischaracterizations of or failure to apply the Court's claim constructions is a proper basis to award attorneys' fees under § 285.  *See MarcTec, LLC v. Johnson & Johnson,* 664 F.3d 907 (Fed. Cir. 2012) (finding that plaintiff had engaged in litigation misconduct where, *inter alia,* MarcTec decided to advance frivolous and unsupported allegations of infringement premised on mischaracterizations of the claim constructions adopted by the trial court); *Cartner v. Alamo Group, Inc.,* No. 1:7 CR 01589, 2011 U.S. Dist. LEXIS 108497, at *13-14 (N.D. Ohio Sept. 23, 2011) (plaintiff's infringement allegations were frivolous and supported the finding of an exceptional case when plaintiff continued to assert an infringement theory post-*Markman* order that relied on a construction of a claim term that the Court had specifically rejected).  Threats of early summary judgment motion practice by the alleged infringer, and a subsequent failure by the patentee to investigate whether its positions were legally tenable, may support a showing of bad faith.  *Lakim Indus. v. Linzer Prods. Corp.,* No. 2:12-cv-04976, 2013 U.S. Dist. LEXIS 58958, *19 (C.D. Cal. Apr. 24, 2013) ("The record also establishes that Quali-Tech was aware of its perceived substantive shortcomings because it was faced with an early summary-judgment motion.  This at least suggests that Quali-Tech should have paused to further investigate whether its positions were legally tenable.").  All of these factors are present in this case.

**B.    The Court May Also Award as a Sanction Expert Witness Fees a Movant Was Forced to Incur as a Result of Patentee's Bad Conduct**

In addition to awarding Defendants' attorneys' fees under Section 285, this Court has

3

inherent authority to sanction EON.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991) (a district court has the inherent power to sanction parties for litigation misconduct); *see also Amstead Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994).  This power is not displaced by statutes that otherwise provide for specific sanctions.  *Chambers,* 501 U.S. at 42-43 (finding that neither 28 U.S. § 1927 nor the Federal Rules of Civil Procedure prevent the exercise of, or otherwise obviate, the district court's inherent power to sanction).  A district court's exercise of its inherent power to sanction is reviewable for an abuse of discretion.  *Id.* at 55; *see also Amstead*, 23 F.3d at 379; *Takeda Chem. Indus., Ltd. v. Mylan Labs, Inc.*, 549 F.3d 1381, 1390 (Fed. Cir. 2008).

Where a district court finds "fraud or abuse of the judicial process," it may "invoke its inherent sanctioning power to impose expert witness fees[]."  *Amstead*, 23 F.3d at 378; *see also MarcTec,* 664 F.3d at 921.  Absent such conduct, "courts may use sanctions in cases involving bad faith that cannot be otherwise reached by rules or statutes" to award expert fees.  *Takeda,* 549 F.3d at 1391. (citing *Chambers*, 501 U.S. at 46); *see also iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1380 (Fed. Cir. 2011).  An award limited to attorneys' fees may be insufficient to sanction a malefactor, particularly where the moving party was forced to incur expert fees as a result of the sanctionable behavior.  *See Marctec,* 664 F.3d at 921 (awarding expert fees as a sanction based on the same conduct used to award attorneys' fees because movant was forced to incur expert fees as a result of bad conduct).

### C.    The Court May Also Sanction Counsel for Reckless or Knowing Pursuit of a Frivolous Argument Under 28 U.S.C. § 1927

Finally, "[a]n attorney …. who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Sanctions under § 1927 may be assessed when an attorney knowingly or recklessly and in bad faith raises a frivolous argument.  *Estate of Blas ex rel. Chargualaf v. Winkler,* 792 F.2d 858, 860 (9th Cir. 1986).  Sanctions under § 1927 do not require that a filing be entirely frivolous, so long as a finding or bad faith intention to harass or recklessness is made.  *In re Keegan Mgmt. Co. Secs. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).  A Court may award fees under both 35 U.S.C. § 285 and

4

28 U.S.C. § 1927.  *Phonometrics,* 350 F.3d at 1242.

**D.     Attorneys' Fees in the Ninth Circuit Are Determined Using a "Lodestar" Analysis**

"In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the 'lodestar.'"  *Monolithic Power Sys*., *Inc. v. O2 Micro Int'l Ltd.,* No. C 08-04567, 2012 U.S. Dist. LEXIS 5109, at *6 (N.D. Cal. Jan. 17, 2012).  The Court "determine[s] the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate."  *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993); *see also Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  "There is a strong presumption that the lodestar figure represents a reasonable fee."  *Monolithic Power Sys.*, 2012 U.S. Dist. LEXIS 5109, at *6.  The district court may adjust this presumptively reasonable attorneys' fees amount based only on the following factors:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) the contingent or fixed nature of the fee; (7) the limitations imposed by the client or the case; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature of the professional relationship with the client; and (12) awards in similar cases.  *Intel Corp.*, 6 F.3d at 622  (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975).

In determining a reasonable hourly rate, courts look to the forum in which the district court sits and the prevailing market rate in that community for similar work performed by attorneys of comparable skill, experience and reputation.  *Santiago v. CACH LLC,* No. 13-cv-02234, 2013 U.S. Dist. LEXIS 157809, at *14 (N.D. Cal. Nov. 4, 2013).  "If the applicant satisfies its burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee".  *Intel Corp.*, 6 F.3d at 623.  In establishing the hourly rate, the court may take into account:  (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained.  *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988).

### III.     ARGUMENT

The totality of the circumstances demonstrates that EON unreasonably and frivolously continued to pursue this case despite this Court's *Markman* ruling.  Any reasonable patentee would have recognized that it could not prevail on infringement and would have stipulated to a judgment of non-infringement to pursue an appeal of the claim construction ruling in July, 2013, when this Court's *Markman* order issued.  Instead, EON and its counsel abused the judicial process and imposed unjustified burdens and expenses on each Defendant.

### A.     EON Knew Defendants' Proposed Claim Construction Was Case Dispositive

During claim construction exchanges and briefing, Defendants proposed a construction for the conditional "if" limitations that made clear that handsets that preferentially connect to Wi-Fi could not infringe.  (*See* ECF No. 748 at 24-25).  EON admitted as much during claim construction briefing when it stated that Defendants' proposed constructions for the conditional "if" limitations were "a direct statement of non-infringement" and "seek to avoid infringement by adding a timing requirement (a 'present condition') to the claims."  (ECF No. 654 at 1-6).  At the claim construction hearing, Defendants again were clear that they sought a construction that avoided any ambiguity as to the user's role in selecting the communication path.  *See* Declaration of Ashish Nagdev In Support of Defendants' Motion for Attorneys' Fees ("Nagdev Decl."), Ex. 1 (Defendants' Claim Construction Presentation) at pp. 9-46.  In response, EON told this Court, "[t]he defendants are trying to impose a whole bunch of negative limitations into that condition to circumscribe the circumstances under which infringement occurs."  (ECF No. 717 at 65:20-22).

Similarly, for the "network hub switching center" limitation, during briefing EON said that Defendants' proposed construction "is not about the meaning of the term; it is about whether [d]efendants infringes[sic]."  (ECF No. 654 at 11).  And at the hearing, EON expressed concern with Defendants' proposed construction as being too concerned with non-infringement of the accused devices.  (ECF No. 717 at 33:20-24).

### B.     EON Knew the Court's *Markman* Ruling Was Case Dispositive

On July 8, 2013, this Court decided in favor of Defendants on the conditional "if" and "network hub switching center" limitations, among others.  (ECF No. 748 at 26-31).  In relevant

6

part, this Court held that the conditional "if" limitations are binary, meaning the accused subscriber units can *either* communicate with the cellular network (Path A) or the Wi-Fi access point (Path B).  (*Id.* at 27, 30).  This Court also held that communication by the subscriber unit with the Wi-Fi access point is conditioned on the subscriber unit being unable to directly communicate with or not receiving a signal from the cellular network.  (*Id.* at 28, 31).  In response to EON's assertion that the claims could be construed to permit users to select the communication path, the Court also clearly stated, "[n]othing in the claims, or in the specification, contemplates a role for the user in affirmatively selecting one path over another."  (*Id.* at 28).  Similarly, the Court resolved the parties' dispute about whether the scope of the claims extended to the user responding to "situations in which communication was impaired in the past" and found that "[t]he claims only recite present-tense conditions" and that "it makes no sense to link the capability of transfer to an inability to communicate that happened at an undefined time in the past."  (*Id.* at 27-28).

This Court also clearly addressed whether the "network hub switching center" as properly construed could encompass third party web servers, such as Google, Yahoo!, and Facebook servers.  "EON seems to be maintaining that the scope of this term is broad enough to encompass a switching center that serves any cells anywhere in the world, even those completely unrelated to the network…[T]his is not the appropriate 'understanding of what the inventors actually invented and intended to envelop with the claim.'" (ECF No. 748) at 20; *see also id* at 19 ("This very strongly indicates that the switching center serves those units that are part of the network.").  EON sought reconsideration of this Court's "network hub switching center" construction, but that request was denied.  (ECF No. 873).

## C.     Without Any (Valid) Reason, EON Avoided Appeal

The Court's claim construction voided all of EON's infringement theories and effectively ended this case.  Based on EON's statements both before and after the *Markman* ruling, EON acknowledged as much.  Before the ruling, EON characterized Defendants' claim construction position as one that, if adopted, would require a finding of non-infringement.  After the *Markman* ruling, EON admitted that the "landscape of the case" had changed.  EON should have conceded non-infringement based on the Court's claim constructions and appealed, but instead forged ahead

7

in order to preserve its claims in parallel litigations.

At the July 11, 2013 case management conference four days after the ruling, EON admitted that "the claim construction order obviously changes the landscape of the case, and EON has to go back and evaluate its infringement cases against each individual defendant and make a determination as to how to proceed in light of the Court's [*Markman*] order" (ECF No. 752, at 32:7-32:11). In the meantime, on July 10, 2013, Defendants requested that EON stipulate to non-infringement of all asserted claims so that final judgment could be entered. (ECF No. 762 at 3). EON's acceptance of Defendants' proposal was the only reasonable course given the *Markman* ruling and the undisputed "Wi-Fi preference" operation of the accused "subscriber units." In other words, the only place for EON to seek recourse for its disagreement with this Court's case dispositive claim construction was the Federal Circuit. However, at the July 10 status conference EON signaled its eventual choice of delay over reason by requesting that the Court "hold in abeyance an issue of a scheduling order to allow" it an opportunity to respond to Defendants' email "and propose our view of the world and how we would like to go forward, and that will be precipitated back and forth between the defendants and the plaintiff about how the case goes forward procedurally and substantively." (ECF No. 752 at 33:23-24, 34:3-6). When the Court refused EON's request (*id* at 33:23-24, 34:3-6, 34:16-19, 35:14-21), EON waited over a month, until August 16, 2013, before refusing to stipulate to final judgment of non-infringement. (ECF No. 769 at n.3).

**D.      EON Forced Defendants to Complete Irrelevant Fact and Expert Discovery**

After EON refused its only reasonable option to pursue an appeal, on August 26, 2013, Defendants asked this Court to stay discovery and to set an expedited schedule for summary judgment motions. (ECF No. 762 at 5). EON opposed, instead proposing that it would "update" its infringement contentions with the "claims and products still at issue." (ECF No. 769 at 3). EON further represented that "its amended contentions will provide the requisite notice for Defendants as to how each of the accused products operate, alone or in combination with others, in an infringing manner under this Court's constructions." (*Id.*). At the status conference on September 24, 2013, this Court denied any request to modify the schedule or stay the case pending

8

1   resolution of summary judgment, instead asking the parties to work within the framework of the

2   agreed upon schedule.  (ECF No. 784).

3          On the same day as the September 24, 2013 status conference, EON sought leave to file a

4   motion for reconsideration of the claim construction ruling.  (ECF No. 783).  Critically, EON did

5   not ask this Court to reconsider or clarify the conditional "if" constructions.  (ECF No. 783).  If

6   there was any ambiguity in the construction with respect to user involvement, EON should have

7   requested the Court to reconsider or clarify the construction of the conditional "if" limitations.  But

8   EON did not.  (ECF No. 783).  Instead, EON's motion on the "switching means" element made

9   abundantly clear that the Court's prior *Markman* ruling that "[n]othing in the claims, or in the

10  specification, contemplates a role for the user in affirmatively selecting one path over another" was

11  indisputably correct.  (ECF No. 1029 at 10-11).

12         On October 4, 2013, nearly three months after the *Markman* ruling, days after the status

13  conference, and over a month after it proposed to serve amended contentions, EON served

14  amended infringement contentions, but it did not alter its theory of infringement on the conditional

15  "if" limitations or remove any accused products.  (ECF No. 789).[4]  Instead, other than ministerial

16  edits, EON attempted to add internet based data centers, such as Google data centers, to its

17  contentions for the "network hub switching center" claim limitation.  (ECF No. 843 at 3-4).  It also

18  proposed that cellular network contracts with third parties established that third party internet based

19  servers can act as a "network hub switching center."  *Id* at 4.  As Defendants noted at the time,

20  EON's proposed amendments simply "reiterate[d] that EON [was] standing by the same old

21  infringement theories that it … pursued since long before the Court's *Markman* Order" and that it

22  had not in fact responded to the Court's claim constructions, which were different from those

23  offered by EON.  (ECF No. 796 at 5).  This Court rejected EON's proposed amendments as largely

24  _____

25  [4] Specifically, despite the Court's claim construction, EON continued to contend that the "unable to communicate"
    condition could result from "a user turning off cellular data or configuring her device to automatically associate with a
    Wi-Fi device in range because communication had been and may be expected to still be impaired."  (*See. e.g.,* ECF No.
26  789-6 (Exhibit 5 to the Declaration of John V. Picone in Support of Plaintiff EON's Motion for Leave to Amend its
    Infringement Contentions) at 19).  EON also continued to assert that the condition of "not receiving a signal" for
27  purposes of the method claims could result due to "a user turning off cellular data or configuring his device to
    automatically associate with a Wi-Fi device in range because communication had been and may be expected to still be
28  impaired."  (*See, e.g., id.* at 22).

1    immaterial, untimely, irrelevant, and, with respect to the network hub switching center

2    amendments, prejudicial to Defendants.  (ECF No. 843 at 4-5).

3         Despite the *Markman* ruling, EON's telling motion for reconsideration, and EON's failure

4    to provide amended infringement contentions that properly responded to the Court's claim

5    constructions, EON subsequently forced Defendants to respond to substantial fact discovery

6    (including discovery on products that EON ultimately dropped when it served its expert reports)[5]

7    while ignoring any documents and evidence that the accused products did not operate in the

8    manner claimed, as construed by the Court:  *i.e.,* that the accused handsets preferentially connect to

9    the macro cellular network (the "local base stations") over Wi-Fi or the femtocells (the "modems").

10        First, EON already had in its possession prior to issuance of the Court's claim construction

11   order documents and testimony conclusively demonstrating that if Defendants prevailed in their

12   proposed claim constructions, EON's infringement claims must fail.  For example, EON's

13   productions included documents showing that a mobile phone would "automatically detect and use

14   [femtocells] in preference to … outdoor cellsites" and that femtocells looked like mini cell-towers

15   to the accused handsets.  *See* Nagdev Decl., Ex. 2.  In addition, fact witness testimony

16   unequivocally established that the accused subscriber units prefer Wi-Fi to cellular connections.

17   For example, before claim construction briefing had concluded, Satish Kulkarni, a Motorola

18   engineer, testified that Motorola phones prefer Wi-Fi to cellular by default.  *See, e.g.,* Nagdev

19   Decl., Ex. 3 (Kulkarni Dep. Tr., Feb. 26, 2013) at 44:24-45:4.

20        Nonetheless, following this Court's *Markman* order, EON served on each Defendant

21   dozens of corporate deposition topics, interrogatories, requests for production, and requests for

22   admission.  *See* Nagdev Decl. at ¶ 3.  Meanwhile, EON avoided a direct response from Defendants

23   on a key infringement issue, seeking no discovery specifically targeted at the issue of whether the

24   accused "subscriber units" preferentially connected to the accused "local base station repeater cell"

25   rather than the accused "modems" and instead simply asking a generic request that Defendants

---

26

27   [5] For example, EON originally identified at least ten different Cisco products as meeting the "network hub switching center" claim limitation, and over fifty different products as meeting the "modem" limitation.  (*See generally* ECF No. 632-3).  Ultimately, however, EON dropped its infringement case against Cisco as to all products except the Cisco femtocell.  (*See* ECF No. 924 at 5-6).

28

10

describe their respective non-infringement contentions.  *See* Nagdev Decl., Ex. 4, Interrog. No. 1.  The Defendants' respective responses again made clear that none of the accused "subscriber units" met the conditional "if" limitations as construed by the Court.  *See* Nagdev Decl., Ex. 5 (Response to Interrogatory No. 1) at 3:17-22.

EON further imposed unjustified costs and burdens by demanding that each Defendant make multiple corporate designated witnesses available for multiple days, resulting in preparation meetings with multiple 30(b)(6) witnesses on a huge number of topics, when EON had no intention of seriously pursuing these vast number of topics.  *See* Nagdev Decl., Exs. 6-8.  Indeed, these depositions did not cover the topics noticed or last multiple days, but instead lasted only a few hours total.  *See* Nagdev Decl., Exs. 9-11.  For example, EON deposed U.S. Cellular's technical witness Mr. Zernick for only one hour, and EON never once asked any question focused on the conditional "if" limitations.  *See* Nagdev Decl., Ex. 10 (Zernick Dep. Tr., Nov. 13, 2013).  Nevertheless, Mr. Zernick's testimony confirmed that all accused handsets were Wi-Fi preferred.  Nagdev Decl., Ex. 10 at 45:8-15.  EON's deposition of Cisco's proffered 30(b)(6) witness on technical topics similarly lasted only a few hours and, in that deposition, Cisco's witness confirmed that "irrespective of whether there is a complete macro [cellular] coverage or there is minimal macro coverage … if the end-user device is closely associated with the femtocell, it will register with the femtocell."  *See* Nagdev Decl., Ex. 12 (Nanjanagud Dep. Tr., Nov. 19, 2013) at 49:23 – 50:3.  EON's deposition of HTC's proffered 30(b)(6) witness on technical topics similarly lasted only a few hours and, in that deposition, HTC's witness confirmed that the HTC devices favor Wi-Fi without regard to the cellular network signal.  (*See* ECF No. 927-1 at 21 ("Q:  [D]oes the HTC handset sets sold in the United States . . . signal prioritization favoring Wi-Fi have anything to do with the strength of the cellular network signal?  A:  No.")).  EON ignored this testimony, as well as Defendants' responses to EON's discovery requests in November 2013 that the accused networks and devices did not operate in the manner that the '491 Patent claimed.[6]

In contrast to EON's indifference to the operation of the accused handsets and the accused

---

[6] For example, Cisco responded to EON's Common Interrogatory 1 that "the accused networks are designed such that the accused mobile devices prefer to use Wi-Fi or femtocells (*i.e.,* 'Path B') over cellular paths (*i.e.,* 'Path A') … [and] the accused femtocells are cellular base stations and cannot satisfy the 'modem' limitation of the claims."

femtocells, Defendants asked EON whether it had any evidence to support a claim that the accused handsets would ever preferentially connect to cellular rather than Wi-Fi and on whether EON had any evidence to support a claim that the accused handsets would preferentially connect to the macro cellular network rather than a femtocell.  (ECF No. 925 at ¶¶ 6-10).  EON's response was that "EON is without sufficient information or knowledge to admit or deny this request, and therefore denies this request."  (*Id.*)  In other words, EON had no factual basis for pursuing its infringement claims after the Court's claim construction.  Likewise, in response to discovery seeking EON's support for its contention that each accused product and service meets the "network hub switching center" claim limitation, EON simply responded that it would respond through its expert report on infringement.  Nagdev Decl., Ex. 13.

**E.      No Reasonable Patentee Would Pursue EON's "Phone Under The Bed" Infringement Theory**

On December 11, 2013, EON submitted its expert infringement and damages disclosures.  (ECF No. 942-1, Exhs. E, F).  These opinions failed to raise any evidence that the accused handsets ever operated in a mode that preferred the macro cellular network rather than femtocells or Wi-Fi.  Instead, EON pursued what the Court had clearly stated was out of bounds – users affirmatively selecting one path preferentially rather than another, including by responding to situations in which communication was impaired in the past, as opposed to the present.  (ECF No. 947 at 8-9, 13-14; Nagdev Decl., Ex. 14 (Lyon Cisco Report) at 116 ("I conclude that the 'determining step' is generally performed by the MNO's subscriber, who determines that no satisfactory macro cellular radio signal is present within her premise … After making such a determination the user then takes the next steps of requesting the femtocell from her MNO and … connect[ing] the femtocell to her broadband modem for Internet access.")).  EON also continued to pursue general internet servers as the claimed network hub switching centers, another theory that was explicitly rejected by this Court in its *Markman* order and order denying in part EON's motion for leave to file a motion for reconsideration.  (ECF No. 947 at 22-25).

That the merits of this case failed to factor into EON's decision to push forward is also evident from the other positions advocated by EON's experts.  In order to "demonstrate"

infringement, EON's technical expert, Dr. Lyon, had to find a hotel room in Eureka California where, in one portion of the room he could not receive a cellular signal on a handset, while in another portion of the same room he could receive a cellular signal on a mobile hotspot (an alleged "modem").  Nagdev Decl., Ex. 32 at ¶¶ 247-292).  Dr. Lyon could then have a handset lacking a cellular connection connect by Wi-Fi through either a mobile hotspot connected to a cellular base station, or a Wi-Fi access point that connected to the internet over Ethernet to Google (EON's network hub switching center).  Other than this highly artificial scenario, Dr. Lyon was unable to identify any other incidents that met his test for infringement.  Nagdev Decl., Ex. 15 (Lyon Dep. Tr., Feb. 21, 2014) at 12:14-14:2.  Also, Dr. Lyon admitted that when he strayed into an area of cellular coverage, the handset would nevertheless continue to use Wi-Fi.  Nagdev Decl., Ex. 16 (Lyon Dep. Tr., Feb. 19, 2014) at 194:4-195:7.

With respect to the accused Cisco femtocells, Dr. Lyon admitted that he had never performed any testing of the accused femtocells' operation.  *See* Nagdev Decl., Ex. 17 (Lyon Dep. Tr., Feb. 20, 2014) at 82:22-85:16.  The only acts of infringement with a femtocell that Dr. Lyon could offer were ones in which the subscriber "chose to buy and install a femtocell in their house because the subscriber knew that they had no signal within the house," and wherein Dr. Lyon turned off his femtocell network, went into an area with no cellular service, and then turned the femtocell network back on.  (*See, e.g., id.* at 139:17-144:2; ECF No. 1029 at 12).  Both scenarios were ones that the Court had expressly rejected as within the scope of the claims in the claim construction order.

On damages, EON's economist, Dr. Nawrocki, valued offloading traffic from the cellular network of Defendants Sprint and U.S. Cellular in calculating a "reasonable" royalty.  (Nagdev Decl., Ex. 18 (Nawrocki Report for non-Cisco Defendants) at ¶¶ 21-22).  He did so despite the fact that, under Dr. Lyon's limited infringement scenarios, traffic would never be offloaded from the cellular network.[7]  If the mobile hotspot "modem" were used, the traffic would go on to the cellular network.  If the Wi-Fi access point were used, the traffic would never go on to the cellular network because the handset (by Dr. Lyon's own test requirement) could not have a cellular connection.

---

[7] *See* Nagdev Decl. at Ex. 19 (Cox Report), ¶ 191; *see also* Nagdev Decl. at Ex. 20 (Negus Report), ¶ 456.

Rather than recognizing defeat and appealing this Court's *Markman* ruling, EON chose to pursue illusory theories of infringement entirely divorced from its damages theory and forced Defendants to respond to these theories so EON could delay the literal day of judgment. Once EON's expert disclosures finally and effectively admitted that the infringement claims failed under the *Markman* ruling, Defendants promptly filed their motion for summary judgment.

### F.      Summary Judgment Confirmed That EON's Claims Lacked Any Merit

On February 5, 2014, Defendants filed their motion for summary judgment of non-infringement based, in part, on this Court's construction of the conditional "if" limitations. (ECF No. 924). In response, EON remarkably filed its opposition brief that included ***no*** admissible evidence to support its infringement theories. (ECF No. 1029 at 7).

This Court granted Defendants' motion, finding that there existed no material factual dispute that "[i]n the accused networks, handsets switch to [Wi-Fi] even when the handset is able to communicate through [the cellular network], and the accused networks therefore fall outside the scope of the claims." (*Id.* at 8). This Court again flatly rejected EON's argument that handset users can satisfy the conditional "if" limitations "when the user is responding to a condition of cellular nonconnectivity" because:

(1) user manual intervention was not a viable infringement theory under the operative
   infringement contentions;

(2) user manual intervention was contrary to this Court's explicit ruling in its
   *Markman* order that "[n]othing in the claims, or in the specification,
   contemplates a role for the user in affirmatively selecting one path over
   another.";

(3) user manual intervention conflicted with this Court's explicit ruling in its
   *Markman* order that "the claims only recite present-tense conditions," and
   therefore there is no way for a user to make the determination at the moment
   of the switch from "Path A" to "Path B";

(4) user manual intervention was "in significant tension with the arguments EON just
   recently made" in the switching means reconsideration motion that the

14

subscriber unit is responsible for satisfying the conditional "if" limitations; and

(5) a user's "brain functions that occur after a cellphone user realizes her calls keep getting dropped, [and] the phone call the user makes …" were not part of the claimed system.

(*Id.* at 9-13, 15-18).

In addition to the conditional "if" limitations, Defendants also moved for summary judgment to preclude EON from arguing that third party web servers are "network hub switching centers" under this Court's construction.  (ECF No. 924).  This Court held that the claim construction order expressly precludes such a reading.  (ECF No. 1029 at 19).

All of the Court's reasons for entering summary judgment make clear that at least by the time of the *Markman* ruling, EON had no reasonable basis to pursue its claims.

## G.    EON's Irrelevant and Baseless DOE Argument Was an Improper Delay Tactic

EON's doctrine of equivalents argument in opposition to summary judgment is another example of EON's abuse of the judicial process in an effort to delay judgment in this case.  EON advanced its  DOE argument without any legal analysis or support.[8]  (ECF No. 947 at 5-6).  EON's proffered expert reports also summarily concluded that the differences between the conditional "if" limitations and the accused products were "insubstantial" without any discussion of user intervention, thus rendering it irrelevant to Defendants' summary judgment motion.  (ECF No. 948 at Exhs. 3-5).

Even had the proffered DOE analysis been relevant, EON's expert failed to consider the prosecution history that he admitted is relevant to any DOE analysis.  Nagdev Decl., Ex.15 (Lyon Dep. Tr., Feb. 21, 2014) at 118:16-120:6.  In the prosecution history, EON specifically amended the broader limitation of "when" with the narrower limitation of "if" found in the issued claims.  Finally, even had EON preserved a DOE theory on user intervention, this Court recognized that such a "theory of equivalence would entirely vitiate' the conditional 'if' limitations," and would

---

[8] EON's infringement contentions likewise only assert that Defendants' alternatively infringe under the doctrine of equivalents with no legal analysis or support.  (ECF No. 1021) at Exhibits A-G.

fail as a matter of law.  (ECF No. 1029 at 21).  EON's unreasonable invocation of DOE is additional support for an award of attorney fees.  *See Cartner v. Alamo Group, Inc.*, 2013-1293, 2013-1314, 2014 U.S. App. LEXIS 6677, *23 (Fed. Cir. Apr. 11, 2014)(citing "bad faith conduct with respect to the doctrine of equivalents argument" as supporting district court's finding the case exceptional under pre-*Octane* clear and convincing standard.)

## H.      EON Pursued This Case in Bad Faith to Preserve EON's Other Lawsuits

A further, independent basis for sanctions includes EON's clear motive in pursuing this case without regard for the merits and costs to Defendants in order to preserve its litigation in other courts.  In an August 28, 2013 hearing in the *AT&T* matter, EON's counsel explicitly stated to the Puerto Rico District Court that it would continue with infringement claims against AT&T under the '491 patent until there was a binding judgment in this Court.  Nagdev Decl., Ex. 23 (*EON Corp. IP Holdings, LLC v. AT&T Mobility, LLC*, 3:11-cv-1555, (D. P.R.) (ECF No. 412)) at 18:12-19:5.  EON's counsel also noted that it planned to file a motion for reconsideration before this Court, "[w]hich will take some time for him to resolve."  *Id* at 19:19- 20:8.  While EON did file the motion for reconsideration, it tellingly did not seek reconsideration of the case dispositive conditional "if" limitations; (ECF No. 783); despite this Court holding that EON had no basis to pursue its user intervention theory.  (ECF No. 1029 at 8 ("In the accused networks, handsets switch to [Wi-Fi] even when the handset is able to communicate through [the cellular network], and the accused networks therefore fall outside the scope of the claims.")).

EON's transparent plan was to delay judgment in this case so as to delay the impact of this case on its other pending '491 Patent matters.  Indeed, while it sought delay in this Court, it urged the District of Puerto Rico to push forward with trial in the *EON v. AT&T* matter.  In August 2013, at a status conference in the *EON v. AT&T* matter, EON argued that the February 2014 trial date for the case should be maintained, despite the fact that a *Markman* hearing date had not even been set.  Nagdev Decl., Ex. 24 (*EON Corp. IP Holdings, LLC v. AT&T Mobility, LLC*, 3:11-cv-1555, (D. P.R.) (ECF No. 407)) at 1.  On September 10, 2013, EON sought again to push forward with trial in the AT&T matter in Spring 2014 (despite the fact that a claim construction hearing had not yet

been held), even consenting to trial before the assigned magistrate judge in order to accomplish that goal.  (*Id.* at 1-2).  These measures were evidently designed to ensure that the AT&T trial took place before the scheduled date for summary judgment motions in this case.  (*Compare* Nagdev Decl., Ex. 24 (*EON Corp. IP Holdings, LLC v. AT&T Mobility, LLC*, 3:11-cv-1555, (D. P.R.) (ECF No. 407)) with Nagdev Decl., Ex. 25 (*EON Corp. IP Holdings, LLC v. AT&T Mobility, LLC*, 3:11-cv-1555, (D. P.R.) (ECF No. 413) and (ECF No. 754)).

Even after this Court granted Defendants' summary judgment motion, but while the issue of the form of judgment remained pending,, EON argued in the AT&T matter in Puerto Rico that "as a procedural matter, the California court has not yet issued a final judgment, which is a prerequisite and condition to any applicable collateral estoppel argument" and sought to rely on its alleged settlement with MSI to explain why judgment would be delayed in this case.  (Nagdev Decl., Ex. 26, *EON Corp. IP Holdings, LLC v. AT&T Mobility, LLC*, 3:11-cv-1555, (D. P.R.) (ECF No. 456) at 3-4).   As this Court is aware, EON in fact did attempt to further delay entry of judgment, which this Court overruled.  (ECF Nos. 1036, 1037).

EON's motive to continue this case regardless of its merits in order to delay any impact on its co-pending litigation supports a finding that this case is exceptional under Section 285 and merits an award of sanctions under Section 1927.  *See Monolithic Power Sys.*, *Inc. v. O2 Micro Int'l Ltd.,* 2011 U.S. Dist. LEXIS 154454, at *18 (N.D. Cal. Mar. 3, 2011) ("Based on its knowledge of the series of cases discussed above, the Court finds that O2 Micro engaged in a vexatious litigation strategy that supports finding this case to be exceptional."); *Estate of Blas,* 792 F.2d at 860 (an award of fees under § 1927 is warranted where an attorney in bad faith or recklessly advances frivolous arguments).  Because EON unreasonably continued to pursue this case against multiple Defendants with no hope but delay, EON and EON's counsel must bear the costs of that choice.[9]  *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327-28 (Fed.

---

[9] During the parties' meet and confer regarding this motion, EON pointed to a recent Central District of California decision denying a motion for attorneys' fees and sanctions.  *See* Nagdev Decl. Ex. 33, *Kaneka Corporation v. Zhejiang Medicine Co., Ltd. et al.*, No. 2:11-2389, 10 (C.D. Cal. May 23, 2014).  But the *Kaneka* Court based its decision on finding the plaintiff "presented a ***reasonable***, but unconvincing argument for additional discovery in response to Defendants' motions for summary judgment."  *Id* at 7 (emphasis added).  In this case, on the other hand, EON unreasonably proceeded in its infringement case despite knowing that the accused handsets and femtocells operate exactly opposite to this Court's conditional "if" construction, and rested its entire infringement theory on necessary user

17

Cir. 2013) (upholding a finding of attorneys' fees under the old, more stringent standard where the patentee "improperly asserted and maintained its positions in the litigation" because "no reasonable litigant in [the patentee's] position could have expected an [infringement] finding [given a reasonable claim construction or subsequent *Markman* order.]").[10]

## I.   EON Must Bear the Brunt of Judgment Delayed

Because EON maintained this case despite the case-dispositive *Markman* order, Defendants were unnecessarily forced to incur substantial costs related to discovery, expert reports, and summary judgment briefing after the Court's *Markman* order was issued.  During that period, each Defendant incurred fees relating to at least the following categories of activities:  (1) the completion of fact discovery (including document production in response to EON's requests for production served on October 11, 2013, time spent responding to EON's interrogatories and requests for admission, preparation of and defending of 30(b)(6) witnesses that were not noticed until after the Court's issuance of the *Markman* order, time spent responding to discovery motions filed by EON after the Court's issuance of the *Markman* order, and correspondence with EON's counsel concerning discovery issues); (2) preparation of expert reports and completion of expert discovery (including both preparation of Defendants' expert reports and preparation of Defendants' experts for deposition and preparation for and taking depositions of EON's experts); (3) summary judgment motion practice; (4) motion practice related to EON's request to amend its infringement contentions; (5) negotiations with EON concerning its continued pursuit of its infringement claims; (6) time spent coordinating with other defendants concerning case strategy; (7) time spent attending and preparing for Court-ordered mediation; and (8) time spent preparing this motion for fees.  Attached hereto are declarations from each Defendant evidencing the timekeeper, timekeeper rates, timekeeper experience, and total hours worked for each timekeeper from the issuance of the Court's *Markman* Order, as well as necessary supporting documents under Ninth Circuit law.  (*See* Declarations of Bryan K. Anderson, L. Norwood Jameson, Fred I. Williams, John J. Cotter, Steve Moore filed concurrently herewith).  The attorneys' fees that Defendants incurred as a result of

intervention despite clear instruction from this Court to the contrary.
[10] The Federal Circuit also made clear that "a party…must continually assess the soundness of pending infringement claims, especially after an adverse claim construction."  *Id.* at 1328.

18

1  EON's unreasonable behavior are detailed in the attached declarations. *Id.*

2         In addition to awarding Defendants' attorneys' fees, this Court should also sanction EON

3  by ordering it to pay Defendants' expert witness fees. *See iLor,* 631 F.3d at 1380 (a district court

4  can award expert fees as part of its inherent power in exceptional cases based upon a finding of bad

5  faith); *see also Marctec,* 664 F.3d at 921 (same). As indicated above, EON pursued this litigation

6  post-*Markman* in bad faith, and the only reasonable explanation for EON's behavior is that it

7  wanted to avoid the preclusive effect this case would have on its other potentially lucrative cases

8  involving the same patent. Awarding only attorneys' fees for this behavior would be insufficient to

9  compensate Defendants, particularly where Defendants were forced to incur expert fees as a result

10 of EON's bad behavior. *See id.*. Attached hereto are declarations from each Defendant evidencing

11 the expenses incurred by each defendant in preparing its invalidity, non-infringement, and damages

12 reports and in preparing and defending its experts at deposition, as well as supporting invoices.

13 (*See* Declarations of Bryan K. Anderson, L. Norwood Jameson, Fred I. Williams, John J. Cotter,

14 Steve Moore filed concurrently herewith). The expert witness fees that Defendants incurred as a

15 result of EON's unreasonable behavior are detailed in the attached declarations. *Id.* These fees

16 were all incurred as a result of EON's continued pursuit of this case in bad faith conduct.

17        Finally, the above facts illustrate that EON's counsel knowingly, recklessly and in bad faith

18 pursued their infringement theories against Defendants despite the Court's claim construction

19 ruling in an attempt to preserve its claims in parallel litigations. The Court should require EON's

20 counsel to personally satisfy Defendants' demands for the excess costs, expenses, and attorneys'

21 fees reasonably incurred because of EON's attorneys' conduct. 28 U.S.C. § 1927.

22 **IV.      CONCLUSION**

23        For the foregoing reasons, Defendants respectfully request this Court to grant Defendants

24 their attorneys and expert fees in the amount set forth in the attached declarations, which includes

25 only fees incurred from the date this Court issued the *Markman* order.

26

27

28

Dated:  May 28, 2014                    Respectfully submitted,

                                        SIDLEY AUSTIN LLP


                                        By:   /s/ Ashish Nagdev

                                              Richard J. O'Brien
                                              One South Dearborn
                                              Chicago, IL  60603
                                              Telephone:      (312) 853-7000
                                              Facsimile:      (312) 853-7036

                                              Bryan K. Anderson
                                              Ashish Nagdev
                                              1001 Page Mill Road, Bldg. 1
                                              Palo Alto, CA  94304
                                              Telephone:      (650) 565-7000
                                              Facsimile:      (650) 565-7100

                                              *Attorneys for Defendant and Counterclaimant*
                                              *United States Cellular Corporation*

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND SANCTIONS
CASE NO. 3:12-CV-01011-JST

DUANE MORRIS LLP

By:  */s/ Matthew S. Yungwirth*

Richard L. Seabolt, Esq. (SBN 67469)
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone: 415.957.3000
Facsimile: 415.957.3001

L. Norwood Jameson (admitted *pro hac vice*)
Matthew S. Yungwirth (admitted *pro hac vice*)
Alison M. Haddock (admitted *pro hac vice*)
John R. Gibson (admitted *pro hac vice*)
David C. Dotson (admitted *pro hac vice*)
1075 Peachtree Street
Suite 2000
Atlanta, Georgia 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Joseph A. Powers (admitted *pro hac vice*)
30 South 17th Street
Philadelphia, Pennsylvania 19103-4196
Telephone: 215-979-1842
Facsimile: 215-689-3797

E-Mail: rlseabolt@duanemorris.com
E-Mail: wjameson@duanemorris.com
E-Mail: japowers@duanemorris.com
E-Mail: msyungwirth@duanemorris.com
E-Mail: amhaddock@duanemorris.com
E-Mail: jrgibson@duanemorris.com
E-Mail: dcdotson@duanemorris.com

*Attorneys for Defendant Cisco Systems, Inc.*

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Carl E. Sanders*

Steven D. Moore (SBN 290875)
Byron R. Chin (SBN 259846)
Jessica L. Hannah (SBN. 261802)
Two Embarcadero Center, 8th Floor
San Francisco, CA 94111
Telephone: 415-576-0200
Facsimile: 415-576-0300

Carl E. Sanders (admitted pro hac vice)
James L. Howard (admitted pro hac vice)
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: 336 607 7300;
Facsimile: 336 607 7500

*Attorneys for Defendants and Counterclaimants
MOTOROLA MOBILITY LLC and MOTOROLA
SOLUTIONS, INC.*

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Fred I. Williams*

Teresa Ghali (SBN 252961)
580 California Street, Suite 1500
San Francisco, CA 94104
Telephone: (415) 765-9500

Fred I Williams (admitted pro hac vice)
300 West 6th Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 499-6200

Eric J. Klein (admitted pro hac vice)
Todd Landis (admitted pro hac vice)
Kellie M. Johnson (admitted pro hac vice)
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800

*Attorneys for Defendant HTC America, Inc.*

1                         K&L GATES LLP

2                         By: _/s/ Raman Bharatula_         

3                         John J. Cotter (pro hac vice)
john.cotter@klgates.com

4                         V. Raman Bharatula (pro hac vice)
raman.bharatula@klgates.com

5                         State Street Financial Center
One Lincoln Street

6                         Boston, MA 02111-2950
Telephone: (617) 261-3100

7                         Facsimile: (617) 261-3175

8                         630 Hansen Way
Palo Alto, CA 94304

9                         Michael E. Zeliger (SBN 271118)
Telephone: (650) 798-6700

10                       Facsimile: (650) 798-6701
michael.zeliger@klgates.com

11

12                       _Attorneys for Defendant Sprint Spectrum L.P._

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION PURSUANT TO GENERAL RULE NO. 45, SECTION X,
RE E-FILING ON BEHALF OF MULTIPLE SIGNATORIES**

In accord with the Northern District of California's General Order No. 45, Section X(B), I attest that concurrence in the filing of this document has been obtained from each of other signatories who are listed on the signature pages. Pursuant to General Rule No. 45, I shall maintain records to support this concurrence for subsequent production for the Court if so ordered, or for inspection upon request by a party until one year after final resolution of the action (including appeal, if any).

Executed this 28th day of May, 2014, at Palo Alto, California.

By:  _/s/ Ashish Nagdev_

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND SANCTIONS
CASE NO. 3:12-CV-01011-JST